UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.; ex rel. EVEREST PRINCIPALS, LLC,<br><br>　　　　　Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>　　　　　Defendants. | Case No.: 3:20-cv-286-W (AGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [DOC. 57]** |

Pending before the Court is Defendants Abbott Laboratories, Inc. a/k/a Abbott Laboratories, Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc.'s (collectively, "Abbott" or "Defendants") Motion to Dismiss Plaintiff and Relator Everest Principals, LLC's[1] ("Plaintiff" or "Relator") Second Amended Complaint for failure to

---

[1] Plaintiff brings this action on behalf of the United States of America, the District of Columbia, and the following 27 states: California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New

state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*Mot.* [Doc. 59].)  Relator opposes the Motion.  (*Opp.* [Doc. 60].)  The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).

For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss [Doc. 59].

## I.  BACKGROUND

Plaintiff and Relator Everest Principals, LLC is a "single member Delaware limited liability corporation whose sole member was employed by Abbott from August 2015 to April 2017 as a Therapy Development Specialist in its Structural Heart Division."  Defendant Abbott Laboratories is a publicly traded, global healthcare company that owns the patent for MitraClip (or "MC Device")—a medical device used on certain cardiac patients.  Defendant Abbott Laboratories, Inc. is allegedly the parent company of Defendants Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc.  Relator asserts claims against Abbott pursuant to the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, and applicable analogue state laws.  Specifically, Relator alleges that Abbott violated the AKS by hosting events for doctors that amounted to illegal remuneration by inducing government-paid MitraClip procedures.

This Court previously denied Abbott's motion to dismiss Relator's Federal False Claims Act Claims (Counts 1-3) as alleged in the *First Amended Complaint* ("*FAC*") and granted Abbott's motion to dismiss Relator's State False Claims Act claims (Counts 4-31) with leave to amend.  As to the state FCA claims, the Court instructed that Relator needed to plead with particularity how any false claims were submitted to each state.  Relator filed the *Second Amended Complaint* ("*SAC*") on September 22, 2022, adding

---

Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Washington.  The federal government and these 27 states declined to intervene in this case.  (*Mot.* at 2; Doc. 8.)

new allegations to the State FCA claims (Claims 4 through XXIX, hereafter, "State FCA Claims"). [Doc. 57.] Abbott now again attempts to challenge the legal sufficiency of the State FCA Claims asserted in the *SAC* pursuant to Fed.R.Civ.P. 9(b).

## II.  LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

Well-pleaded allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Leave to amend should be freely granted when justice so requires. *See* FED. R. CIV. P. 15(a). However, denial of leave to amend is appropriate when such leave would be futile. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996); *Plumeau v. Sch. Dist. No. 40 Cnty. of*

*Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997).

State FCA claims must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. *United States ex rel. Solis v. Millennium Pharm.*, Inc., 445 F.Supp.3d 786, 794–95 (E.D. Cal. 2020) (citation and quotations omitted). Relators must allege the "who, what, when, where, and how of the misconduct charged." *Id.* (citation and quotations omitted).

### III. DISCUSSION

#### A. State Law FCA Claims

In this Court's prior order, the Court dismissed Relator's State FCA Claims because "Relator ha[d] not alleged with particularity how any false claims were submitted to each state identified in the FAC." *August 18, 2022 Order* [Doc. 56]. In the *SAC*, Relator adds new allegations, which it avers contain the necessary particularity with respect to each state to meet the requirements of Rule 9(b). *See SAC* ¶¶ 145-47, 152, 154-55, 163, 165. Abbott argues that Relator's new allegations still fail to provide particularized facts as to the claims submitted to each state.

##### 1. California

As to the California FCA claim, Relator adds the following in the *SAC*:

- Relator's manager, Michael Meadors, assigned him/her to California implanting physician Dr. S.K. for practice building support services. Mr. Meadors told Relator that Dr. S.K. had a long-standing, important relationship with Abbott, and thus, it was imperative to "keep him happy". Relator quickly learned that Dr. S.K was the top implanting MC implanting physician in the world in terms of volume, and continually driving referrals to Dr. S.K. was one way that Abbott maintained this partnership relationship with Dr. S.K and kept him happy. From 2015 to 2021, Abbott's payments to Dr. S.K. exceeded one million dollars ($1,404,280.64), and from 2013-2020

      the State of California (MediCal) reimbursed Dr. S.K. $23,412.22 for the MC TMVR implanting procedure for MediCal covered cardiac patient beneficiaries.  (*SAC* ¶ 163(a));

