UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. ex rel. Everest Principals, LLC,<br><br>                                  Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES, et al.,<br><br>                                  Defendants. | Case No.:  20cv286-W (MSB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DISCLOSURE STATEMENT AND POST-DISCLOSURE GOVERNMENT COMMUNICATIONS**<br><br>**[ECF NOS. 113 & 114]** |

 This is a <u>qui tam</u> case, wherein Plaintiff-Relator, Everest Principals, LLC ("Relator") maintains causes of action against Defendants Abbott Laboratories, Abbott Cardiovascular Systems, Inc., Abbott Vascular, Inc., and Abbott Laboratories, Inc. (collectively "Abbott" or "Defendants") on behalf of the United States of America ("U.S.") and several states for violations of the federal False Claims Act ("FCA") and analogous state laws.  (<u>See</u> ECF No. 85 at 6.)  Now pending before this Court is Defendants' "Motion to Compel Relator's Disclosure Statement and Subsequent Submissions/Communications."  (ECF No. 114.)  Based on the parties' joint request, both Relator and Defendants submitted their respective briefing on this dispute on October 20, 2023.  (ECF Nos. 112-14.)

/ / /

Having reviewed Defendants' Motion to Compel [ECF No. 14], Relator's Opposition thereto [ECF No. 113], and the authorities cited therein, the Court **DENIES** Defendants' Motion to Compel for the reasons described below.

## I.     RELEVANT BACKGROUND

The False Claims Act ("FCA") encourages insiders to disclose fraud against the government through a qui tam provision that permits private individuals (known as "relators") to bring civil actions on the government's behalf and retain a portion of any award.  Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 995 (9th Cir. 2010).  When filing such a complaint, a relator must serve on the Government "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. § 3730(b)(2).  The purpose of this disclosure requirement is to give the United States enough information to make a well-reasoned decision whether to intervene or allow the relator to proceed alone with the action. United States ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 555 (C.D. Cal. 2003) (internal citations omitted).

Relator is a limited liability company whose sole member, Lisa Knott,[1] was employed by Defendants as a Therapy Development Specialist in its Structural Heart Division from August 2015 to April 2017.  (See ECF No. 85 at 7; ECF No. 104 at 2.) Pursuant to 31 U.S.C. §§ 3729, et seq., Relator filed its original Complaint under the FCA under seal on February 14, 2020. (ECF No. 1.)  The Relator summarized its allegations therein as follows: "Defendants engaged in an unlawful, systematic and nationwide scheme of providing illegal kickbacks to physicians and hospitals in the form of, inter alia, patient referrals, honoraria for sham speaker programs and events, free lavish meals, cocktail parties, and free patient marketing services to induce physicians and hospitals to use Abbott's MitraClip® device ("MC Device") to certain cardiac patients

---

[1] Relator and its sole member are collectively referred to herein as "Relator."

covered by [federal and state healthcare programs], in violation of the [Anti-Kickback Statute ("AKS")], and analogous state laws and statutes." (Id. at 3.) Relator submitted a copy of its Complaint and a "written disclosure of substantially all material evidence and information the person possesses" ("Disclosure Statement") to the Department of Justice as required by the False Claims Act. (ECF No. 113 at 3; ECF No. 114-1 at 5); 31 U.S.C. § 3730(b)(2). The Disclosure Statement included an unspecified number of attachments. (See ECF No. 113-2 at 4.) Relator additionally made subsequent periodic communications and status updates to the Government, who remains the real party in interest in this litigation. (ECF No. 113 at 3; ECF No. 114-1 at 5.)

      The government entities declined to intervene, and the Court unsealed the Complaint on March 25, 2021. (ECF Nos. 8, 9.) After three motions to dismiss on the pleadings, (see ECF Nos. 30, 45, 59), discovery opened in this case on February 15, 2023. (See ECF No. 69 at 3 (setting Rule 26(f) Conference deadline of February 15, 2023)); Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). . . ."). The Court held an Early Neutral Evaluation and Case Management Conference on April 17, 2023 and issued a Scheduling Order the following day. (See ECF Nos. 76, 77.) Relator filed its operative Third Amended Complaint ("Operative Complaint") on May 23, 2023, in which it added to its summary that Defendants' purported "nationwide scheme of kickbacks" also included patient practice building and "rewards in the form of clinical trial opportunities." (ECF No. 85 at 6-7.)

