UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*; *ex rel.* EVEREST PRINCIPALS, LLC,<br><br>                    Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, *et al.*,<br><br>                    Defendants. | Case No.:  3:20-cv-00286-W-MSB<br><br>**ORDER OVERRULING OBJECTION TO MAGISTRATE JUDGE'S SCOPE OF DISCOVERY [DOCS. 116]** |

Pending before the Court is Defendants Abbott Laboratories, Abbot Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc.'s (collectively, "Defendants" or "Abbott") objection ([Doc. 116], "Objection") to U.S. Magistrate Judge Michael S. Berg's order setting the geographic and temporal scope of discovery in this case ([Doc. 108], "Discovery Order").  Plaintiff-Relator Everest Principals, LLC ("Relator") opposes the Objection.  ([Doc. 119], "Opposition".)

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **OVERRULES** the Objection and **AFFIRMS** the Magistrate Judge's Discovery Order.

I. **RELEVANT BACKGROUND**

This case involves a *qui tam* action brought by Relator against Defendants on behalf of the United States of America and several states for alleged violations of the

1  federal False Claims Act ("Federal FCA") and several state law equivalents to the federal
2  FCA ("State Law FCA").  (*See* [Doc. 85], "Third Amended Complaint" of "TAC".)
3      Defendants are involved in the manufacturing and sale of medical devices,
4  instruments, medications, and other health care products.  (*TAC* at ¶¶ 6-10.)  Under 42
5  U.S.C. 1320a-7b, it is illegal to knowingly or willfully solicit, offer, receive, or pay
6  "renumeration (including any kickback, bribe, or rebate)" in exchange for referring
7  medical patients or in exchange for purchasing or recommending the purchase of any
8  healthcare good—including medical devices.  In relevant part, the TAC alleges that
9  Defendants ran a nationwide illegal kickback scheme to induce physicians and hospitals
10 to use Defendants' cardiac medical device (the "MC Device").  (*See id.* at ¶ 2.)
11 Specifically, Relator alleges that the scheme gave illegal "kickbacks" or
12 "remuneration"—often in the form of patient referrals, honoraria for sham speaker
13 programs, free marketing services, lavish meals, and cocktail parties—to surgeons who
14 implanted Defendants' MC Device and to other physicians who referred cardiac patients
15 to surgeons that implanted Defendants' MC Device (the alleged "Practice-Building and
16 Referral Policy").  (*See id.* at ¶¶ 146-47.)  As alleged, those surgeons and physicians
17 received reimbursement from government healthcare programs, such as Medicare,
18 Medicaid, TRICARE, the VA, and several state healthcare programs.  (*Id.* ¶¶ 2-3.)  Thus,
19 Relator has brought this *qui tam* action on behalf of the United States and several other
20 states.
21     For example, Relator alleges that on one occasion, one of Defendants' Account
22 Managers told Relator that "[Relator] would only get credit [towards his/her bonus as a
23 sales representative] for hosting events . . . with targeted hospitals in Los Angeles, if the
24 patients who were treated with the MC Device were referred from specific referral
25 physicians and were treated by specific implanting physicians.  Relator expressed
26 concern that this approach sounded like 'practice-building' – which is well know
27 throughout Abbott . . . to constitute a violation of [42 U.S.C. 1320a-7b] – and [the
28 Account Manager] indicated that he agreed with this conclusion.  In response [to raising

this concern] . . . Relator was [shortly thereafter] informed that Los Angeles was no longer in his/her assigned sales territory." (*Complaint* at ¶ 154.)

