# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*; *ex rel.* EVEREST PRINCIPALS, LLC,<br><br>    Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, *et al.*,<br><br>    Defendants. | Case No.:  3:20-cv-286-W-MSB<br><br>**ORDER OVERRULING OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO COMPEL [DOC. 123]** |

Pending before the Court is the objection ([Doc. 123], "Objection") of Defendants Abbott Laboratories, Abbot Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Defendants" or "Abbott") to U.S. Magistrate Judge Michael S. Berg's order ([Doc. 121], "Discovery Order") denying Abbott's Motion to Compel ([Doc. 114], "MTC") the production of Plaintiff-Relator Everest Principals, LLC's ("Relator") disclosure statement and subsequent submissions/communications with the government.  Relator opposes the Objection.  ([Doc. 124], "Opposition".)

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **OVERRULES** the Objection and **AFFIRMS** the Magistrate Judge's Discovery Order.

# I. RELEVANT BACKGROUND

This is a *qui tam* case brought by Relator against Abbott on behalf of the United States and several states for allegedly violating the federal False Claims Act and several state law equivalents (collectively, the "False Claims Act"). (*See* [Doc. 85], "Third Amended Complaint" or "TAC" at ¶¶ 6-10.) Specifically, the Complaint alleges that "Defendants engaged in an unlawful, systematic and nationwide scheme of providing illegal kickbacks to physicians and hospitals . . . ." in an effort to increase sales of Abbott's MitraClip medical device. (*TAC* at ¶ 2.) According to Relator, this "scheme" "knowingly caused the submission of thousands of false claims for payment to Government Healthcare Programs." (*Id.* at ¶ 3.)

In an effort to encourage insiders to disclose fraud against the government, the False Claims Act allows private individuals to bring civil actions on the government's behalf (and retain portion of the award) via *qui tam* actions. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 995 (9th Cir. 2010). When filing such a complaint, a relator must provide the government with "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. § 3730(b)(2). That way, the government can make a "well-reasoned decision on whether it should participate in the filed lawsuit or allow the relator to proceed alone" *E.g.*, *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 555 (C.D. Cal. 2003) (citations omitted).

Here, Relator filed its original complaint under seal on February 14, 2020. ([Doc. 1].) As required by the False Claims Act, Relator provided the Department of Justice with a copy of the complaint and "written disclosure of substantially all material evidence and information the person possesses" ("Disclosure Statement"). ([Doc. 113], at 3; [Doc. 114-1] at 5.) Apparently, there was an unspecified number of attachments to the Disclosure Statement and Relator had some subsequent communications with government entities regarding this case (the "Subsequent Communications"). (*Id.*) After

1 | the relevant government entities declined to intervene in the case, the Court unsealed the
2 | Complaint on March 25, 2021.  ([Docs. 8, 9.])
3 |   On July 12, 2023, Abbott served Relator with their Requests for Production – Set
4 | One ("RFP").  ([Doc. 114-2] at 2.)  At issue here, RFP No. 4 sought "[a]ll written
5 | disclosure communications between [Relator] and any government agency relating to
6 | Abbott or this litigation."  (*Id*. at 2-3.)  Similarly, RFP No. 5 sought "[a]ll
7 | communications (excluding privileged communications solely between you and your
8 | counsel of record in this action) relating to any allegation that Abbott violated any law or
9 | to the claims or allegations of the Third Amended Complaint and Exhibits A and B
10 | thereto."  (*Id*. at 3.)  Relator timely objected to the RFPs 4 and 5, on the grounds that,
11 | among other things, they sought information constituting attorney work product.  Relator
12 | then refused to produce the requested documents.  ([Doc. 114-4] at 3-4.)
13 |   Ultimately, Abbott filed its MTC, asking the Magistrate Judge to order Relator to
14 | (1) produce its Disclosure Statement; (2) produce the Subsequent Communications; and
15 | (3) identify which already produced documents were attached to the Disclosure
16 | Statement.  ([Doc. 114-1] at 7-14.)  To overcome Relator's work product assertions,
17 | Abbott argued that the materials sought would help "illuminate[] the factual bases" for
18 | Relator's claims and "could reveal inconsistencies between Relator's representations to
19 | the government and its litigation positions"—which could go towards proving Abbott's
20 | asserted "public disclosure" defense.  (*See id*. at 6-9.)  From there, Abbott urged the
21 | Magistrate Judge to conduct an in camera review of the materials in order to redact any
22 | "opinion" work product before producing to Abbott.  (*Id*.)  The Magistrate Judge denied
23 | the MTC, reasoning that Abbott's "vague" and "generic" assertions of the Public
24 | Disclosure Defense did not demonstrate a "substantial need" for the materials.  (*See*
25 | *Discovery Order* at 11-12.)
26 |   Subsequently, Abbott filed the Objection to the Magistrate Judge's Discovery
27 | Order currently before the Court.  (*Objection*.)  However, Relator *has* produced all
28 | documents that it relied on to generate the Disclosure Statement.  ([Doc. 113] at 6.)

