JONES DAY
Karen P. Hewitt (State Bar No. 145309)
kphewitt@jonesday.com
Shireen Matthews (State Bar No. 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Telephone: 858.314.1200

Ann T. Rossum (State Bar No. 281236)
atrossum@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: 949.851.3939

Attorneys for Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*; *ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, et al.,<br><br>Defendants. | Case No. 3:20-cv-0286-W-MSB<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL RELATOR'S PRODUCTION OF A COMPLETE LIST OF ALLEGED FALSE CLAIMS BY THE CLOSE OF FACT DISCOVERY**<br><br>Hon. Michael S. Berg<br><br>Special Briefing Schedule Ordered (ECF No. 151)<br><br>No Hearing Per Order of Court |

## I. INTRODUCTION

Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. ("Abbott") respectfully move the Court to compel Relator Everest Principals, LLC to provide a complete, unqualified response to Abbott's Interrogatory No. 3 by May 16, 2025, with leave for Abbott to conduct additional discovery beyond the close of fact discovery if Relator identifies any claims in addition to the 3,773 that Relator has already identified.

Interrogatory No. 3 asks Relator for information that goes to the very heart of this False Claims Act case: the allegedly false claims that Relator maintains were submitted to the government. In response to Interrogatory No. 3, Relator provided an Excel file listing 3,773 alleged false claims. (Exs. 1–2.)[1] But Relator's response indicates that <u>Relator intends that list to be incomplete</u>. Specifically, Relator includes three qualifications. **First**, Relator says it "will further supplement its Response in connection with its expert reports" (*i.e.*, after fact discovery). (Ex. 1.) **Second**, Relator qualifies the Excel file as merely an "<u>initial</u> list of <u>Medicare Part B</u> false claims that it has identified <u>to date</u>." (*Id.*) **Third**, the response includes circular, conclusory language stating that "each and every claim submitted to a Government Healthcare Program, as referenced in the Complaint, that resulted from procedures performed by or referred to by Healthcare Providers who received remuneration from Abbott was false, fraudulent, or otherwise ineligible." (*Id.*)

Relator's qualifications are improper. As countless federal cases make clear, False Claims Act plaintiffs must provide a complete list identifying the alleged false claims at issue. And they must do so with enough time left in fact discovery so the defendant can take discovery on the allegedly false claims, such as by asking about

---

[1] References to "Ex." and "Exs." refer to the exhibits attached to the concurrently filed declaration of Shireen Matthews.

them in depositions or seeking information from involved third parties like doctors. Relator's qualifications are inconsistent with these requirements because they attempt to reserve for Relator a unilateral license to later surprise Abbott with additional supposedly "false" claims that Abbott never had an opportunity to test in discovery.

The time for a full response is now. Relator should be ordered to provide the complete list of alleged false claims—without qualification—during fact discovery.

## II. BACKGROUND

This case is about alleged false claims for payment submitted to government payors. In Relator's own words in the Third Amended Complaint, "[b]y paying kickbacks to doctors and hospitals, Abbott knowingly caused the submission of ***false claims*** for payment to Government Healthcare Programs." (Dkt. No. 85 at ¶ 3 (emphasis added)). It is those "claims for payment" for which Relator seeks treble damages and penalties. (*Id.*; *see also id.* ¶¶ 11, 57, 182, 216–17.) Put simply, without false claims, there can hardly be a False Claims Act case. It is therefore hard to imagine a more appropriate subject for discovery.

Accordingly, in August 2023, Abbott served Interrogatory No. 3, which asked Relator to "[i]dentify each alleged false claim (as that term is used in the Complaint) that You allege Abbott presented or caused to be presented to either a federal or state government." (Ex. 3.) In its initial response, served in September 2023, Relator did not identify any specific false claims at all. (Ex. 4.) When pressed, Relator said it could not yet do so because it had not yet obtained claims data—*i.e.*, data reflecting actual claims for payment for MitraClip submitted to government payors. (Ex. 5 at 2–3.) But it promised to supplement its response to identify the specific false claims at issue once it had obtained that data. (*Id.*)

The federal government began producing claims data in this case in August 2024, completing its production in October 2024. (Matthews Decl. ¶ 5.) Georgia and

New York also produced their claims data during that time frame. (*Id.*) California produced its data in November 2024. (*Id.*)

