1  James C. Shah (State Bar No. 260435)
   jcshah@millershah.com
2  MILLER SHAH LLP
   19712 MacArthur Boulevard, Suite 222
3  Irvine, CA 92660
   Telephone: (866) 540-5505
4  Facsimile: (866) 300-7367

5  *Attorneys for Plaintiff-Relator*

6  [Additional counsel listed on signature
7  pages]

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>Defendants. | Case No. 3:20-cv- 00286-W-MSB<br><br>**PLAINTIFF-RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF A COMPLETE LIST OF ALLEGEDLY FALSE CLAIMS BY THE CLOSE OF FACT DISCOVERY**<br><br>Magistrate Judge: Michael S. Berg |

Pursuant to this Court's April 11, 2025 Order Setting Briefing Schedule on Discovery Dispute (ECF No. 151), Plaintiff-Relator, Everest Principals, LLC ("Relator"), respectfully submits this Brief in Opposition to the Motion of Defendants, Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Defendants" or "Abbott"), to Compel Relator's production of a complete list of allegedly false claims by the close of fact discovery ("Motion"). The Court's tentative ruling is at direct odds with well-established precedent recognizing that the identification of false claims routinely requires expert analysis in False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, actions involving allegations of a nationwide scheme to pay kickbacks to hundreds of healthcare providers. This is particularly so when numerous data sets concerning tens of thousands of payments must be matched to tens of thousands of medical claims for payment in order to identify false claims. Indeed, given the sheer complexity of the data at issue, which requires expertise just to process and interpret, Abbott itself is unable to identify the number of Speaker Programs or Other Promotional Programs it conducted. Nonetheless, Abbott seeks to require Relator to undertake the far more laborious process of matching medical claims to these events, without assistance from experts.

Ordering the complete identification of all allegedly false claims without the benefit of expert analysis would severely hamper the ability of Relator, as well as the United States and state governments (collectively, the "Government"), to hold defendants like Abbott to account for their fraud and payment of kickbacks—and impose a backwards duty to perform and furnish FCA defendants with their expert reports during fact discovery. Accordingly, Relator respectfully requests that the Court set aside the tentative ruling and deny the Motion.

## I. INTRODUCTION

Despite Abbott's persistent bluster, this dispute has nothing to do with prejudice to Abbott or its ability to take discovery under the operative case

| | |
|---|---|
|1| schedule. If it did, Abbott would not have waited until two months before the close|
|2| of fact discovery to assert that Relator must identify each and every claim it alleges|
|3| to be false without the benefit of expert analysis. Indeed, while it was on notice for|
|4| more than a year of Relator's objection that the interrogatory at issue seeks the|
|5| premature disclosure of expert testimony, Abbott did not suggest (much less argue)|
|6| that it was entitled to this information before the close of fact discovery. This is|
|7| because Abbott has long been aware of the factual basis for Relator's contentions:|
|8| that all "(i) patient referrals, (ii) patient practice-building opportunities, (iii) free|
|9| patient marketing services, (iv) honoraria for sham speaker programs, (v) rewards|
|10| in the form of clinical trial opportunities, (vi) marketing events and consulting|
|11| services, (vii) free lavish meals, and (viii) cocktail parties that Abbott provided to|
|12| Healthcare Providers were to induce physicians and hospitals to use Defendants'|
|13| MitraClip® device ("MC Device")," in violation of the Anti-Kickback Statute|
|14| ("AKS"), 42 U.S.C. § 1320a-7b, the FCA and applicable law, and, thus, resulted in|
|15| the submission false claims. *See* Ex. A, at 6–7. At the telephonic Discovery|
|16| Conference, despite its attempt to obfuscate, Abbott could not even identify any|
|17| further discovery that it would pursue based on the additional false claims that|
|18| Relator identifies with the proper and customary assistance of expert analysis.|
|19|   FCA cases routinely require expert analysis to comprehensively identify false|
|20| claims when they involve matching voluminous medical claims data to event,|
|21| payments, and referral data, as well as other record evidence. *See, e.g.*, *U.S. ex rel.*|
|22| *Taylor v. Healthcare Assocs. of Texas, LLC*, 2024 WL 4508961, at *12 (N.D. Tex.|
|23| Oct. 15, 2024) (testimony of relator's experts proffered "to analyze the voluminous|
|24| medical records produced by [FCA defendant] and to quantify the number and|
|25| dollar amount of false claims submitted to Medicare" was relevant and otherwise|
|26| admissible). For this reason, complete identification of false claims in response to|
|27| contention interrogatories is properly furnished during expert discovery. *See, e.g.*,|
|28| *U.S. ex rel. Lutz v. Lab'y Corp. of Am. Holdings*, at *1 (D.S.C. Feb. 3, 2021)|

