UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. ex rel. Everest Principals, LLC,<br><br>                              Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES, et al.,<br><br>                              Defendants. | Case No.:  20cv286-W (MSB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL DISCOVERY**<br><br>[ECF NO. 154] |

This is a *qui tam* case, wherein Plaintiff-Relator, Everest Principals, LLC ("Relator") maintains causes of action against Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively referred to as "Defendants" or "Abbott") on behalf of the United States of America ("United States") and several states for violations of the federal False Claims Act ("FCA") and analogous state laws.  (See ECF No. 85 at 6.)

Now pending before this Court is the parties' briefing regarding Relator's response to Defendants' Interrogatory No. 3.  (See ECF Nos. 154 & 155.)  In short, the parties disagree about whether Relator should be required to provide a complete list of allegedly false claims during the fact discovery period.  (Id.)  After reviewing informal letter briefs lodged by the parties, the Court held an informal Discovery Conference to

address this issue on April 10, 2025. (ECF No. 150.) The Court indicated it would require Relator to supplement its response to Defendants' Interrogatory No. 3 by producing a complete list of allegedly false claims no later than May 16, 2025, with leave for Defendants to conduct additional fact discovery on any newly identified claims after the fact discovery cutoff. Following the conference, Relator requested an opportunity for formal briefing, and the parties agreed to file contemporaneous briefs setting forth their respective positions on April 18, 2025. (See ECF No. 151.) For the reasons explained below, the Court **GRANTS** Defendants' Motion to Compel.

## I. BACKGROUND

### A. Factual Background

Relator is a limited liability company whose sole member was employed by Defendants as a Therapy Development Specialist in its Structural Heart Division from August 2015 to April 2017. (See ECF No. 85 at 7.) Defendants are involved in the manufacturing and sale of medical devices, instruments, medications, and other health care products. (Id. at 8.) In the operative Third Amended Complaint ("Operative Complaint"), Relator summarizes its allegations as follows: "Defendants engaged in an unlawful, systematic, and nationwide scheme of paying kickbacks to physicians and hospitals in the form of, *inter alia*, patient referrals, patient practice building, free patient marketing service, honoraria for sham speaker programs, rewards in the form of clinical trial opportunities, marketing events and consulting services, free lavish meals, and cocktail parties, to induce physicians and hospitals to use Abbott's [cardiac medical device] for medical procedures performed on cardiac patients covered by [federal and state] healthcare programs, in violation of the FCA, [Anti-Kickback Statute ("AKS")], and analogous state laws and statutes." (Id. at 6–7.)

### B. Procedural History

Relator filed the original Complaint on February 14, 2020. (ECF No. 1.) After the United States reported that all named government entities declined to intervene in the litigation [ECF No. 8], Defendants filed their first Motion to Dismiss on July 29, 2021.

(ECF No. 30.) Relator filed a First Amended Complaint ("FAC") on August 19, 2021, alleging causes of action on behalf of the United States and twenty-seven states, plus the District of Columbia. (ECF No. 35 at 6.) Defendants again moved to dismiss, arguing Relator failed to adequately allege presentment of a false claim, inducement of a false claim, causation with particularity, illegal kickbacks, and scienter related to the federal claims, and that the state law claims should be dismissed. (ECF No. 45 at 13–32.) The District Court found Relator's allegations sufficient for its federal claims, but dismissed the state law claims for failure to allege "with particularity how any false claims were submitted to each state identified in the FAC." (ECF No. 56 at 16.)

Relator filed a Second Amended Complaint ("SAC") on September 22, 2022, maintaining the federal claims and state law claims on behalf of twenty-five states and the District of Columbia. (ECF No. 57 at 6.) Defendants moved to dismiss the state law claims in the SAC, arguing Relator failed to state claims on which relief could be granted due to a lack of particularity. (ECF No. 59 at 12–21.) The District Court dismissed all state law FCA claims except for those pertaining to four states: California, Florida, Georgia, and New York. (ECF No. 62 at 4–9.) The District Court found Relator had sufficiently pleaded FCA claims in violation of these four states' laws. (Id.) Finally, Plaintiffs filed the Operative Complaint on May 23, 2023. (ECF No. 85.)