- On February 28, 2017, Abbott hosted a MitraClip marketing reception at El Camino Hospital for MC implanting physician Dr. CR. The reception was in the guise of a celebration of the 100th MitraClip procedure, and this marketing event was typical of what Abbott management instructed its national sales representatives to organize and host as a "Milestone Celebration" in order to showcase the loyal implanting physicians and their hospitals/medical centers. The physician being celebrated/marketed here was paid over $250,000 by Abbott from 2015 to 2021, and was reimbursed by the State of California (MediCal) over $12,000.00 for performing the MC TMVR procedure on state healthcare program funded cardiac patients from 2013 to 2020.  (*SAC* ¶ 163(b)).

Abbott argues that these additions are still insufficient to meet Rule 9(b)'s particularity requirement.  The Court disagrees.  Taken together with all the allegations already included in the *FAC*—specifically the allegations stating a claim under the federal FCA and the allegations as to California's Medicaid program—Relator has adequately alleged a state FCA claim under California law at this juncture.

    **2. Florida**

As to the Florida FCA claim, Relator adds the following in the *SAC*:

- Dr. J.R was a key Florida physician targeted by Abbott management for patient-practice building. One example of Abbott's approach to showing Dr. J.R. the quid pro quo for his commitment to the MC device was manager Michael Meador's offering Dr. J.R. the opportunity to speak at Abbott's Annual TMVR Summit in 2017. In addition, from 2015-2021, Abbott made payments to Dr. J.R. that exceeded $270,000.00, and the State of Florida Medicaid program reimbursed Dr. J.R. nearly $5,000.00 from 2013 to 2020

for MC TMVR procedure performed on state-funded cardiac patient beneficiaries.  (*SAC* ¶ 163(c));

- Another example of Abbott's illegal marketing practices in Florida involved assisting Dr. R.Q. for patient-practice building. The sales representatives assigned to Dr. R.Q., Michelle Butler and Scott Reynolds, were specifically directed by their manager Frank Sobczak to target Internal Medicine physicians for referrals to MitraClip targeted implanters because many internists and family practice physicians in Florida referred directly to interventional cardiologists and performed the screening procedures that clinical cardiologists do in other states. From 2015 to 2021, Dr. R.Q. received over $300,000 in payments from Abbott, and from 2013 to 2021 was reimbursed by the State of Florida Medicaid program nearly $14,000.00 for performing the MC TMVR procedure on state government-funded cardiac patient beneficiaries.  (*SAC* ¶ 163(d)).

These allegations, along with the allegations already included in the *FAC*, sufficiently allege that Abbott defrauded the Florida Medicaid program.  At this stage, these allegations are sufficient to satisfy the Rule 9(b) pleading standard.

### 3. Georgia

As to the Georgia FCA claim, Relator added the following in the *SAC*:

- Abbott hosted a National Sales Meeting in Denver and paid Georgia implanting physician Dr. V.R. to speak to Abbott's national sales force. The theme of the conference was Abbott's marketing strategies about owning the customer, "OWN IT: Lead the Revolution." Abbott's management and sales team from all over the country treated Dr. V.R. to a full display of Abbott's culture of engaging with the physician customers, and making them partners in growing their business. From 2015- 2021, Dr. V.R. received monetary payments from Abbott exceeding $270,000.00 and from 2013 to 2020, he was reimbursed by the State of Georgia over $4,000.00 for performing the

MC TMVR procedure on cardiac patients covered by the state healthcare program.  (*SAC* ¶ 163(h)).

Taking these allegations as true, this speaking event and Abbott's payments to Dr. V.R. sufficiently state a claim for a violation of Georgia's FCA.  It is plausible that Abbott paid Dr. V.R. to help grow his practice area, which would count as renumeration. *See United States v. Chang*, 2017 WL10544289, at *7 (C.D. Cal. July 25, 2017).