      On July 12, 2023, Defendants served Relator with their Requests for Production – Set One ("RFP"). (ECF No. 114-2 at 2.) Relevant here, RFP No. 4 sought "[a]ll communications between [Relator] and any government agency relating to Abbott or this litigation." (Id. at 2-3.) RFP No. 5 sought "[a]ll communications (excluding privileged communications solely between you and your counsel of record in this action) relating to any allegation that Abbott violated any law or to the claims or allegations of the Third Amended Complaint and Exhibits A and B thereto." (Id. at 3.) Relator timely

objected and withheld documents to the extent these RFPs called for "information protected by the attorney-client privilege, the common interest privilege, the joint prosecution privilege, or which constitute attorney work product that are protected from disclosure in discovery." (ECF No. 114-4 at 3-4.) Relator indicated it did not have any non-privileged documents responsive to RFP No. 4, and otherwise noted "that documents will be withheld on the basis of its objections." (Id. at 4-5.)

On August 14, 2023, Defendants served interrogatories on Relator. (ECF No. 114-5.) One interrogatory asked Relator to "[i]dentify all Government Agencies and any other governmental bodies with which You communicated relating to Abbott, this case, or any other litigation filed or contemplated by You against Abbott." (ECF No. 114-5 at 6.) After raising overbreadth and privilege objections, Relator listed eleven such government entities and indicated it would produce responsive, non-privileged documents. (ECF No. 114-6 at 3-4.)

After meeting and conferring with one another and engaging in an informal discovery conference with the Court, Defendants now move to compel production of Relator's Disclosure Statement and subsequent communications/submissions to the government (together, "Government Communications") as responsive to the RFPs discussed above. (ECF No. 114; see also ECF Nos. 105, 106, 112.) Pursuant to a briefing schedule requested by the parties, Defendants filed their Motion to Compel the same day that Relator filed its Opposition thereto, on October 20, 2023. (ECF Nos. 113, 114.)

## II. DISCUSSION

Defendants claim that Relator's Government Communications are relevant and critical to Abbott's defense and should be produced. (ECF No. 114-1 at 7.) Relator argues that the Government Communications are completely protected under the work product and common interest doctrines. (ECF No. 113 at 2.) Defendants assert that they have demonstrated substantial need and undue hardship sufficient to justify the disclosure of fact work product, a conclusion Relator contests. (Compare ECF No. 114-1 at 10-12 (arguing both substantial need and undue hardship "are squarely met"), with

ECF No. 113 at 5-9 (arguing "Defendants have not submitted to the court any reason why they have a substantial need for the documents or why they cannot obtain the substantial equivalent of the documents by other means") (quoting United States ex rel. Burroughs v. DeNardi Corp., 167 F.R.D. 680, 684 (S.D. Cal. 1996)).) The parties also disagree about whether the Disclosure Statement and the identification of which documents counsel selected to include as exhibits are opinion or fact work product, with opinion work product carrying even greater protection. (Compare ECF No. 113 at 4-5 (arguing that counsel's selection of which facts and exhibits are material renders them opinion work product) with ECF No. 114-1 at 12 (arguing any redactions should be minimal because of "disclosure statements' factual nature").)

Based on the arguments summarized above, Defendants ask this Court to do what it asserts "courts commonly" do: review the Government Communications in camera, order them produced with only minimal redactions, and order Relator to produce and identify each document that was included as an exhibit to its Disclosure Statement or subsequent submissions. (ECF No. 114-1 at 6, 9.) Relator states it has already produced all underlying documents in response to other RFPs, and otherwise opposes each of these requests. (ECF No. 113 at 4.)

**A.  Legal Standard**

The Federal Rules of Civil Procedure[2] permit parties to obtain discovery of any nonprivileged matter relevant to the parties claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); see also, e.g., United States ex rel. Jacobs v. CDS, P.A., No. 4:14-cv-00301-BLW, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) ("The allegations of the complaint logically shape the scope of discovery. . . ."). Factors used to determine proportionality under this standard are the importance of the issues at stake, the amount in controversy, the parties' access to relevant information, the

---

[2] All future references to the Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

parties' resources, the importance of the discovery in resolving the issues, and whether the burden outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). District courts have broad discretion to grant or deny discovery. United States ex rel. Fiederer v. Healing Hearts Home Care, Inc., No. 2:13-cv-1848-APG-VCF, 2014 WL 4666531, at *3 (D. Nev. Sept. 18, 2014); Fed. R. Civ. P. 26(b)(2)(C)(i); Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) ("[B]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.") (quoting Goehring v. Brophy, 94 F.3d 1294, 1305 (9th Cir. 1996)).