Relator filed the original complaint ([Doc. 1], "Original Complaint") on February 14, 2020.  Relator then filed the first amended complaint ([Doc. 35], "FAC") on August 19, 2021.  The FAC alleged causes of action under the Federal FCA as well as causes of action under the FCAs of 26 different states.  On September 17, 2021, Defendants moved to dismiss the FAC, arguing that it failed to meet Rule 9(b)'s particularity requirement with respect to both the Federal FCA claims, and the State Law FCA claims.  FED. R. CIV. P. 9(b).  (*See* [Doc. 45], "First MTD.")  On August 18, 2022, this Court granted in part and denied in part the First MTD, dismissing the 26 State Law FCA claims with leave to amend but refusing to dismiss the Federal FCA claims.  (*See* [Doc. 56], "First MTD Order".)  In doing so, this Court painstakingly explained how the FAC sufficiently plead each element of the Federal FCA causes of action.  (*See First MTD Order* at 8-16.)  Likewise, the Court explained that the State Law FCA causes of action had to be dismissed because they "fail[ed] to allege facts with specificity with respect to each [of the 26] asserted state[s]." (*First MTD Order* at 16-17.)

Relator thereafter filed its second amended complaint ([Doc. 57], "SAC"), in which Relator attempted to add factual allegations regarding each of the states for which Relator brought State Law FCA claims for.  (*See SAC*; *see also* [Doc. 57-3], "Redline Comparison of SAC to FAC".)  Defendants then moved to dismiss the SAC's State Law FCA claims, once again arguing that they failed to meet Rule 9(b)'s particularity requirement.  ([Doc. 59], "Second MTD.")  On November 29, 2022, this Court entered an order ([Doc. 62], "Second MTD Order") granting in part and denying in part the Second MTD.  Specifically, this Court dismissed all of the State Law FCA claims expect for those of four states—California, Florida, Georgia, and New York—on the grounds that only those four states were sufficiently pled in the SAC.  (*Second MTD Order* at 4-9.)  On May 23, 2023, with permission of the Court and Defendants' agreement, Relator filed a third amended complaint ([Doc. 85] "TAC" or "Operative Complaint") that is

1  substantially similar to the SAC and appears to primarily correct typographical errors
2  from the SAC.  (*See* [Doc. 84], "Order Granting Joint Motion to File TAC"; [Doc. 81-4],
3  "Redline Comparison of TAC to SAC.")
4       Now, the parties dispute the proper geographic and temporal scope of discovery.
5  On the one hand, Defendants assert that because the Second MTD Order dismissed all
6  but four of the State Law FCA claims, the geographic scope of discovery should be
7  limited to just those four states plus Arizona[1]—even with respect to the Federal FCA
8  causes of action.[2]  (*See Discovery Order* at 6-7.)  On the other hand, Relator argues that it
9  is entitled to nationwide discovery because it has alleged a "nationwide scheme" with
10 respect to the Federal FCA causes of action.  (*See id.* at 11.)
11      Similarly, Defendants argue that the temporal scope of discovery should be limited
12 to just October 2015 through February 2017—the time period in which the TAC alleges
13 "specific kickbacks" to physicians.  (*Objection* at 21-24.)  Meanwhile, Relator argues that
14 the temporal scope of discovery should start on August 1, 2015 and go through February
15 14, 2020 because, in Realtor's estimation, the TAC does allege: (1) fraudulent conduct by
16 Defendants before October 2015 and after February 2017 and (2) that Defendants'
17 Referral and Practice Building Policy was part of a broader practice that continued well
18 after 2017.  (*Opposition* at 24.)
19      In his Discovery Order, the Magistrate Judge ordered that the geographic scope of
20 discovery in this case should be nationwide, considering that the TAC alleged a

---

[1] While Relator has never alleged a State Law FCA claim for Arizona, Defendants' "do[] not contest for purposes of determining the appropriate scope of discovery that the Operative Complaint contains well-pleaded allegations about Arizona." (*Objection* at 8 n.2.)

[2] This fight over the scope of discovery is unusual in that the Defendants' do not actually present the Court with any specific discovery requests they object to. (*See Discovery Order* at 18; *see generally Objection*.)  Instead, Defendants argue abstractly that the geographic and temporal scope of discovery should be limited by what are the well pled geographic and temporal allegations in the TAC.  (*Id.*)  Defendants make no argument regarding proportionality, which is unsurprising seeing as the Court does not have any specific discovery requests to evaluate for proportionality.