## II. LEGAL STANDARD

Under Rule 72(a), a party may file an objection to a magistrate judge's order within 14 days of being served a copy of the order. FED. R. CIV. P 72(a). From there, the district judge "must consider timely objections and modify or set aside any part of the order that is *clearly erroneous or is contrary to law*." *Id.* (emphasis added). Under this standard, the district court must defer to factual findings or discretionary decisions of the magistrate judge, disturbing those findings/decisions only when "the district court is left with the definite and firm conviction that a mistake has been committed." *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 2019 WL 5422931, at *2 (S.D. Cal. Oct. 23, 2019) (citing *Grimes v. City and Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991); *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993); and *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997)). District courts review a magistrate judge's legal conclusions *de novo*. *Id.*

## III. DISCUSSION

Abbott asks the Court to compel three things from Relator: (A) to produce the Disclosure Statement; (B) to produce the Subsequent Communications; and (C) to identify which documents that have already been produced were attached to the Disclosure Statement. (*Objection* at 12-29.)

### A. The Disclosure Statement

Relator was statutorily required by the FCA to provide the government with Disclosure Statement laying out out "all material evidence and information the [Relator] possesses." 31 U.S.C. § 3730(b)(2). With this in mind, it is unsurprising that "the majority of courts have found that the written disclosure statement provided in compliance with the FCA falls under the work-product doctrine as *a document prepared in anticipation of litigation . . . .*" *Bingham v. Baycare Health Sys.*, 2016 WL 1546504, at *4 (M.D. Fla. Apr. 15, 2016) (emphasis added) (*citing*

4

1   *U.S. ex rel. Spletzer v. Allied Wire & Cable, Inc.*, 2015 WL 7014620 (E.D. Pa.
2   Nov. 12, 2015); *U.S. ex rel. Fisher v. Homeward Residential, Inc.*, 2015 WL
3   4610284 (E.D. Tex. July 31, 2015); *U.S. ex rel. Fisher v. Ocwen Loan Servicing,*
4   *LLC.*, 2015 WL 4609742 (E.D. Tex. July 31, 2015); *Miller v. Holzmann*, 240
5   F.R.D. 20, 21 n.2 (D.D.C. 2007); *U.S. ex rel. Singh v. Bradford Reg'l Med. Ctr.*,
6   2007 WL 1576406 (W.D. Pa. May 31, 2007); *U.S. ex rel. Yannacopoulos v. Gen.*
7   *Dynamics*, 231 F.R.D. 378 (N.D. Ill. 2005); *U.S. ex rel. Hunt v. Merck-Medco*
8   *Managed Care, LLC*, 2004 WL 868271 (E.D. Pa. Apr. 21, 2004); *Bagley*, 212
9   F.R.D. 554; *U.S. ex rel. Cericola v. Ben Franklin Bank*, 2003 WL 22071484 (N.D.
10  Ill. Sept. 4, 2003); *United States v. Medica-Rents Co.*, 2002 WL 1483085 (N.D.
11  Tex. June 21, 2002); *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680
12  (S.D. Cal. 1996); *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp.
13  1338 (E.D. Mo. 1996); *U.S. ex rel. Burns v. A.D. Roe Co.*, 904 F. Supp. 592 (W.D.
14  Ky. 1995); *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396 (D. Colo.
15  1992).).

16  However, the fact that a document is prepared in "anticipation of litigation"
17  is not necessarily dispositive to its discoverability. *Bagley*, 212 F.R.D. at 559.
18  Indeed, while work product containing "opinion" work (*i.e.*, "mental impressions,
19  conclusions, or legal theories of an attorney or other representative of a party") is
20  afforded near absolute protection from discovery, work product containing "fact"
21  work (*i.e.,* "factual material prepared in anticipation of litigation or trial") may be
22  discoverable if a party shows it: (1) has a "substantial need" for the materials; and
23  (2) the materials cannot be obtained by any other means. *Id*.; *accord* FED. R. CIV.
24  P. 26(b)(3).

25  Here, Abbott argues that the Disclosure Statement likely contains "fact"
26  work product that is necessary for it to prove its asserted Public Disclosure
27  Defense. (*Objection* at 15-17.) To wit, the FCA requires relator's bringing *qui*
28  *tam* claims to be the "original source" of the allegations—meaning that

information that was "publicly disclosed" cannot form the basis of the claims. 31 U.S.C. § 3730(e)(3) (the "Public Disclosure Defense"). Thus, Abbott wants the Disclosure Statement (which must contain "all material evidence and information the [Relator] possesses") to see if Relator based its claims off of "publicly disclosed" information. (*Objection* at 16-17.)