Accordingly, in February 2025, with the close of fact discovery drawing near, Abbott requested the complete response to Interrogatory No. 3 that Relator had long ago promised. (Ex. 6.) Relator served its supplemental response in March 2024 and attached an Excel file listing 3,773 alleged false claims. (Ex. 1–2.) Yet, the response also included the three qualifications noted above—namely, that: (i) Relator will supplement the response in its expert reports; (ii) the response identifies only an "initial list" of "Medicare Part B" claims that had been identified "to date"; and (iii) the circular contention that the claims that Relator challenges via the Anti-Kickback Statute are the claims that were caused by the alleged Anti-Kickback Statute violations. (Ex. 1.)

Accordingly, Abbott again pressed Relator for a complete, unqualified response. (Ex. 7.) Aiming to run out the clock in fact discovery without giving Abbott a chance to test this fundamental aspect of its claims, Relator refused. (Ex. 8.)

The parties then brought this dispute before the Court for an informal discovery conference. Relator argued that it needs the help of experts to identify the alleged false claims. (Matthews Decl. ¶ 3.) But Relator did not explain why its experts have not yet identified the claims at issue despite having the claims data for nearly six months. (*Id.*) Abbott explained that, in any case, it is not seeking any expert opinion or testimony but rather only the list of false claims that are at issue in this case, so it can adequately investigate them and defend itself. (*Id.*)

The Court issued its tentative ruling in Abbott's favor. (Dkt. No. 151.) Per that ruling, Relator would be required to identify all of the alleged false claims by the close of fact discovery. (*Id.*) Thereafter, Abbott would be permitted to take additional fact discovery on any claims newly identified by Relator. (Matthews Decl. ¶ 4.) Relator rejected the Court's tentative ruling. (Dkt. No. 151.)

1   Abbott now moves to compel a complete identification of the alleged false
2   claims—without qualification—by the close of fact discovery. If Relator identifies
3   any claims in addition to the 3,773 claims that have already been identified, then
4   Abbott respectfully requests leave to conduct discovery into those claims after the
5   close of fact discovery.

## III.  ARGUMENT

### A. Courts in False Claims Act cases routinely require plaintiffs to identify the alleged false claims during fact discovery.

In False Claims Act cases, it is standard for plaintiffs to identify the alleged false claims at issue during fact discovery. Unsurprisingly, where plaintiffs refuse to provide the list of false claims in response to an interrogatory, federal district courts commonly compel it during fact discovery.

For example, in a False Claims Act case in front of Judge Major, the defendant served an interrogatory requesting the identification of all alleged false claims. *U.S. ex rel. Dougherty v. Guild Mortg. Co.*, 16-cv-2909, 2020 WL 3542391, at *3 (S.D. Cal. June 30, 2020).[2] When the government argued it "shouldn't have to answer . . . until after fact discovery ends and expert discovery begins," Judge Major rejected the argument and granted defendant's motion to compel, stating that the government was "incorrect" in arguing that it should be able to wait until expert discovery, because the interrogatory sought "to determine the factual and legal basis for the Government's allegations so that Defendant may evaluate the evidence and determine its defenses." *Id.* at *5.

In *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group., Inc.*, the court similarly

---

[2] Indeed, the defendant in *Dougherty* sought more than Abbott is seeking here, asking for the identification of false claims *and* the reasons that the claims were false. *Id.* at *3 (quoting the interrogatory at issue, which stated: "Identify all claims which you purport to be false or fraudulent covered by this lawsuit, including ... [t]he specific reason or reasons you purport the claims were false.").

compelled the government to identify specific false claims in response to an interrogatory. 13-cv-3003, 2019 WL 1453063, at *3–4 (D. Minn. Apr. 2, 2019). The government later violated that order by "identif[ying] additional allegedly false claims two months after the close of fact discovery." *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 13-cv-3003, 2021 WL 101193, at *21 (D. Minn. Jan. 12, 2021). Because the newly added claims had not been timely identified during fact discovery, the court sanctioned the government and excluded the late-identified claims. *Id.*[3]

Even where—as here—plaintiffs identify some allegedly false claims, courts demand specificity so that defendants can know and test the universe of claims data during fact discovery. In *U.S. v. Vision Quest Industries, Inc.*, for instance, even after the government identified a set of 24,000 false claims during fact discovery, the court compelled the government to identify which subset of claims involved a purported lack of medical necessity, so the defendant could adequately defend itself. 21-cv-05197, 2022 WL 21826111, at *3, 5–6, 11 (C.D. Cal. Feb. 3, 2022). Notably, the government was ordered to identify these claims six months before the close of fact discovery. *See id.* at *1 (identifying August 19, 2022 as the close of fact discovery); *id.* at *11 (compelling production by February 22, 2022).