(denying motion to compel supplemental response to similar interrogatory because relators' experts had not had the "opportunity to analyze and identify the specific [false] claims at issue" and would amend the response, "but not before the deadline that the Court has set for the exchange of expert reports"). By allowing the identification of false claims during expert discovery, Abbott and other FCA defendants are not without recourse: rebuttal experts frequently and routinely respond to proffered testimony concerning the identification of false claims. This is the way that such discovery has been handled in each and every similar AKS/FCA case in which Relator's counsel have participated—***without any objection or feigned claim of prejudice by Defendants.***[1]

Abbott's true motivation for raising this eleventh hour dispute is plain. Without a genuine defense against the substantial record evidence that Relator has adduced demonstrating that Abbott engaged in a fraudulent scheme of bribing physicians and hospitals to use MitraClip (or refer cardiac patients to MitraClip implanters) by practice building and providing other valuable inducements, free meals, and sham speaker program honoraria, Abbott seeks to curtail its liability by attempting to narrow the universe of false claims and the damages at issue before expert discovery, with complete prejudice to any supplementation following fact discovery. The Court should not countenance this thinly veiled effort to litigate beyond the merits and hamstring Relator's ability to prosecute this Action on behalf of the Government, in a manner wholly inconsistent with applicable law.

## II. BACKGROUND

On August 14, 2023, Abbott served Interrogatory No. 3 ("ROG 3") requesting that Relator: "[i]dentify each alleged false claim [] that [Relator] allege[s] Abbott presented or caused to be presented to either a federal or state

---

[1] *See U.S. v. Teva Pharms.*, 2019 WL 1245656, at *24 (S.D.N.Y. Feb. 27, 2019); *U.S. ex. rel. Bilotta v Novartis Pharms.*, No. 11-cv-0071, ECF No. 296 (S.D.N.Y Mar. 31, 2019); *U.S. ex rel. Purcell v. Gilead Scis., Inc.*, No. 17-cv-3523, ECF No. 237-1 (E.D. Pa. June 14, 2021); *U.S. ex rel. Travis v. Gilead Scis., Inc.*, ECF No. 237-1 (E.D. Pa. June 14, 2021).

government." Ex. A.[2] Relator timely objected to ROG 3 as a premature contention interrogatory, "to the extent it seeks information outside the control, custody, and possession" of the parties, and "to the extent it seeks information to be provided by Relator's expert witnesses pursuant to the Federal Rules and the Court's scheduling order." Ex. A. Subject to and without waiving these objections, Relator asserted that "each and every claim submitted to [the Government] that resulted from procedures performed by or referred to by Healthcare Providers who received remuneration from Abbott was false, fraudulent, or otherwise ineligible [] because one purpose of the remuneration Abbott provided [] was to induce MitraClip implantations, in violation of applicable law." *Id.*

Over a year later, on February 24, 2025, Abbott suddenly demanded that Relator immediately supplement its Response to ROG 3. Ex. B. Relator properly explained that, while it would provide an initial list of claims based on its current knowledge by March 21, 2025, Relator intended to further supplement its Response based on pertinent information supplied by expert analysis. Ex. C. Abbott proceeded to incorrectly assert, for the first time, that ROG 3 requests purely "factual information, not expert opinion" and purported to reserve "the right to exclude any claims that are not identified by Relator well before the close of fact discovery." Ex. D. Despite Relator's repeated explanations of why expert analysis is necessary to identify the full universe of false claims—as is customary in FCA cases of this nature and scope—Abbott did not abandon its baseless attempts to impede the ongoing analysis of Relator's experts.

### III.  ARGUMENT

Abbott's Motion is a transparent attempt to prematurely limit the damages at issue in this Action. Abbott claims that the identification of the allegedly false claims at issue during fact discovery is standard. This is simply and completely untrue—none of Abbott's cited authorities articulate or support that proposition.

---

[2] All Exhibits are to the accompanying Declaration of James C. Shah.