## II.   INSTANT DISCOVERY DISPUTE

### A. Defendants' Interrogatory No. 3 and Relator's Responses

Defendants served Interrogatory No. 3 on Relator on August 14, 2023. (See ECF No. 154-5 at 3–4.) It asked Relator to:

> Identify each alleged false claim (as that term is used in the Complaint) that You allege Abbott presented or caused to be presented to either a federal or state government.

(Id. at 3.) Relator timely objected to Interrogatory No. 3 as a premature contention interrogatory, "to the extent it seeks information outside the control, custody, and possession" of Relator, and "to the extent it seeks information to be provided by Relator's expert witnesses pursuant to the Federal Rules and the Court's scheduling

order." (ECF No. 155 at 5; ECF No. 155-2 at 24–25.)  In correspondence dated January 8, 2024, Relator promised to supplement its responses "once it receives claims data from [the Centers for Medicare and Medicaid Services ("CMS")]."  (ECF No. 154-7 at 3–4.)

From August 26, 2024, to October 7, 2024, the federal government produced claims data.  (See ECF No. 154-2 at 3.)  Additionally, Georgia produced claims data on August 28, 2024; New York produced claims data on October 15, 2024; and California produced claims data on November 19, 2024.  (Id.)  To date, Florida is the only relevant state that has not produced claims data.  (See ECF No. 154-1 at 8.)  On February 24, 2025, Defendants requested the complete response to Interrogatory No. 3, noting that "Relator has now been in receipt of the CMS claims data for more than four months but has not yet supplemented its response."  (ECF No. 154-8 at 2.)  On March 7, 2025, Relator responded that it "never agreed to supplement its response prior to the Court-ordered expert discovery deadline."  (ECF No. 155-4 at 2.)  Nevertheless, Relator agreed to supplement its response by March 21, 2025, and said it "will further supplement its response through its expert reports."  (Id.)

Accordingly on March 21, 2025, Relator provided its supplemental response and shared "an initial list of Medicare Part B false claims that it has identified to date."  (ECF No. 154-3 at 3.)  Relator again noted it "will further supplement its Response in connection with its expert reports."  (Id. at 4.)  An accompanying Excel spreadsheet listed 3,773 allegedly false claims.  (See ECF No. 154-4.)

On March 28, 2025, Defendants sent correspondence arguing Relator's March 21, 2025, supplemental response was deficient.  (See ECF No. 154-9.)  Specifically, Abbott argued it would be "severely prejudiced if Relator fails to identify the entire set of allegedly false claims in fact discovery" because it needed sufficient time to conduct factual investigation on the claims at issue.  (Id. at 4.)   Relator responded on March 31, 2025, noting its disagreement.  (See ECF No. 154-10.)  The parties then brought the dispute before the Court for an informal discovery conference on April 10, 2025.  (ECF No. 150.)  This briefing followed.

### B. Summary of the Parties' Arguments

Defendants seek to compel Relator's production of a complete list of the allegedly false claims by the close of fact discovery (May 16, 2025), with leave for Defendants to conduct fact discovery beyond this deadline "if Relator identifies any claims in addition to the 3,773 that Relator has already identified." (ECF No. 154-1 at 2.) Defendants say that Interrogatory No. 3 "goes to the very heart of this False Claims Act case: the allegedly false claims that Relator maintains were submitted to the government." (Id.) First, Defendants argue that identification of allegedly false claims during fact discovery is standard in FCA cases like this one. (Id. at 5–7.) Next, Defendants contend that because Relator has already identified nearly 4,000 claims, it has effectively conceded that its response to Interrogatory No. 3 does not require an expert report. (Id. at 7.)