### 4. New York

As to the New York FCA claim, Relator added the following in the FAC:

- Abbott's sales representative, Linda Morgan, who marketed to and for physicians in the Northeast, Connecticut and New York in particular, was selected by management to present at Abbott's April 2016 National Sales meeting on the topic "Implanter Driven Programs." The meeting was attended by the National Sales Director, Abbott managers representing all the states in the U.S., the U.S. Marketing Management team, as well as all of the Therapy Development Specialists. In her presentation, Ms. Morgan advised the attendees to focus their initial outreach for referrals in local medical centers "with 'in-reach.'" She also identified three medical centers where she focused her referral outreach efforts and noted her success at obtaining referrals from each location over the past three months, including Montefiore Medical Center with 3 referrals, NorthShore University Medical Center with 5 referrals, and NYU with 14 referrals. In addition, Ms. Morgan trained the new hires, and with great specificity, instructed them about how she successfully executed referral events for targeted physicians. For an example of a best practice activity, to grow targeted implanting physician Dr. G.T.'s patient base, Ms. Morgan explained how she coordinated with marketing directors at various medical facilities to plan an "Over 55 Community Event" where Dr. G.T. could meet prospective patients and referring physicians. Ms. Morgan also explained how she would schedule

dates for Dr. G.T. to attend Grand Rounds at neighboring hospitals for potential patient referrals. From 2015 to 2021, Abbott made payments to Dr. G.T. exceeding $200,000.00, and from 2013 to 2020 the State of New York Medicaid program reimbursed Dr. G. T. nearly $5,000.00 for performing the MC TMVR procedure on state government-funded cardiac patient beneficiaries.  (*SAC* ¶ 163(e));

- Abbott also provided free marketing and patient practice building for New York implanting physician Dr. S.K. in the form of a free reception and speaker program on April 11, 2016 and the opportunity to meet referring physicians at the trendy Barcelona Wine Bar in Stamford, CT. From 2015-2021, Abbott made payments to Dr. S.K. that exceeded $186,000.00, and from 2013 to 2020, the State of New York Medicaid program reimbursed Dr. S.K. nearly $12,000.00 for the MC TMVR procedure performed on cardiac patients covered by New York state government healthcare programs.  (*SAC* ¶ 163(f));

- Abbott provided free marketing for its targeted New York physicians with a cocktail reception and dinner program on April 12, 2016 at the Amali Restaurant for Dr. N.P and Dr. C.K. with a program entitled, "New Treatment Frontiers For Mitral Valve Disease." A ruse Abbott used to assist implanting physicians grow their patients through referrals was a template, generic letter directed to referral physicians that Abbott created for Dr. C.K. with Dr. C.K.'s hospital logo making it appear as if it were the hospital's stationery and letter from the physician, not an Abbott template letter to potential referring physicians. Abbott paid Dr. C.K. over $52,000.00 from 2015-2021 and the New York State Medicaid program reimbursed Dr. C.K. over $7,000.00 from 2013 to 2020 for performing the MC TMVR procedure on New York state government-healthcare funded cardiac patients. This outright marketing and public relations support and assistance to the

> physicians and hospital's cardiac program by an Abbott representative is yet another way Abbott provided valuable services and resources to their MitraClip physician partners in growing and building their business and practices all with the understanding and expectation they would be treating patients with the MitraClip.  (*SAC* ¶ 163(g)).

Taken as a whole, Relator alleges facts that, if true, would establish that Abbott engaged in fraudulent conduct in New York that led to the defrauding of New York's Medicaid program.  These allegations satisfy the Rule 9(b) pleading standard.

### 5. Other State FCA Claims

As to the other 22 state FCA claims included in the SAC, the Court agrees with Abbott that the additions are insufficient to satisfy Rule 9(b)'s particularity requirement.  For all states other than California, Florida, Georgia, and New York, the SAC contains only generalized and blanket allegations that do not specify the "who, what, when, where, and how of the misconduct charged."  *Millennium Pharm.*, Inc., 445 F.Supp.3d at 794–95.  Given Relator's failure to allege specific facts about conduct occurring in these states, despite being given the opportunity to do so in the Court's prior order, the State FCA Claims as to all states other than California, Florida, Georgia, and New York are **DISMISSED** with prejudice.

/
/
/
/
//

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss [Doc. 59].  Specifically, the Court **DENIES** Defendants' Motion to Dismiss as to the California FCA claim (Count 4), the Florida FCA claim (Count 8), the Georgia False Medicaid Claims Act (Count 9), and the New

York FCA claim (Count 21) AND **GRANTS** Defendants' Motion to Dismiss as to the remaining State FCA Claims **WITHOUT LEAVE TO AMEND**.

      **IT IS SO ORDERED.**

Dated:  November 29, 2022

                                          Hon. Thomas J. Whelan
                                          United States District Judge