Under Rule 37, a party may move the Court to compel disclosure of certain discovery. Fed. R. Civ. P. 37(a)(1). The party seeking discovery must demonstrate that the request satisfies Rule 26's relevance requirement. See, e.g., Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The party resisting discovery "has the burden of clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing, inter alia, Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

The FCA is silent on the issue of whether the written disclosures it requires are discoverable. Bagley, 212 F.R.D. at 558; see also 31 U.S.C. 3730(b)(2). For this reason, Courts generally apply the federal work product rules. See, e.g., United States ex rel. Yannacopoulos v. General Dynamics, 231 F.R.D. 378, 381 (N.D. Ill. 2005); United States ex rel. Fisher v. JPMorgan Chase Bank N.A., Civil Action No. 4:16-CV-00395, 2020 WL 3265060, at *4 (E.D. Tex. June 17, 2020). Rule 26(b)(3) codifies the attorney work product doctrine in federal court and generally protects documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or its representative" from discovery. Fed. R. Civ. P. 26(b)(3).

However, Rule 26 provides an exception and permits discovery where a party seeking information shows "substantial need for the materials to prepare its case" and inability to obtain the same or substantial equivalents without due hardship. Id. at

26(b)(3)(ii).  Even then, the Court must not order the disclosure the "mental impressions, conclusions, opinions, or legal theories of a party's attorney."  Id. at 26(b)(3)(B).  This distinction grants this latter, "opinion" work product nearly absolute protection, while a party who demonstrates substantial need and undue hardship may discover "fact" work product.  Bagley, 212 F.R.D. at 559.

**B.    Relator's Disclosure Statement and Subsequent Communications with the Government are Protected as Work Product, and Even Factual Portions Thereof Are Only Discoverable Upon a Showing of Substantial Need and Undue Hardship.**

Relator claims that the Government Communications at-issue are protected as work product, noting that "the majority of courts have found that the written disclosure statement provided in compliance with the FCA falls under the work-product doctrine as a document prepared in anticipation of litigation, or have applied the principles of ordinary work product when analyzing whether the disclosure statement is discoverable."  (ECF No. 113 at 4 (quoting Bingham v. Baycare Health System, Case No: 8:14-cv-73-T-23JSS, 2016 WL 1546504, at *4 (M.D. Fla. Apr. 15, 2016) (collecting cases)).)  Though Defendants do not explicitly contend that the work product doctrine does not apply to written disclosures, they also do not concede Relator's position.  (See ECF No. 114-1.)

This Court agrees with most courts that written disclosures and subsequent communications between the Relator about the litigation should be analyzed under the work product doctrine.  See, e.g., United States ex rel. Brown v. Celgene Corporation, Case No. CV 10-3165, 2015 WL 12731923, *8 (C.D. Cal. July 24, 2015) ("Because Relator's disclosure statement was prepared in anticipation of trial, the Court agrees with the weight of authority that it qualifies as work product."); Bingham, 2016 WL 1546504, at *4 (collecting cases); United States v. California Institute of Tech., Case No.: CV 18-5964 CAS (RAOx), 2020 WL 13547790, at * (C.D. Cal. Nov. 18, 2020) ("Although courts have taken different approaches in determining the extent to which FCA

disclosure statements are fact or opinion work product, most courts agree that the statements are, at a minimum, fact work product."). By statutory requirement, the Disclosure Statement was prepared in anticipation of litigation, either by Relator or its representative. Therefore it, and the fact of which exhibits Relator included as material evidence, are protected as at least fact work product. See United States ex rel. Calilung v. Ormat Industries, Ltd., 3:14-cv-00325-RCJ-VPC, 2015 WL 13709969, at *4 (D. Nev. Dec. 23, 2015) ("[T]he court observes the culling of certain documents to attach to the disclosure statements—like the selection of facts discussed therein—was done in anticipation of litigation, and likely reflects some analysis and strategizing by relator's counsel."). Even when the Government does not intervene, "the relator is proceeding as the Government's assignee." United States ex rel. Burns v. Family Practice Associates of San Diego, 162 F.R.D. 624, 626 (S.D. Cal. 1995). Consequently, the subsequent communications between Relator and the Government while litigation is ongoing are likewise protected by the work product doctrine. See, e.g., United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co. ("Branch II"), CIVIL ACTION NO: 06-4091-SSV-SS, 2010 WL 11627441, at *5 (E.D. La. May 12, 2010) (evaluating relator's communications with the Government other than the disclosure statement under the work product doctrine).