1 "nationwide scheme" under the Federal FCA.  (*Discovery Order* at 11.)  The Magistrate
2 Judge also ordered that the temporal scope of discovery in this case should be from
3 August 1, 2015, through February 14, 2020 because the TAC sufficiently alleges that
4 Defendants' Practice-Building and Referral Policy was in operation before October 2015,
5 and after February 2017.  (*Id.* at 16-18.)

## II. LEGAL STANDARD

Under Rule 72(a), a party may file an objection to a magistrate judge's order within 14 days of being served a copy of the order.  FED. R. CIV. P 72(a).  From there, the district judge "must consider timely objections and modify or set aisle any part of the order that is *clearly erroneous or is contrary to law*."  *Id*. (emphasis added).  Under this standard, the district court must defer to factual findings or discretionary decisions of the magistrate judge, disturbing those findings/decisions only when "the district court is left with the definite and firm conviction that a mistake has been committed*."  Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 2019 WL 5422931, at *2 (S.D. Cal. Oct. 23, 2019) (citing *Grimes v. City and Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991); *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993); and *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997)).  District courts review a magistrate judge's legal conclusions *de novo*.  *Id*.

## III. DISCUSSION

### A. Geographic Scope of Discovery

Defendants object to the Magistrate Judge's Discovery Order on the grounds that the geographic scope of discovery permitted is overbroad—because it permitted nationwide discovery.  (*See Objection* at 14-17.)  The core of Defendants' argument is that when the First MTD Order (dismissing all of the State Law FCA claims but not the Federal FCA claims) and the Second MTD

Order (dismissing all but four of the State Law FCA claims and not addressing the Federal FCA claims) are read together, they stand for the proposition that the scope of discovery in this case should be limited to just the states who's State Law FCA claims remain: California, Florida, Georgia, and New York; plus Arizona. (*Id*.) Because, in Defendants' view, if a State Law FCA claim cannot be sustained in a state, then a Federal FCA claim cannot be sustained in that state and the scope of discovery in FCA cases is somehow confined to only the states where a State Law FCA claim could be pled. In turn, Relator argues that the scope of discovery should be nationwide because the TAC alleges a "nationwide scheme" by Defendants. (*See Opposition* at 17-18.) The Magistrate Judge found the TAC properly alleged a "nationwide scheme." (*Discovery Order* at 7-8.)

   Defendants' argument is misplaced for several reasons. First, it misunderstands the Court's First and Second MTD Orders. As the Magistrate Judge correctly noted in the Discovery Order, the First and Second MTD Orders in no way foreclosed a "nationwide" claim. (*Discovery Order* at 7-8.) In the First MTD, Defendants asked the Court to dismiss both the Federal FCA claims and all of the State Law FCA claims for failing to meet Rule 9(b)'s heightened pleading requirement. (*First MTD* at 16-35.) The Court declined to dismiss the Federal FCA claims but dismissed all of the State Law FCA claims with leave to amend. (*First MTD Order* at 17.) Thus, the Court has already ruled unambiguously that a Federal FCA claim may be properly alleged without any State Law FCA claim remaining. In the Second MTD, Defendants only asked the Court to dismiss the realleged State Law FCA claims, but made no mention of the Federal FCA claims. (*Second MTD* at 2.) The Court granted this request with respect to all but four State Law FCA claims. (*Second MTD Order* at 9-10.) At no prior point have Defendants asked, nor has the Court considered, whether the TAC—or any prior versions of the complaint—sufficiently alleges a nationwide scheme by Defendants. Now, Defendants attempt what is essentiality a belated motion to

dismiss regarding the TAC's "nationwide scheme" allegations by way of challenging the scope of discovery.