As the Magistrate Judge noted, courts are divided about "whether disclosure statements are entirely fact work product, entirely opinion work product, or a combination of the two." (*Discovery Order* at 8 [citing *United States ex rel. Calilung v. Ormat Industries, Ltd.*, 2015 WL 13709969, at *2 (D. Nev. Dec. 23, 2015) and *United States v. California Institute of Tech.*, 2020 WL 13547790, at *3 (C.D. Cal. Nov. 18, 2020)].) However, the Court believes the Magistrate Judge also correctly identified that determining whether the Disclosure Statement constitutes "fact" work product, "opinion" work product, or some mix of the two is entirely unnecessary in the present case—because even if some or all of the Disclosure Statement constitutes "fact" work product, Abbott's generic assertion of the Public Disclosure Defense is not sufficient to demonstrate a "substantial need" for the Disclosure Statement. (*See Discovery Order* at 9-13.)

Looking to the Abbott's answer to the TAC, it asserts the Public Disclosure Defense largely in a generic and conclusory manner. ([Doc. 89], the "TAC Answer" at 84 ["Relator's claims are barred, in whole or in part, based on the public disclosure of substantially the same allegations or transactions, in accordance with 31 U.S.C. § 3730(e)(4)(A), and Relator . . . is not an original source of the information"].) Abbott does not identify which allegations in the TAC it believes were based on specific "public disclosures." Absent any contrary Ninth Circuit authority, the Court agrees with the Magistrate Judge's reasoning that to allow such conclusory assertions of the Public Disclosure Defense to render public statements discoverable would turn the work product doctrine's "substantial need" exception into an exception that swallows the rule. It would render virtually

every disclosure statement discoverable (despite being necessarily prepared in anticipation of litigation) so long as defendants included a boilerplate Public Disclosure Defense in their answer.

Even looking to Abbott's MTC, the only allegations in the TAC that Abbott specifically identifies as possibly coming from "public disclosures" are "[f]or much of what Relator alleges . . . [after] 2017—Relator relies almost exclusively on public information, such as OpenPayments data published by the federal government and Abbott executive's public statements." ([Doc. 114-1] at 9.) However, this reasoning also fails for at least two reasons.

First, Abbott has made no showing that either of the two examples it identifies (OpenPayments data and statements by Abbott executives) qualify as "public disclosures." 31 U.S.C. § 3730 (defining "public disclosures" as information "publicly disclosed" "(i) in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media").

Second, Abbott's whole argument as to why it has a "substantial need" for the Disclosure Statement is that it believes the Disclosure Statement will confirm that Relator was not the "original source" of this information the TAC relies on. ([Doc. 114-1] at 9.) However, the TAC is explicit that it based much of the post-2017 allegations on the information Abbott identifies. (*See TAC* at ¶¶ 182 n.18; 200-01 & n.24; [Doc. 85-1]; [Doc. 85-2].) Thus, there is no actual dispute here necessitating the disclosure statement's production as there is nothing for Abbott to confirm. Abbott already has access to this information that the TAC cites, and Relator has produced all documents it relied on to generate the Disclosure Statement. ([Doc. 113] at 6.) If Abbott believes this information constitutes "public disclosures" then it is free to move this Court accordingly. But Abbott *cannot* show a "substantial need" for accessing the Disclosure Statement if the

only allegations it can identify as coming from "public disclosures" are allegations that the TAC explicitly attributes to the same sources.

Ultimately, the Court agrees with the Magistrate Judge's determination that Abbott has not shown a "substantial need" to overcome the work product doctrine and access the Disclosure Statement since Abbott's asserted Public Disclosure Defense, as pled, is too conclusory and Abbott has not shown how the Disclosure Statement is necessary to prove that the few specific allegations Abbott points to in its MTC came from "public disclosures."

### B. Subsequent Communications Between Relator And The Government

In a similar vein, Abbott seeks to compel the production of any communications between Relator and the government following the Disclosure Statement. ([Doc. 114-1] at 13.) Just like with the Disclosure Statement, Abbott believes that these Subsequent Communications will confirm that Relator was not the "original source" of the information relied upon in the TAC. (*Id*.)