Nor are those the only examples; other courts have reached similar results. *See, e.g.*, *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 03-cv-680, 2011 WL 4387293, at *3 (S.D. Ind. Sept. 20, 2011) (requiring any identification of additional false claims to be completed in the context of the deadline for completion of fact discovery); *U.S.*

---

[3] Relator has sought to distinguish *Dougherty* and *Fesenmaier* because the courts allowed the government to supplement as it obtained new information. Relator completely misses the point. Of course a party can supplement factual information during fact discovery when the party obtains new information. But in both *Dougherty* and *Fesenmaier*, the court expressly ordered the government to supplement *before the fact discovery deadline*. *Dougherty*, 16-cv-2909, 2020 WL 3542391, at *3; and *Fesenmaier*, 13-cv-3003, 2019 WL 1453063, at *3–4.

*ex rel. Fry v. Health All. of Greater Cincinnati*, 03-cv-167, 2009 WL 5227663, at *2 (S.D. Ohio Nov. 20, 2009) (explaining, in an FCA case, that the "United States has had sufficient time to assert its claims and damages and may not, after the discovery deadline has passed, allege additional claims or damages.").

### B. Relator's stated reasons for its refusal to timely provide this critical discovery are unavailing.

Relator argues it should be able to wait to provide the complete list of at-issue claims until expert discovery because the interrogatory calls not for factual information but rather opinion. Not so. Interrogatory No. 3 only seeks a list of alleged false claims, which is purely factual. To that end, Relator has already identified nearly 4,000 claims. (*See* Ex. 2.) In so doing, Relator has effectively conceded that the interrogatory calls for factual information that does not require an expert report but rather can be provided now. Further, the case law expressly rejects Relator's argument. *See Dougherty*, 2020 WL 3542391, at *5 (rejecting the argument that the identification of false claims should wait "until after fact discovery ends and expert discovery begins"); *see also Vision Quest*, 2022 WL 21826111, at *1, 6, 11 (requiring complete identification of claims before the end of fact discovery); *Fesenmaier*, 2021 WL 101193, at *21 (excluding claims identified after the close of fact discovery).

Moreover, expert discovery is simply too late. With under a month to go in fact discovery, Abbott is currently litigating a case involving the nearly 4,000 claims that Relator identified with its most recent discovery response. But if Relator waits until expert discovery to identify the rest of the claims at issue, then Abbott could suddenly find itself litigating another 10,000 claims, or 20,000 claims, or even 40,000 claims. And Abbott would have no recourse to investigate or challenge those claims via fact discovery.

It is thus critical that Abbott receives this information with the opportunity to conduct fact discovery about it. Abbott should have the opportunity, for example, to

inquire about particular alleged false claims during the upcoming deposition of Relator. As another example, Abbott should be able to seek information from third parties about particular claims. The case law recognizes as much. *E.g.*, *Vision Quest*, 2022 WL 21826111, at *1, 11 (full identification required six months before close of fact discovery); *Fesenmaier*, 2019 WL 1453063, at *3–4 (full identification required 45 days prior to close of fact discovery); *see also Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 1731673 at *3 (C.D. Cal.) ("The purpose of interrogatories is to limit and clarify the issues for the parties in preparation for further trial proceedings.").

    Nor is Relator correct that it should be excused from timely identifying the claims at issue because the State of Florida has not yet produced claims data. Three other states plus the federal government have produced claims data. Relator certainly cannot avoid providing a complete, unqualified response as to those other government entities just because it is still waiting for Florida data. Further, Relator is purportedly bringing claims on behalf of Florida. Accordingly, it should not be able to use its own failure to provide claims data to prejudice Abbott. In any case, if Relator obtains the Florida claims data before discovery closes, it could include any allegedly wrongful claims in its supplemental interrogatory response due May 16, 2025. If Relator does not obtain Florida claims data before discovery closes, it is hard to see how Relator could proceed on claims based on that data anyway.