Abbott is not even able to identify the discovery that it would seek if provided with a complete list of false claims before the fact discovery deadline, other than claiming it should be able to test those claims at Relator's deposition and through additional third-party discovery. That is because, while facts doubtlessly ground Relator's identification of false claims, there is no support for the proposition that the specific false claims Relator alleges Abbott submitted to the Government constitute purely factual matter or an improper subject of expert testimony. Abbott has failed to explain why its experts will not have a full and fair opportunity to rebut allegedly false claims identified by Relator's experts during expert discovery. No court, to Relator's knowledge, has ever ordered the complete identification of allegedly false claims prior to fact discovery with prejudice to supplementation and when expert analysis is indisputably necessary given the scope of the claims and other data at issue. This is particularly true, where Relator has stated that expert analysis is integral to the identification of the false claims.

      **A.**    **Abbott's Authorities Do Not Support the Relief it Seeks**

In support of its attempt to whittle down the universe of false claims and damages, Abbott does not cite a single case supporting the proposition that a relator must exhaustively identify specific false claims during fact discovery.

In *Dougherty*, Judge Major unequivocally ***did not*** order the Government to provide a complete list of allegedly false claims during fact discovery, as Abbott has repeatedly and incorrectly suggested. *See generally U.S. ex rel. Dougherty v. Guild Mortg. Co.*, 2020 WL 3542391 (S.D. Cal. June 30, 2020). There, "the Government identifie[d] the universe of claims and reiterate[d] its belief that there are materiality and underwriting violations within that universe," but expert analysis was required to identify the alleged false claims with greater specificity. *Id.* at *5. While rejecting the argument that the Government "shouldn't have to answer these contention interrogatories until after fact discovery ends and expert discovery begins," Judge Major specifically held that:

> While the Government may not yet be able to identify the precise violation in each claim file, it must supplement its interrogatory responses by describing the precise types of underwriting, origination, or endorsement violations—or any other type of violation—allegedly committed by Defendant. As interrogatory 1(f) requests, the Government must state the "specific reason or reasons [it] purport[s] the claims were false." [] Similarly, the Government must describe the specific types of conduct that violated the terms of the HUD and FHA contracts and which specific provisions were violated.

*Id.* at *5. Crucially, Judge Major required the Government "to supplement its interrogatory responses as set forth in [the court's] order" by describing the basis for its contention that certain claims were false, but did not order the immediate identification of a complete list of false claims. *Id.* For this reason, Judge Major "reminded [the Government] of its ongoing obligation to supplement its interrogatory responses" under Federal Rule of Civil Procedure 26(e). *Id.* at n.5. Indeed, the parties later reported to the court that the "the United States' experts [were] diligently reviewing the loan files produced by Guild" requiring an extension to the discovery schedule. *See Dougherty*, No. 16-cv-2909-JAH(BLM), ECF No. 154. Here, however, Relator has been informed that any false claims identified after May 16, 2025, including those identified in connection with the submission of expert reports under the current scheduling order, may be stricken.

      Abbott's reliance on *Vision Quest* is similarly unavailing. In that case, the defendant propounded an interrogatory requesting that the Government: "Identify all claims at issue in this case in which the Government contends that the knee brace was not medically necessary." *See U.S. v. Vision Quest Indus., Inc.,* 2022 WL 21826111, at *2 (C.D. Cal. Feb. 3, 2022). In other words, the defendant sought identification of a specific subset of false claims to test the factual basis for particular allegations. The *Vision Quest* court reasoned that "[b]ecause the government made specific allegations in the FAC regarding medical necessity," it was required to "identify its basis for making such an allegation—or admit it did not have one." *Id.* at *6. The Government did not argue that expert analysis was

necessary to provide a fulsome response to the interrogatory at issue. *Id.* The court did not order that the Government's response was with prejudice to supplementation. *Id.* Here, unlike in *Vision Quest*, Relator has already informed Abbott of the specific factual bases for its allegations through its responses to the numerous other contention interrogatories served by Abbott. Ex. A, at 6–7. Abbott has utterly failed to demonstrate how providing a specific list of false claims would similarly narrow the issues in preparation for trial.

The closest authority that Abbott invokes is *Fesenmaier*, but that nonbinding case also does not compel the result sought by Abbott. 2019 WL 1453063, at *3 (D. Minn. Apr. 2, 2019). The court there ordered that the Government to answer the interrogatory at issue "to the extent of its current knowledge regarding specific claims, without prejudice to further supplementation as discovery progresses." Although the Government was compelled to respond, the order specifically stated that the Government would "not be prejudiced by answering the Interrogatory to the extent of its current knowledge" and could "identify additional claims to be added or claims to be removed as discovery continues [] [s]o, there [was] no prejudice to its damages claim by providing an initial response." *Id.* at *3–4. That is exactly what Relator has already done here by answering ROG 3 with an initial list of false claims based on its current knowledge. Given the substantial time remaining in fact discovery at the time of its order, the *Fesenmaier* district court further noted that, "[i]f the United States requires additional time to complete fact discovery in light of the [] Order, it has the option of seeking an extension of the fact discovery deadline." 2019 WL 3245003, at *2 (D. Minn. July 2, 2019). Here, however, only a month remains in discovery. Even then, only after expert discovery and at summary judgment, the *Fesenmaier* court excluded belatedly identified false claims, which specifically violated the court's deadline for "supplemental disclosures of alleged false claims." *See* 2021 WL 101193, at *21 (D. Minn. Jan. 12, 2021). Nonetheless, the court recognized that identifying claims

for payment is a proper subject of expert testimony. *Id.* at *19 (declining to exclude and crediting the "opinions and testimony of [data analyst and computer programmer expert proffered] to identify claims for payment that Defendants allegedly caused to be submitted to Medicare").

In sum, no decision has precluded a relator from using expert analysis and reports to identify false claims where a relator has indicated that was how it intended to identify said claims.[3] Nor has any court prejudiced a relator for failing to identify said false claims prior to the submission of expert reports as contemplated by a relevant scheduling order. Abbott has utterly failed to demonstrate that its authorities warrant ordering Relator to identify all false claims with only weeks remaining in fact discovery when expert analysis is required.

### B. Expert Discovery Is Required to Identify False Claims

Even if the Court were to credit Abbott's misguided reliance on entirely distinguishable authorities ordering the identification of false claims in response to interrogatories during the fact discovery (it should not), the expert analysis required to identify false claims in this matter independently counsels in favor of permitting supplementation of Relator's response in connection with expert discovery.

Interrogatories like ROG 3 that "seek[] the application of expert knowledge to facts" "cannot be answered until after expert discovery is completed." *U.S. ex rel. Poehling v. United Health Grp., Inc.*, 2021 WL 9763051, at *2 (C.D. Cal. May 28, 2021). Analyzing medical claims data alongside sales, event, and payment data to identify false claims is a proper subject of expert testimony because it inherently involves complex data manipulation and statistical analysis. *See Teva*, 2019 WL 1245656, at *24 (crediting testimony of relators' damages expert "identif[ying]

---

[3] Abbott's other cases, likewise, provide no ulterior support for its position. *See U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 2011 WL 4387293, at *3 (S.D. Ind. Sept. 20, 2011) (involving no argument that identifying specific false claims was a necessary subject of expert opinion); *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL 5227663, at *2 (S.D. Ohio Nov. 20, 2009) (rejecting entirely distinct attempt to identify "additional claims and damages[,] future unidentified claims, at an unknown future date").

two potential sets of false claims submitted within the Relevant Period, after conducting an extensive review of doctors' prescription records" at summary judgment); *U.S. v. Halifax Hosp. Med. Ctr.*, 2013 WL 6017329, at *9 (M.D. Fla. Nov. 13, 2013) (crediting database expert retained by the Government "to review Medicare claims data," identify false claims, and calculate corresponding damages); *U.S. v. Reliance Med. Sys., LLC*, 2022 WL 524062, at *2 (C.D. Cal. Feb. 22, 2022) (crediting similar expert testimony); *U.S. v. SuperValu, Inc.*, 2019 WL 1277031, at *1 (C.D. Ill. Mar. 20, 2019) (declining to exclude expert's data analysis utilized to identify false claims during expert discovery); *U.S. ex rel. Garbe v. Kmart Corp.*, 2017 WL 3175983, at *1 (S.D. Ill. July 21, 2017) (testimony of "a pharmaceutical economist hired [] to analyze reimbursement data and calculate the damages).

In FCA cases, expert analysis is simply how false claims are typically identified. Indeed, as Judge Whelan expressly noted in denying Abbott's motion to dismiss: "a government reimbursement claim is a false claim under the FCA if it is tainted by an AKS violation." ECF No. 56, at 13. This is an inquiry which, within the context of thousands of events over a nationwide kickback scheme and thousands of medical claims at issue, requires data analysis. *Teva* is instructive here. In that case, the relators (represented by the same counsel as Relator here) proffered expert analysis that "identified two potential sets of false claims submitted within the Relevant Period, after conducting an extensive review of doctors' prescription records." *Teva*, 2019 WL 1245656, at *24–25. Specifically, the *Teva* relators' damages expert identified different sets of false claims based on the relators' allegations.[4] This inherently expert data analysis is precisely what

---

[4] Courts routinely recognize that identifying false claims inherently involves expert work. *See U.S. ex. rel. Bilotta v Novartis Pharms.*, Case No. 11-cv-0071, ECF No. 296 (S.D.N.Y. Mar. 31, 2019); *U.S. ex rel. Penelow v. Janssen Prods., LP*, 2022 WL 94535, at *14 (D.N.J. Jan. 10, 2022) (relying on experts to "perform statistical analyses of the prescription claims data and to opine on issues of causation and damages"); *U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, 500 F. Supp. 3d 345, 367 (E.D. Pa. 2020) (expert "report identified the number of claims submitted by individual doctors within six months, one year, and two years of the alleged kickback event"); *U.S. ex rel. Brown v. Celgene Corp.*, 226 F. Supp. 3d 1032,

Relator must consult its experts for here: matching the medical claims data produced by the Government with Abbott's disorganized and disparate internal data on its payments to and events with HCPs whom Relator alleges were the targets of kickbacks. *See* Ex. E, at 6–8 (noting that over 30 Abbott spreadsheets, if not more, contain Speaker Program data, which is sufficiently complex that Abbott itself cannot answer how many Speaker Programs it conducted during the relevant period); Ex. F, at 8–10 (citing two spreadsheets containing over 140,000 rows of data concerning other Promotional Activities and failing to quantify the number of such activities). Here, Abbott seeks to prejudice relator by seeking, without the benefit of expert reports, the identification of each false claim prior to the close of fact discovery. There is simply no legal of procedural basis for that request.

## IV.   **CONCLUSION**

In sum, Abbott has failed to demonstrate it is entitled to force Relator to provide a complete list of false claims in response to Interrogatory No. 3 without the benefit of its experts. The Court's tentative ruling, if adopted, would be clearly erroneous. Accordingly, the Motion should be denied. In the alternative, should the Court be inclined to maintain its tentative, at a minimum, the Court should extend the time for identification of false claims until June 30, 2025 (the current deadline for Relator's expert reports), provide Abbott with a limited period of time of 30 days to take "fact" discovery regarding those false claims (even though Abbott cannot articulate what discovery it would supposedly take), and extend all current expert deadlines for a corresponding period of 75 days to account for this additional period of "fact" discovery. Relator respectfully submits that, although this would undoubtedly (and unfairly) provide Abbott with a preview of its expert opinions, at the very least, it would provide Relator with sufficient time to complete that expert work and then identify the false claims during "fact" discovery.

---

1039–40 (C.D. Cal. 2016) (expert "analyzed data for sales contacts made by Celgene's sales representatives," medical claims data, and identified false claims).

| | | |
|---|---|---|
| Dated: April 18, 2025 | | Respectfully submitted, |
| | | MILLER SHAH LLP |
| | | By: *James C. Shah* |
| | | James C. Shah (State Bar No. 260435)<br>jcshah@@millershah.com<br>19712 MacArthur Boulevard, Suite 222<br>Irvine, CA 92660<br>Telephone: (866) 540-5505<br>Facsimile: (866) 300-7367 |
| | | James E. Miller (State Bar No. 262553)<br>jemiller@millershah.com<br>Laurie Rubinow (*Pro Hac Vice*)<br>lrubinow@millershah.com<br>65 Main Street<br>Chester, CT 06412<br>Telephone: (860) 526-1100 |
| | | James C. Shah<br>jcshah@millershah.com<br>Bruce D. Parke (*Pro Hac Vice*)<br>bdparke@millershah.com<br>1845 Walnut Street, Suite 806<br>Philadelphia, PA 19103<br>Telephone: (610) 891-9880 |
| | | Jonathan K. Tycko (*Pro Hac Vice*)<br>jtycko@tzlegal.com<br>TYCKO & ZAVAREEI, LLP<br>2000 Pennsylvania Avenue., NW<br>Suite 1010<br>Washington, D.C. 20006<br>Telephone: 202.973.0900 |
| | | Monique Olivier (State Bar No. 190385)<br>monique@os-legal.com<br>OLIVIER & SCHREIBER LLP<br>475 14th Street, Suite 250<br>Oakland, CA 94612<br>Tel: (415) 484-0980 |
| | | *Attorneys for Plaintiff and Relator Everest Principals, LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2025, I caused the foregoing Plaintiff-Relator's Opposition to Defendants' Motion to Compel Complete List of Allegedly False Claims by Close of Fact Discovery to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ *James C. Shah*
James C. Shah