Additionally, Defendants assert expert discovery is too late, as Abbott needs time to investigate and challenge the supposedly false claims via fact discovery. (Id.) "[I]f Relator waits until expert discovery to identify the rest of the claims at issue, then Abbott could suddenly find itself litigating another 10,000 claims" or more and Defendants would have no recourse through fact discovery. (Id.) Defendants argue they should have the opportunity to ask about allegedly false claims during Relator's upcoming deposition, and Defendants should similarly be able to seek information from third parties about specific false claims. (Id. at 8.) Defendants contend Relator should not be excused from timely identifying the false claims based on Florida's delay, while the federal government and the other three states have produced claims data. (Id.)

In response, Relator asserts there is "well-established precedent recognizing that the identification of false claims routinely requires expert analysis," particularly in FCA cases involving voluminous medical claims. (ECF No. 155 at 2–4, 9–11.) Relator says the claims data at issue is so complex that it "requires expertise just to process and interpret." (Id. at 2.) Further, Relator questions why Defendants waited until two months before the close of fact discovery to assert that Relator must identify every allegedly false claim prior to the start of expert discovery, despite being on notice of

Relator's objections for more than a year. (Id. at 3.) Relator contends that allowing the identification of false claims during expert discovery does not mean Defendants are not without recourse, as they can use rebuttal experts to respond to testimony concerning the identification of false claims. (Id. at 4.)

Moreover, Relator argues Defendants are using this dispute to prematurely "narrow the universe of false claims and the damages at issue . . . with complete prejudice to any supplementation following fact discovery." (Id.) Relator contends Defendants have not identified any cases supporting the proposition that relators must identify all allegedly false claims during fact discovery. (Id. at 6–9.) In sum, Relator requests the Court set aside its tentative ruling and deny Defendants' Motion to Compel because it argues there is no legal or procedural basis for requiring identification of every false claim without expert analysis. (Id. at 11.) If the Court is inclined to maintain its tentative, Relator requests the Court do the following: (1) extend the deadline to identify false claims until June 30, 2025—the current expert reports deadline; (2) allow Defendants only thirty days to conduct fact discovery regarding false claims; and (3) extend all expert deadlines for a corresponding period of seventy-five days. (Id.)

### III.   APPLICABLE LAW

The Federal Rules of Civil Procedure[1] authorize parties to obtain discovery regarding any unprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751

---

[1] All future references to the Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

1  (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where
2  the discovery sought is "unreasonably cumulative or duplicative, or can be obtained
3  from some other source that is more convenient, less burdensome, or less expensive";
4  the requesting party "has had ample opportunity" to obtain discovery; or the discovery
5  sought is beyond the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

6       The Rules provide that an interrogatory "may relate to any matter that may be
7  inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Further, "[a]n interrogatory is
8  not objectionable merely because it asks for an opinion or contention that relates to
9  fact or the application of law to fact." Id. If a responding party objects, "[t]he grounds
10 for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P.
11 33(b)(4). Any interrogatory not objected to must be answered "fully in writing under
12 oath." Fed. R. Civ. P. 33(b)(3). Under Rule 37, a party may move the Court to compel
13 disclosure or discovery. See Fed. R. Civ. P. 37(a)(1). The party seeking discovery must
14 demonstrate that the request satisfies Rule 26's relevance requirement. See, e.g.,
15 Ogeone v. United States, No. CV 13-00166 SOM-RLP, 2014 WL 12611289, at *1 (D. Haw.
16 Oct. 14, 2014); Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The party
17 resisting discovery "has the burden of clarifying, explaining, and supporting its
18 objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing, *inter
19 alia*, Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

                   **IV.   DISCUSSION**

21      The instant disagreement is essentially about the appropriate timeline for this
22 discovery. Defendants insist that Relator must provide a complete, unqualified
23 response to Interrogatory No. 3 during fact discovery. (ECF No. 154-1.) Relator retorts
24 that it should not be required to identify all allegedly false claims without the benefit of
25 expert analysis. (ECF No. 155.)
26      As a preliminary matter, the Court finds the information requested in
27 Interrogatory No. 3—i.e., the allegedly false claims "Abbott presented or caused to be
28 presented to either a federal or state government"—is relevant under Rule 26(b)(1).

(ECF No. 154-5 at 3.) Defendants are entitled to know the specific false claims Relator believes support the allegations in its Operative Complaint. See, e.g., United States ex rel. Dougherty v. Guild Mortg. Co., No. 16cv2909-JAH (BLM), 2020 WL 3542391, at *5 (S.D. Cal. June 30, 2020) (collecting cases where courts found that "interrogatories directing a plaintiff to state facts supporting contentions in his complaint are 'entirely appropriate'") (internal citations omitted).

Additionally, the Court finds the requested list of allegedly false claims is factual information that should be produced during fact discovery. As Defendants point out, Relator produced an Excel spreadsheet listing 3,773 allegedly false claims on March 21, 2025. (ECF No. 154-1 at 4; ECF No. 154-4.) At the informal discovery conference on April 10, 2025, Relator's counsel explained this spreadsheet only covers those false claims that Relator has personal knowledge about. Relator argues given the sheer complexity of the claims data, experts are needed to identify the remaining false claims. (See generally ECF No. 155.) However, even if expertise is needed, Relator has not explained why its experts have not made sufficient progress on this work, considering it began receiving claims data in August 2024. (ECF No. 154-2 at 3.) As of November 19, 2024, Relator had received claims data from the federal government and three out of four states involved in this case. (Id.) The only claims data yet to be produced is from the state of Florida. (ECF No. 154-1 at 8.)

While it undoubtedly takes time to sort through voluminous medical claims data, Relator has possessed most of this material for more than five months. Moreover, this case has been pending for more than five years, and discovery has been open since April 2023. (See ECF Nos. 1 & 77.) The Court has granted four extensions of the case schedule on (1) November 17, 2023; (2) April 23, 2024; (3) October 4, 2024; and (4) January 22, 2025. (ECF Nos. 120, 132, 137, 147.) In total, the fact discovery deadline has been continued 500 days, from January 2, 2024, to May 16, 2025, and the expert discovery deadline has been continued 528 days, from May 14, 2024, to October 24, 2025. (Compare ECF No. 77, with ECF No. 147.) Based on the foregoing, the Court finds

Relator has had sufficient time to provide a complete answer to Interrogatory No. 3, with or without the assistance of experts.

In similar discovery disputes, other courts have routinely granted motions to compel this type of information during fact discovery. In Dougherty, another FCA case in this district, the relevant interrogatory asked the government to "[i]dentify all claims which you purport to be false or fraudulent covered by this lawsuit, including . . . [t]he specific reason or reasons you purport the claims were false." United States ex rel. Dougherty v. Guild Mortg. Co., No. 16cv2909-JAH (BLM), 2020 WL 3542391, at *3 (S.D. Cal. June 30, 2020). The court rejected the government's contention that the interrogatory should not be answered "until after fact discovery ends and expert discovery begins," emphasizing that discovery had been open for approximately seven months at the time. Id. at *5. In the instant case, Interrogatory No. 3 seeks less information—only the identity of the allegedly false claims, rather than the identity *and* reasons the claims were false. (See ECF No. 154-5 at 3.) Additionally, discovery has been open for longer, as almost exactly two years have passed since the Court entered its original Scheduling Order on April 18, 2023. (ECF No. 77.)

Likewise in Fesenmaier, the court compelled the government to identify specific false claims, reasoning such information was relevant to Defendants' valuation of the case and the damages calculation. United States v. Cameron-Ehlen Grp., Inc., No. 13-CV-3003 (WMW/DTS), 2019 WL 1453063, at *3–4 (D. Minn. Apr. 2, 2019), aff'd sub nom. United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc., No. 13-CV-3003 (WMW/DTS), 2019 WL 3245003 (D. Minn. July 19, 2019). Although the court only required the government to respond "to the extent of its current knowledge," it said any supplementation must be completed forty-five days before the close of discovery. Id. at *4. Here, the Court tentatively ordered Relator to provide a complete list of allegedly false claims by the close of fact discovery on May 16, 2025, and said supplementation would be left to the discretion of the District Court. Given the procedural history of this case—including the fact that discovery has been open for two

years, discovery deadlines have been continued by more than five hundred days, and Relator has possessed most claims data since November 2024 or earlier—the Court finds this timing to be reasonable.  In fact, in Vision Quest, the court compelled identification of false claims six months before the close of fact discovery.  See United States v. Vision Quest Indus., Inc., No. 2:21-cv-05197-FLA-PDx, 2022 WL 21826111, at *1–2, *11 (C.D. Cal. Feb. 3, 2022).  Thus, requiring Relator to provide a list of the specific false claims by the close of fact discovery is appropriate at this stage of the proceedings.

Many of the cases that Relator cites are unavailing.  For example, in Poehling, the court denied a motion to compel further response to an interrogatory that asked defendant to do the following: "with respect to every diagnosis code on the government's list, (a) identify which code is supported by a medical record and (b) identify every medical record review that [defendant] conducted."  United States ex rel. Poehling v. United Health Grp., Inc., No. CV 16-8697 FMO (SSX), 2021 WL 9763051, at *1 (C.D. Cal. May 28, 2021).  Notably, the government had already identified a list of twenty-eight million codes.  Id. at *2.  The court determined expert analysis was needed to provide a reliable answer to the interrogatory, which required a comparison of twenty-eight million codes to more than twenty million medical records.  Id.  By contrast, Interrogatory No. 3 asks Relator to simply identify the universe of false claims, rather than answer questions about the false claims.  (ECF No. 154-5 at 3.)

Relator highlights several other cases to support its proposition that experts are needed to identify the false claims in this matter.  (See ECF No. 155 at 9–10 (citing, *inter alia*, United States v. Reliance Med. Sys., LLC, No. CV1406979DDPJCX, 2022 WL 524062, at *2 (C.D. Cal. Feb. 22, 2022); United States v. SuperValu, Inc., No. 11-3290, 2019 WL 1277031, at *1 (C.D. Ill. Mar. 20, 2019); United States v. Teva Pharms. USA, Inc., No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *24 (S.D.N.Y. Feb. 27, 2019); United States v. Halifax Hosp. Med. Ctr., No. 6:09-CV-1002-ORL-31, 2013 WL 6017329, at *9 (M.D. Fla. Nov. 13, 2013).)  The Court finds these non-binding cases are distinguishable from the instant one.  For example, Reliance involved a summary judgment order addressing the

number of claims at issue, but there is no indication the court assessed *when* during the discovery process the false claims should be identified. 2022 WL 524062, at *2. Likewise, SuperValu involved a motion to exclude expert testimony, but the court did not address the appropriate timeline for identification of false claims. 2019 WL 1277031, at *1. Ultimately, Relator has not explained why it cannot identify all allegedly false claims by May 16, 2025, despite receiving significant extensions to the discovery schedule and obtaining most claims data by November 2024.

## V.   CONCLUSION

For the reasons discussed in this Order, the Court confirms its tentative ruling and **GRANTS** Defendants' Motion to Compel. (ECF No. 154.) The Court **ORDERS** Relator to supplement its response to Interrogatory No. 3 by producing a complete list of allegedly false claims no later than **May 16, 2025**. Defendants may conduct fact discovery on any newly identified false claims by **June 16, 2025**. Supplementation after May 16, 2025, will be left to the discretion of the District Court.

**IT IS SO ORDERED**.

Dated: April 24, 2025

Honorable Michael S. Berg
United States Magistrate Judge