District courts have been divided about "whether disclosure statements are entirely fact work product, entirely opinion work product, or a combination of the two." Calilung, 2015 WL 13709969, at *2; see also, e.g., California Institute of Tech., 2020 WL 13547790, at * 3 ("There is a split among the courts as to the degree of work product protection afforded to disclosure statements made to the government pursuant to the FCA."). While some have favored a bright line rule that the disclosure statements are entirely opinion work product because the preparer was required to assess materiality and determine how most persuasively to present the facts to the government, others have ordered them produced entirely, or with materials determined to be opinion work product redacted. See, e.g., id. at * 3-*5 (discussing range of cases).

In any event, distinguishing between opinion versus fact work product is only necessary when the party seeking disclosure has shown substantial need and undue hardship sufficient to justify the production of fact work product.  See, e.g., United States ex rel. Hunt v. Merck-Medco Managed Care, LLC, No. 00-CV-737, 2004 WL 868271, at *3 (E.D. Pa. Apr. 21, 2004) (finding defendant had failed to show substantial need and undue hardship, and therefore denying motion to compel disclosure and for in camera review).  Because, as discussed below, this Court finds Defendants have failed to make such a showing, it is unnecessary to parse opinion from fact work product here.  Therefore, the Court declines to enter the debate about the extent to which disclosure statements are fact versus opinion work product or to review the Government Communications in camera.

**C.     Defendants Fail to Show Substantial Need and Undue Hardship**

Defendants' sole argument in support of its substantial need for the Government Communications is that they need Relator's disclosures to determine whether Relator can claim to be an original source of the allegations in the Operative Complaint.  (ECF No. 114-1 at 5-6, 10-11.)  Relator contends this argument fails because Abbott has failed to identify any public disclosure that would implicate the public disclosure bar.  (ECF No. 113 at 7.)

Defendants have not identified a public disclosure that would give rise to a public disclosure defense and create a substantial need for the discovery on Relator's status as an original source of allegations in the complaint.  The FCA provides that courts should dismiss a suit brought by a private person "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in one of three contexts: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or is agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4)(A).  Relevant here, this public disclosure bar can be overcome by Government opposition to dismissal or relator's status as "an original

source of the information," meaning someone who (1) voluntarily disclosed the information underlying the allegations to the government prior to public disclosure, or (2) provided the government with independent and material information additional to the public disclosures prior to filing the lawsuit. 31 U.S.C. § 3730(e)(4)(A) & (B). Courts determining whether a public disclosure requires dismissal engage in a two-step inquiry. United States ex rel. Calva v. Impac Secured Assets Corp., Case No. SACV 16-1983 JVS(JCGx), 2018 WL 6016152, at *3 (C.D. Cal. June 12, 2018). The first question is whether there was "'public disclosure' of the allegations or transactions underlying the qui tam suit through one of the enumerated sources." Id. (citing 31 U.S.C. § 3730(e)(4)(A)). Only if there has been a public disclosure must the court then determine whether the relator is an original source. Id.

No party has cited any Ninth Circuit authority regarding whether or when the public disclosure defense demonstrates substantial need sufficient to overcome work product protections. (See ECF Nos. 113, 114.) Instead, the parties rely on district court cases from across the country that have been divided in their consideration of the issue. (Id.) Some courts have concluded "it [would] be difficult, if not impossible, for Defendant to determine whether any of the facts upon which Relator relied at the time she brought this action were already public knowledge without knowing what those specific facts were, or to determine if Defendant was the 'original source' of any facts that had been publicly disclosed." Brown, 2015 WL 12731923, at *8; see also, e.g., United States ex rel. Cericola v. Ben Franklin Bank, No. 99 C 6311, 2003 WL 22071484, at *3 (N.D. Ill. Sept. 4, 2003) (finding relator's desire "to compare the facts revealed by the Relator as the original source and facts that were available to the public via Defendants' Public Housing and Urban Development Disclosures" constituted a substantial need where the relator alleged she was an original source). Indeed, it appears that the first published district court opinions to address this issue reached similar conclusions. See United States ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F. Supp. 1338, 1346 (E.D. Mont. 1996) (noting "all the courts to address [substantial need for disclosure

statements] in published opinions have compelled the relator and government to produce the written disclosure on similar grounds") (collecting published cases).

However, other courts have concluded that if such a vague assertion of a possible public disclosure defense were considered substantial need, it would turn the exception into the rule and destroy any claim of work product protection in the context of written disclosures. Calilung, 2015 WL 13709969, at *3. Instead, many courts consider the specific facts of the case to ascertain whether, under the circumstances, the public disclosure defense creates a substantial need. See, e.g., Branch II, 2010 WL 11627441, at *4 (E.D. La. May 12, 2010) (finding that because at trial "Branch must demonstrate that <u>when</u> it filed suit it was an original source of the information on which the allegations in the first amended complaint are based," the defendants had substantial need for the written disclosures[3]); United States ex rel. Ferris v. Afognak, No. 3:15-cv-0150-HRH, 2018 WL 4168988, at *4 (D. Ala. Aug. 30, 2018) (explaining how the relator's alleged violations overlapping with those that had been previously raised by a different relator in a separate lawsuit made it necessary for the defendants to ascertain whether the relator was the original source of those claims); United States ex rel. Carter v. Halliburton ("Carter II"), 266 F.R.D. 130, 134 (E.D. Va. 2010) (finding magistrate judge erred by concluding "a potential 'original source' argument" gave rise to substantial need where the defendants failed to cite any previous public disclosure of the relator's allegations and the relator testified at deposition about who he worked with and who he told about the allegations).

This Court agrees with other courts that require defendants seeking discovery of the disclosure statement based on a public disclosure defense to demonstrate a specific,

---

[3] Though the discussion in this Branch II discovery order does not detail the factual history of the case, an earlier order resolving a motion to dismiss concluded that the defendants' allegations were based upon public disclosures and would be barred unless Branch could show it was the original source, supporting the cited conclusion in the discovery order. See United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co. ("Branch I"), 668 F. Supp. 2d 780, 789-97 (E.D. La. 2009).

rather than a possible, need for the original source information, and a case specific indication that the same information cannot be obtained through other means. Such an approach strikes the appropriate balance between protecting a party's labors in anticipation of trial, encouraging relator's full disclosure to the government, and ensuring the opposing party's right to discovery of critical, otherwise unavailable information.

In the present case, Defendants' Answer generically asserts that "Relator's claims are barred, in whole or in part, based on the public disclosure of substantially the same allegations or transactions, in accordance with 31 U.S.C. § 3730(e)(4)(A), and Relator Everest Principals, LLC is not an original source of the information." (ECF No. 89 at 84.) In the present motion, Defendants indicate Relator's reliance on public information, including Relator's use of public payment data and the public statements of Defendants' executives support their need for discovery into whether Relator is an original source. (ECF No. 114-1 at 8-9.) They claim that Relater's Disclosure Statement will show that it was not the original source of this data. (Id. at 9.) But it is clear in this case that Relator relied on publicly available information—the complaint is explicit in that regard. (See ECF No. 85 at 110 n.18, 118-19 & n.24; ECF No. 85-1; ECF No. 85-2.) Defendants do not argue that either payment data or the quoted public statements of executives qualify as "public disclosures" under 31 U.S.C. § 3730(e)(4)(A). Even if they qualified as such, because Relator explicitly relied on the publicly available information, it cannot argue it was an original source of that information under 31 U.S.C. § 3730(e)(4)(B)(i), because it could not have voluntarily shared the same information with the government "prior to [the] public disclosure." Therefore, as to the publicly available information referenced by Defendants, there is no evident dispute that would warrant discovery. Nor do Defendants need the disclosure statement to identify the allegations to compare against potential public disclosures, because the issue is whether the allegations in "the action or claim" were publicly disclosed in one of the enumerated ways. (See 31 U.S.C. § 3730(e)(4)(A).) Those allegations are available on the docket.

Defendants also argue that the Disclosure Statement is relevant because "it illuminates the factual bases" of Relator's claims, and it "could reveal inconsistencies between Relator's representations to the government and its litigation positions." (ECF No. 114-1 at 8 n.3 (citing Branch II, 2010 WL 11627441, at *4 and United States ex rel. Carter v. Halliburton Co. ("Carter I"), Civil Action No. 1:08cv01162 (JCC/JFA), 2010 WL 11561318, at * 2 (E.D. Va. Feb. 5, 2010).)  In the first place, the Court notes that these are part of a relevance argument in Defendants' brief, not a substantial need argument. But to the extent Defendant may have asserted these arguments in support of Defendants' claim of substantial need, the Court finds them unpersuasive.

"One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992) (citing Admiral Ins. Co. v. United States Dist. Court, 881 F.2d 1486, 1494 (9th Cir. 1989)).  In every case, a document prepared by a plaintiff, carefully assembling all material information and evidence in support of its claims, would plainly assist the defendant.  But the work product doctrine does not permit one party to exploit the other's work this way. Therefore, "[c]ourts have found relevant the extent to which a relator has been cooperative in discovery in determining whether defendants have met the requisite showing of substantial need and undue hardship." California Institute of Tech., 2020 WL 13547790 (comparing cases) while a qui tam defendant may demonstrate substantial need for a disclosure statement where "the plaintiff has provided little in the way of discovery which would reveal the factual basis for the allegations in the complaint," and the trial date is quickly approaching, (see United States ex rel. Stone v. Rockwell Intern. Corp., 144 F.R.D. 396, 401 (D. Colo. 1992)), this justification would only apply in limited circumstances.  See, e.g., Hunt, 2004 WL 868271, at *3 (noting an absence of the minimal discovery responses and imminent trial found in Stone, and that "perhaps most importantly" the defendants had yet to depose relators and finding "[i]n such circumstances, compelling production of the Disclosure Statements would be

premature, at best"); United States ex rel. Fisher v. Homeward Residential, Inc. ("Homeward"), CASE NO. 4:12-CV-461, 2015 WL 4610284, at *4 (E.D. Tex. July 31, 2015) (rejecting defendant's argument that it had a substantial need for the disclosure statement to conduct discovery where relators had produced all of the factual documents that accompanied the disclosure statements, identified witnesses named therein, and relators were deposed about their allegations).

At this point in the litigation, Defendants have not shown that Relator has failed to provide the factual basis of its claims through discovery.  Relator has produced all documents it relied on to generate the Disclosure Statement.  (ECF No. 113 at 6.)  Though discovery has been open in this case since at least February 15, 2023, Defendants have not shown that Relator has failed to provide meaningful and forthright responses to discovery directed at understanding and assessing Relator's case or refused to explain the basis of its claims through interrogatory responses or deposition testimony.  Defendants only argument that Relator has failed to cooperate in discovery is Relator's alleged refusal to identify the documents that were attached as Exhibits to the Disclosure Statement "when it communicated with government agencies."  (ECF No. 114-1 at 11.)  Relator confirms that while it has provided all the documents it relied upon to produce the Disclosure Statement, it has refused to identify which of those were attached as exhibits because that would divulge work product in the selection of material information.  (ECF No. 113 at 5.)  As the Court discussed, infra, it agrees with Relator on this issue.  And Defendants have not demonstrated that Relator refuses to identify the dates of its Government Communications.  Defendants' Interrogatory Number 4 did not ask for the dates of the Government Communications, only for Relator to identify the government entities with which it communicated about relevant topics.  (ECF No. 114-6 at 3.)  Relator provided a list of those governmental entities.  (Id.)  Under these circumstances.  Defendants have not shown that production of the Government Communications would uniquely satisfy a substantial need.

///

Regarding Defendants' potential impeachment argument, the district court reversed the only supportive case cited by Defendants on reconsideration, noting that "'the mere surmise that production might reveal impeaching matter [is] not sufficient to justify production' and the seeking 'party must present more than speculative or conclusory statements.'" Carter II, 266 F.R.D. at 133 (quoting Duck v. Warren, 160 F.R.D. 80, 82 (E.D. Va. Jan. 31, 1995)).  The district judge also explained the magistrate judge had stated during the hearing that "'mere credibility or impeachment' was insufficient to pierce the factual work product privilege." Id. (citing hearing transcript).  This Court is inclined to agree and finds that a hypothetical opportunity for impeachment does not support a finding of substantial need.

### III.    CONCLUSION

For the reasons discussed in this Order, the Court finds Defendants have failed to show the substantial need and undue hardship necessary to overcome the work product protections that apply to the Disclosure Statement and subsequent Government Communications.  The Court therefore **DENIES** Defendants' motion in all respects.

**IT IS SO ORDERED**.

Dated:  November 20, 2023

Honorable Michael S. Berg
United States Magistrate Judge