Even looking past this procedural issue, the Magistrate Judge noted how the "Operative Complaint adequately alleges a nationwide scheme related to the [Federal FCA claims]" and pointed to numerous instances where the TAC alleges specific facts supporting its allegations of a "nationwide scheme" by Defendants. (*See Discovery Order* at 12-14.)  First, the TAC contains detailed allegations about how Defendants' sales representatives were trained at a national level to "funnel" patient referrals to physicians who used Defendants' MC Device (*i.e.*, as a reward to those physicians for using Defendants' device) and to advertise this to physicians when marketing the MC Device.  (*See TAC* at ¶¶ 150, 168.)  Second, the TAC also alleges that in August 2015, Defendants conducted a training with their sales representatives covering Arizona, California, Connecticut, Florida, Illinois, Indiana, New York, and Ohio where Defendants provided the sales representatives with a script outline "to convince the implanting physicians [prospective buyers of the MC Device] that they had 'an ideal opportunity to build their patient base from [participating in] Abbott's referral physician[] [program].'" (*Id.* at ¶ 150.)  At this same training, the TAC also alleges that these sales representatives were trained on how to use data from Abbott's national database to track the efficiency and effectiveness of their Practice-Building and Referral Policy to sell the MC Device.  (*Id.*)  Fourth, in November 2015, the TAC alleges that Defendants' National Director of Structural Heart Marketing had a check-in call with each new sales representative to "make sure they were engaged in best-practices for referral-generating and practice building . . . with targeted implanters and referral physicians." (*Id.*)  Fifth, the TAC alleges that at a 2016 National Sales Meeting attended by Defendants' National Sales Director, U.S. Marketing Management Team, managers representing all states in the U.S., and new hires; one of Defendants' sales representatives gave a presentation to attendees about

how to best sell the MC Device using the Practice-Building and Referral Policy. (*Id.* at ¶ 163(e).)  Sixth, the TAC alleges that at least in 2016, Abbott's Incentive Compensation Calculator for sales representatives contained a metric to measure the effectiveness of sales representatives at using the Practice-Building and Referral Policy to sell the MC Device.  (*Id.* at ¶ 155.)  Lastly, at an April 2016 conference, Defendants allegedly trained sales representatives responsible for marketing the MC Device in Arizona, Georgia, Illinois, Louisiana, Minnesota, Pennsylvania, Texas, California, Hawaii, and Washington state on "best practices" for funneling "all potential referral sources" to physicians who used Defendants' MC Device.  (*Id.* ¶ 151.)

    For these reasons, the Court agrees with the Magistrate Judge's conclusion that the TAC sufficiently alleges that Defendants were involved in a "nationwide scheme," warranting a nationwide scope of discovery.

    Even if Relator had not alleged a "nationwide scheme," discovery should not be limited to just Arizona, California, Florida, Georgia, and New York in this case.  While "discovery must be tethered to the claims and defenses asserted in a particular action" (*see Discovery Order* at 8), the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  Indeed, absent proportionality issues, anything "reasonably calculated to lead to the discovery of admissible evidence" is discoverable.  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010).  Here, there is no legal basis to limit discovery to only Arizona, California, Florida, Georgia, and New York.  That evidence of a Federal or State Law FCA claim may exist outside of the states where the violation is alleged to have occurred does not render the evidence non-discoverable.  For example, evidence of a California State Law FCA claim may be located outside of California (in, say another state where Defendants conducted training for sales representatives covering California).

Ultimately, the Court agrees with the Magistrate Judge's determination that, at least with respect to relevancy grounds, the geographic scope of discovery should be nationwide. That being said, the Court acknowledges that permitting nationwide discovery in this case could begin to approach the sort of fishing expedition courts in *qui tam* cases often disfavor. On this point, the Court simply notes that the Magistrate Judge is fully empowered to carefully tailor discovery in this case on proportionality grounds if and when those issues arise in the future.

### B. Temporal Scope of Discovery

The Discovery Order also held that the proper temporal scope of discovery was from August 1, 2015, through February 14, 2020. While the TAC does not allege specific instances of kickbacks made to physicians before October 2015, or after February 2017, the TAC sufficiently alleges that Defendants' Practice-Building and Referral Policy was in place prior to October 2015, and continued beyond February 2017. (*Discovery Order* at 16-18.) As such, the Magistrate Judge concluded that Relator is entitled to discovery beyond just October 2015, to February 2017. (*Id*.) Defendants' object that this ruling was incorrect, contending that discovery in FCA cases cannot stretch "beyond [the time period] of any purported kickbacks or fraudulent conduct." (*Objection* at 23.)

When faced with similar questions about the scope of discovery in FCA cases, other federal courts have held that the temporal scope of discovery may extend beyond the dates realtor is able to allege specific instances of misconduct for when the complaint plausibly alleges that the misconduct at issue was part of the defendant's broader policy and practice before and/or after the allegations of specific misconduct. *Dalitz v. AmSurg Corp*., 2015 WL 8717398, at *4 (E.D. Cal. Dec. 15, 2015); *U.S. ex rel. Fiederer v. Healing Hearts Home Care, Inc*., 2014 WL 4666531, at *5-6 (D. Nev. Sept. 18, 2014). In *Dalitz*, Defendants argued that the temporal scope of discovery should be limited to September 1, 2010, through

January 17, 2011, because those were the dates the relator was employed by defendants (and thus were the only dates in which relator had sufficient knowledge allege specific instances of the defendants' fraudulent conduct).  2015 WL 8717398, at *3-4.  However, the *Dalitz* court permitted discovery from December 5, 2008, through August 27, 2012—reasoning that the "allegations of the first amended complaint demonstrate that the scope of relator plaintiffs' claims concern fraudulent practices by defendants that occurred prior to, during, and after relator plaintiffs' employment." *Id. at *4*.  In particular, the *Dalitz* court pointed to the complaint's allegations regarding the defendants' lack of responsiveness to relator's concerns about regulatory violations and concluded that such allegations plausibly demonstrated that the fraudulent conduct at issue occurred after relator's termination.  *Id*.

Similarly, in *Fiederer*, the court denied the defendants' request to limit the temporal scope of discovery to the dates relator was employed by defendants (*i.e.*, the only time period in which the relator had sufficient knowledge to allege specific instances of defendants' misconduct)—reasoning that relator had plausibly alleged that the specific instances of defendants' fraudulent conduct identified in the complaint were not merely isolated incidents, but instead part of broader "unwritten policy to alter patient charts."  2014 WL 4666531, at *5-6.

Here, just as in *Dalitz* and *Fiederer*, Relator has plausibly alleged that Defendants' illegal kickbacks to physicians were not limited to just the specific instances of kickbacks identified in the TAC (between October 2015, and February 2017), but instead part of Defendants' company-wide Practice-Building and Referral Policy in place both before October 2015, and after February 2017.  For instance, when Relator was first trained as a new hire in August 2015, Relator was explicitly trained (along with other new hires) to use Defendants' Practice-Building and Referral Policy when selling the MC Device—demonstrating that such conduct was plausibly taking place at Abbott before October 2015.  (*Id.* at ¶

150.)  Also as in *Dalitz*, Relator's allegations that his/her concerns about illegal "practice-building" were dismissed by managers demonstrates such conduct plausibly continued after February 2017.  (*Id.* at ¶ 154.)  As does Relator's allegations that Abbott's President and CEO stated in 2021 that "we're making our investments not only . . . [with] new versions of [the MC Device], ***but also more importantly in the market development, so really to expand the funnel of patients being treated, creating those patient referral networks with the cardiologists on our implanting center. So that's done very well***".  (*Id.* at ¶ 148 (emphasis in original).)  This allegation demonstrates the relevance of Defendants' conduct after February 2017.

Accordingly, the Court is satisfied that the Discovery Order set the proper temporal scope of discovery—August 1, 2015, through February 14, 2020.  The Discovery Order is not clearly erroneous or contrary to law, and therefore is affirmed.

### IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **OVERRULES** Defendants' Objection [116] and **AFFIRMS** the Magistrate Judge's Discovery Order [108].

**IT IS SO ORDERED.**

Dated:  January 26, 2024

_____
Hon. Thomas J. Whelan
United States District Judge