Here, there is no dispute that these Subsequent Communications contain protected work product. (*See* [Doc. 114-1] at 13 ["Because Relator may argue it is an 'original source' of the [allegations in the TAC] . . . the same analysis set out above [regarding the Disclosure Statement] applies to [the subsequent communications] as well . . . . [A]ny redactions [to the subsequent communications] should be cabined to attorney mental impressions, opinions, legal theories, or conclusions."].) Which makes sense, given that in *qui tam* cases, the relator is "proceeding as the Government's assignee," *United States ex rel. Burns v. Family Practice Associates of San Diego*, 162 F.R.D. 624, 626 (S.D. Cal. 1995), and thus communications between a relator and the government about a case can hardly be seen as a disclosure waiving work product protection, *see United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co*., 2010 WL 11627441, at *5 (E.D. La. May 12, 2010) (holding that communications between relator and government after disclosure statement were protected by the work product doctrine).

1  Instead, the only dispute here is whether these Subsequent Communications
2  contain "fact" work product that can be discovered upon a showing of "substantial need"
3  and undue hardship by Abbott regarding its Public Disclosure Defense. ([Doc. 114-1] at
4  13 ["Abbott has a critical need for these [subsequent communications] in order to defend
5  itself"]; *Objection* at ["[The] subsequent submissions are particularly needed here,
6  because . . . it is likely that [Relator's allegations were] based on information that is either
7  (1) *publicly available* or (2) included in a subsequent *Disclosure Statement*."] (emphasis
8  added).)

Just as the Court outlined above with respect to the Disclosure Statement, even if the Subsequent Communications contained "fact" work product, Abbott has not shown a "substantial need" for them regarding its Public Disclosure Defense because: (1) the Public Disclosure Defense, as pled, is too conclusory to justify the production of work product; (2) Abbott has made no showing that the few examples of allegations it believes derive from "public disclosures" qualify as such under the statue; and (3) the TAC explicitly cites the sources Abbott believes to be "public disclosures," thus eliminating the need for Abbott to "confirm" whether Relator was the "original source" of the information underlying those allegations. (*See supra* Section III(a).)

Accordingly, the Court agrees with the Magistrate Judge's determination that Abbott is not entitled to discover these Subsequent Communications.

### C. Documents Attached To Disclosure Statement As Exhibits

Finally, Abbott seeks to force Relator to identify which documents were attached to the Disclosure Statement as exhibits. ([114-1] at 14.)

To be clear, Relator has *already produced* all of the documents it relied on to generate the Disclosure Statement. ([Doc. 113] at 6; *Discovery Order* at 14.) Now, Abbott attempts to invade Relator's work product under the theory that it needs to know precisely which of these documents Relator's lawyers attached to the Disclosure Statement, not just which documents Relator "relied on" in generating the Disclosure Statement. (*See* [114-1] at 14.)

However, as the Magistrate Judge noted, "[o]ne of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (*citing Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  Here, Relator has already produced all the documents it relied upon to generate the Disclosure Statement.  ([Doc. 113] at 6; *Discovery Order* at 14.)  Those documents should be more than sufficient for purposes of Abbott's Public Disclosure Defense.  The Court sees no reason to order Relator to also identify which of those documents were specifically attached to the Disclosure Statement as exhibits, as doing so could well reveal portions of Relator's litigation strategy, legal theories, or which documents Relator considers most important or material.  *See United States ex rel. Calilung v. Ormat Industries, Ltd.*, 2015 WL 13709969, at *4 (D. Nev. Dec. 23, 2015) ("[T]he court observes the culling of certain documents to attach to the disclosure statements—like the selection of facts discussed therein—was done in anticipation of litigation, and likely reflects some analysis and strategizing by relator's counsel.").

Furthermore, the two cases Abbott cites in support of its demand that Relator identify which of the documents (that have already been produced) were attached to the Disclosure Statement as exhibits are inapposite. (*See Objection* at 28.)  In *United States ex rel. Brown v. Celgene Corp.*, the court simply stated that such exhibits "must be produced" "[t]o the extent that they have not [already] been produced." 2015 WL 12731923, at *8 n.5 (C.D. Cal. July 24, 2015).  The *Celgene* Court said nothing about requiring the relator to identify which of the already produced documents were the exhibits.  *See id*.  Similarly, the court in *U.S. ex rel. Bagley v. TRW, Inc.* said nothing about identifying which already produced documents were exhibits to the disclosure statement, and instead went out of its way to state "[i]f an identical copy of an exhibit or attachment already has been

produced to defendant, then plaintiffs obviously need not produce it again." 212 F.R.D. 554, 566 (C.D. Cal. 2003).

Accordingly, the Court agrees with the Magistrate Judge's determination that Relator need not identify which of the already produced documents were attached to the Disclosure Statement as exhibits.

### IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **OVERRULES** Defendants' Objection [123] and **AFFIRMS** the Magistrate Judge's Discovery Order [121].

**IT IS SO ORDERED.**

Dated:  May 14, 2024

_____
Hon. Thomas J. Whelan
United States District Judge