    Critically, Relator has not identified a single case where a relator (or the government) succeeded in arguing that false claims do not need to be identified until expert discovery. Instead, Relator has cited cases that either support Abbott's position or are completely off-topic.

    For example, Relator cited *U.S. ex rel. Poehling v. United Health Group, Inc.*, 2021 WL 9763051, at *2 (C.D. Cal. May 28, 2021). But *Poehling* did not involve a motion to compel a relator or government to identify false claims in fact discovery.

To the contrary, in *Poehling*, the government moved to compel the *defendant* to answer questions about false claims that the government had already identified. *Id.* at *1–2. Crucially, the government identified those claims during fact discovery. *Id.* at *2 (explaining that the government had "provide[d] a list of 28 million diagnosis codes to comply with its obligation to identify the diagnosis codes it contends United Health knew were invalid."). Thus, *Poehling* supports Abbott's position that the list of false claims should be identified during fact discovery.

Relator has otherwise only cited three summary judgment orders and a *Daubert* order, but those cases are completely off-topic. Not one involves a motion to compel a relator to produce false claims in fact discovery. For example, *U.S. v. Reliance Medical Systems, LLC*, was a summary judgment order in which the court determined there was no dispute of fact about the number claims at issue. 2022 WL 524062, at *2 (C.D. Cal. Feb. 22, 2022). But there is no indication that the *Reliance* court was ever presented with the question of *when* false claims should be identified. Indeed, the claims in *Reliance* might have been identified during fact discovery—there is no indication either way.

The same is true for *U.S. v. Teva Pharmaceuticals*, in which the court addressed causation at summary judgment. 2019 WL 1245656, at *24 (S.D.N.Y. Feb. 27, 2019). There, the court noted that an expert identified false claims by linking speaker payments to prescription-writing, which was enough for the relator to satisfy its burden of production on causation at summary judgment. *Id.* at *24–25. But *Teva* is different from this case because Abbott's Interrogatory No. 3 does not ask Relator to describe how the alleged false claims were identified. Further, to the extent an expert witness helped identify the claims in *Teva*, there is no indication of *when* those claims were identified. Experts frequently help parties shape discovery responses, but that does not convert factual information to exert opinion. Relator needs to provide the facts now, and any opinions about those facts can be provided in expert

8

reports. At bottom, the *Teva* court never addressed the question presented here—i.e., whether the claims should be identified in fact discovery.

Likewise, Relator's reliance on *U.S. v. Halifax Hospital Medical Center* is misplaced. 2013 WL 6017329, at *9–11 (M.D. Fla. Nov. 13, 2013). *Halifax* was a summary judgment order where the court determined that certain claim forms were evidence of referrals. *Id.* at *11. The court noted that the government's expert determined the number of claims submitted and the resulting value of the subsequent Medicare reimbursements. *Id.* at *9. There is no indication of *when* the claims were identified or whether the court was ever asked to determine when the claims should be identified.

The only other case that Relator has relied on is a *Daubert* order, *U.S. v. SuperValu, Inc.*, 2019 WL 1277031, at *1 (C.D. Ill. Mar. 20, 2019). But *SuperValu* is just as irrelevant because it does not address whether claims should be identified during fact discovery, or indicate when the claims were identified in that case.

## IV.  CONCLUSION

Abbott thus respectfully requests that the Court order Relator to provide the complete list of alleged false claims—without qualification—by the close of fact discovery (May 16, 2025). Finally, if Relator identifies any claims in addition to the 3,773 claims that have already been identified between now and the close of fact discovery,[4] Abbott requests leave to conduct discovery into those claims beyond the close of fact discovery.

---

[4] For the avoidance of doubt, regardless of the ruling on this motion to compel or when the ruling occurs, Abbott's position is that any allegedly false claims not identified by the close of fact discovery on May 16, 2025, should be excluded from the case.

Dated: April 18, 2025

JONES DAY

By: */s/ Shireen Matthews*
    Shireen Matthews

JONES DAY
Karen P. Hewitt (State Bar No. 145309)
kphewitt@jonesday.com
Shireen Matthews (State Bar No. 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121.3134
Telephone: 858.314.1200

Ann T. Rossum (State Bar No. 281236)
atrossum@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: 949.851.3939

Attorneys for Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc.