1
2
3
4
5

JONES DAY
Karen P. Hewitt (State Bar No. 145309)
kphewitt@jonesday.com
Shireen Matthews (State Bar No. 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA  92121-3134
Telephone:  858.314.1200

6
7
8
9

Ann T. Rossum (State Bar No. 281236)
atrossum@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone:  949.851.3939

10
11

Attorneys for Defendants Abbott
Laboratories, Abbott Laboratories Inc.,
Abbott Cardiovascular Systems Inc., and
Abbott Vascular Inc.

12

13

## UNITED STATES DISTRICT COURT

14

### SOUTHERN DISTRICT OF CALIFORNIA

15

16
17
18
19
20
21
22

UNITED STATES OF AMERICA, *et al.*; *ex rel.* EVEREST PRINCIPALS, LLC,

             Plaintiffs and Relator,

    v.

ABBOTT LABORATORIES, et al.,

            Defendants.

CASE NO. 3:20-cv-0286-W-MSB

**MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO PLAINTIFF-RELATOR'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANTS' MOTION TO COMPEL DISCOVERY (DKT. NO. 159)**

Hearing Date:  June 16, 2025
Ctrm:  3C – Hon. Thomas J. Whelan

**NO ORAL ARGUMENT PURSUANT TO LOCAL RULE**

23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   BACKGROUND ................................................................................... 3

III.  LEGAL STANDARDS ......................................................................... 6

IV.   ARGUMENT ........................................................................................ 7

    A.    The Magistrate Judge properly exercised his discretion to sequence discovery. ................................................................... 8

    B.    Relator's challenges to the Order fail. ......................................... 9

        1.    Relator tries to invent a legal error where none exists. ............. 10

        2.    Relator has failed to distinguish the numerous cases that support Abbott's position. .......................................... 14

    C.    This Court should neither excuse any failure by Relator to comply with the in-effect Court Order requiring the complete list by May 16 nor extend any other deadlines. ................................... 17

V.    CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Alvarez v. Larose*,
No. 320CV00782DMSAHG, 2020 WL 5632659 (S.D. Cal. Sept. 21, 2020) .................................................................................................... 19

*Amgen Inc. v. Sandoz Inc.*,
2017 WL 1352052 (N.D. Cal. Apr. 13, 2017) ............................................ 11, 12

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*,
34 F.4th 801 (9th Cir. 2022) ....................................................................... 6

*Cruz v. Nike Retail Servs., Inc.*,
346 F.R.D. 107 (S.D. Cal. 2024) ................................................................ 19

*FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*,
No. 15-CV-1058-JLS (DHB), 2018 WL 722834 (S.D. Cal. Feb. 5, 2018) ......... 9

*J.B. v. Kyrene Elementary Sch. Dist. No. 28*,
112 F.4th 1156 (9th Cir. 2024) ................................................................... 7

*Jardin v. DATAllegro, Inc.*,
No. 10-CV-2552-IEG WVG, 2011 WL 3299395 (S.D. Cal. July 29, 2011) ............................................................................................................ 6

*Kurin, Inc. v. Magnolia Med. Techs., Inc.*,
No. 3:18-CV-1060-L-LL, 2019 WL 5422931 (S.D. Cal. Oct. 23, 2019) ........ 6, 7

*Mancini v. Ins. Corp. of New York*,
No. 07cv1750–L(NLS), 2009 WL 1765295 (S.D. Cal. June 18, 2009)............. 14

*Montgomery v. Wal-Mart Stores, Inc.*,
No. 12CV3057-JLS (DHB), 2015 WL 11233384 (S.D. Cal. July 17, 2015) ....................................................................................................... 13, 14

*Soo Line R.R. Co. v. Travelers Indem. Co.*,
No. 18-CV-1989, 2019 WL 2296596 (D. Minn. May 30, 2019) ..................... 11

*Tennison v. City & Cnty. of San Francisco*,
226 F.R.D. 615 (N.D. Cal. 2005) ............................................................... 9

*U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*,
13-cv-3003, 2021 WL 101193 (D. Minn. Jan. 12, 2021)............................. 15, 16

*U.S. v. Vision Quest Industries, Inc.*,
21-cv-05197, 2022 WL 21826111 (C.D. Cal. Feb. 3, 2022) ........................ 16

ii

*United States ex rel. Dougherty v. Guild Mortg. Co.*,
  No. 16CV2909-JAH(BLM), 2020 WL 3542391 (S.D. Cal. June 30,
  2020) ..................................................................................................8, 14, 15

*United States ex rel. Garbe v. Kmart Corp.*,
  No. 12-CV-881-NJR-RJD, 2017 WL 3175983 (S.D. Ill. July 21, 2017) ..........12

*United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings*,
  No. CV 9:14-3699-RMG, 2021 WL 7367121 (D.S.C. Feb. 3, 2021)................14

*United States ex rel. Poehling v. United Health Grp., Inc.*,
  No. CV 16-8697 FMO (SSX), 2021 WL 9763051 (C.D. Cal. May 28,
  2021) ..................................................................................................................13

*United States v. Cameron-Ehlen Grp., Inc.*,
  No. 13-CV-3003, 2019 WL 1453063 (D. Minn. Apr. 2, 2019),
  *aff'd sub nom. United States ex rel. Fesenmaier v. Cameron-
  Ehlen Grp., Inc.*, No. 13-CV-3003, 2019 WL 3245003 (D. Minn.
  July 19, 2019) .............................................................................9, 11, 12, 15, 16

*United States v. Halifax Hosp. Med. Ctr.*,
  No. 6:09-CV-1002-ORL-31, 2013 WL 6017329 (M.D. Fla. Nov. 13,
  2013) ..................................................................................................................12

*United States v. Reliance Med. Sys., LLC*,
  No. CV 14-06979 DDP (JCX), 2022 WL 524062 (C.D. Cal. Feb. 22,
  2022) ..................................................................................................................12

*United States v. SuperValu, Inc.*,
  No. 11-3290, 2019 WL 1277031 (C.D. Ill. Mar. 20, 2019) ..............................12

*United States v. Teva Pharms. USA, Inc.*,
  No. 13 CIV. 3702 (CM), 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) ..........12

**RULES**

Fed. R. Civ. P. 26(b)(1) ...........................................................................................8

Fed. R. Civ. P. 30(b)(6) .........................................................................................19

Fed. R. Civ. P. 33(a)(2)......................................................................................9, 11

iii

Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Abbott") respectfully request that the Court overrule Relator's Objection to the Magistrate Judge's Order granting Abbott's motion to compel a complete list of at-issue allegedly false claims by May 16, 2025. (Dkt. No. 161; Dkt. No. 159.)

## I.    INTRODUCTION

Relator's Objection attempts to further delay disclosure of information that goes to the very heart of this False Claims Act case: the list of allegedly false claims at issue. More than 20 months ago, in August 2023, Abbott requested that list via Interrogatory No. 3. Relator initially objected to Interrogatory No. 3 as a premature contention interrogatory but, when pressed, promised to supplement upon receipt of claims data from the government. That claims data was produced between August and November of last year. Yet, when Abbott asked Relator to make good on its commitment with time left in fact discovery, Relator still refused to provide the complete list, arguing that it should be able to identify some at-issue claims now but others during expert discovery.

In line with numerous courts faced with this issue, Magistrate Judge Berg disagreed with Relator. In an April 2025 Order, Judge Berg held that the identification of the allegedly false claims at issue—particularly shorn of any explanation or legal analysis—is factual information that must be disclosed during fact discovery. As the Magistrate Judge recognized, Relator must provide the list of at-issue false claims with enough time for Abbott to conduct fact discovery on them. Otherwise, Abbott would be deprived of the opportunity to use discovery to test the central hypothesis of Relator's lawsuit, which is that Abbott is responsible for particular claims for MitraClip devices submitted to the government for payment. For that reason, the Magistrate Judge's Order set out a sensible schedule: Relator must supplement its response to Interrogatory No. 3 by producing a complete list of

1

allegedly false claims by no later than May 16, 2025—the very last day of fact discovery—after which Abbott has leave to conduct fact discovery on any newly identified false claims by June 16, all ahead of the June 30 expert report deadline.

Relator identifies no real basis for disturbing the Magistrate Judge's Order. Relator does not contest that it must provide the complete list of at-issue claims at some point but rather quarrels only with *when* it must do so.  On timing, Relator's Objection theorizes that the Magistrate Judge's ordering the list by May 16 is legal error because Relator needs its expert witnesses' input to formulate the list.  Maybe Relator does want, or even need, expert input.  But the Magistrate Judge's Order fully accounted for that, finding that Relator had sufficient time to get that input, if it so chooses, by May 16.  That holding was well within the Magistrate Judge's broad discretion to sequence discovery.  Nor is Relator correct on the case law.  Relator fails to cite a single on-point case that comes out its way—*i.e.*, Relator fails to point to a substantive denial of a False Claims Act defendant's motion to compel identification of the complete list of at-issue claims during fact discovery.  In contrast, Abbott has cited multiple cases granting motions to compel in analogous circumstances, none of which Relator has adequately distinguished.

In any case, Relator must comply with the deadline the Magistrate Judge set and produce the complete list of allegedly false claims by May 16.  The pendency of Relator's Objection does not excuse it from complying with an operative Court order, particularly when Relator has not moved to stay the Order or even to advance the Objection's hearing date.  To the contrary, Relator waited the full 14 days to object.  Accordingly, Abbott is filing its opposition more than a week before Abbott's response deadline to make clear that Relator's full compliance with the May 16 deadline is not only required but crucial.  Abbott needs to know the complete universe of at-issue claims by then for two reasons: (1) so that it can take follow-up fact discovery by June 16, as ordered, and (2) so that Abbott's experts can consider the

at-issue claims as well as the additional discovery about them in preparing their opening expert reports due on June 30.

Abbott thus respectfully requests that the Court overrule Relator's Objection in full.

## II.    BACKGROUND

This case is about alleged false claims for payment submitted to government payors. In Relator's own words in the Third Amended Complaint, "[b]y paying kickbacks to doctors and hospitals, Abbott knowingly caused the submission of ***false claims*** for payment to Government Healthcare Programs." (Dkt. No. 85 at ¶ 3 (emphasis added).) It is those purported "false claims for payment" for which Relator seeks treble damages and penalties. (*Id.*; *see also id.* ¶¶ 11, 57, 182, 216–17.) Put simply, without false claims, there is no False Claims Act case. It is therefore hard to imagine a more appropriate subject for discovery.

In August 2023, Abbott served Interrogatory No. 3, which asked Relator to "[i]dentify each alleged false claim (as that term is used in the Complaint) that You allege Abbott presented or caused to be presented to either a federal or state government." (Dkt. No. 154-5 at 93:1–4.) In its initial response, served on September 18, 2023, Relator did not identify any specific false claims at all. (Dkt. No. 154-6.) Less than two weeks later, Abbott pressed Relator to supplement. (Dkt. No. 156-4, at 14–15.) That led to meet-and-confer discussions during which Relator claimed it could not provide the complete list because it did not yet have claims data. Those discussions culminated in January 2024 with Relator promising to supplement "once it receives claims data." (Dkt. No. 154-7, at 102–103.)

The federal government began producing claims data in this case in August 2024, completing its production in October 2024. (Dkt. No. 154-2, ¶ 5.) Georgia and New York also produced their claims data during that time frame. (*Id.*) California produced its data in November 2024. (*Id.*)

3

1  Despite having the claims data by late 2024, Relator had not supplemented its

2  response to Interrogatory No. 3 by early 2025.  Accordingly, in February 2025, with

3  fact discovery set to close on May 16, 2025, Abbott requested the complete response

4  to Interrogatory No. 3 that Relator had long ago promised.  (Dkt. No. 154-8.)  Relator

5  served a supplemental response on March 21, 2025, attaching an Excel file listing

6  3,773 alleged false claims.  (Dkt. Nos. 154-3, 154-4.)  The response, however, also

7  included three qualifications: (i) that Relator would supplement the response in its

8  expert reports due after the close of fact discovery; (ii) that the response identifies

9  only an "initial list" of "Medicare Part B" claims that had been identified "to date";

10  and (iii) the circular, conclusory contention that the claims Relator challenges via the

11  Anti-Kickback Statute are the claims that were caused by the alleged Anti-Kickback

12  Statute violations.  (Dkt. No. 154-3.)  Abbott immediately again pressed Relator for

13  a complete, unqualified response.  (Dkt. No. 154-9.)  Aiming to run out the clock in

14  fact discovery, Relator refused to provide anything further.  (Dkt. No. 154-10.)

15  The parties then raised this dispute with Magistrate Judge Michael S. Berg,

16  who heard the parties' arguments at an informal discovery conference on April 10,

17  2025.  (Dkt. No. 154-2, ¶ 3.)  Relator argued that it needed the help of experts to

18  identify the full universe of alleged false claims.  (*Id.*)  But Relator did not explain

19  why its experts had not already done this, given that Relator had been in possession

20  of the claims data for nearly six months by then.  (*Id.*)  Abbott explained that, in any

21  case, it is not seeking any expert opinion or testimony but rather only the list of false

22  claims that are at issue in this case, so it can adequately investigate them and defend

23  itself.  (*Id.*)

24  On April 10, 2025, Magistrate Judge Berg issued a tentative ruling in Abbott's

25  favor.  (*See* Dkt. No. 151.)  That ruling required Relator to identify all of the alleged

26  false claims by the close of fact discovery, May 16, 2025.  (*See id.*)  Within 30 days

27

28

from that date, Abbott would be permitted to take additional fact discovery on any claims newly identified by Relator. (Dkt. No. 154-2, ¶ 4.)

Seeking further delay, Relator refused to accept the Court's tentative ruling, forcing formal motion practice on the issue. (*See* Dkt. No. 151.) On April 18, 2025, Abbott moved to compel, which Magistrate Judge Berg granted in full just six days later, on April 24, 2025. (Dkt. No. 159.)

In his Order, Judge Berg held that the requested discovery is relevant and that Abbott is "entitled to know the specific false claims Relator believes support the allegations in its Operative Complaint." (*Id.* at 8:1–2.) Surveying the case law submitted by both parties, the Magistrate Judge found that the "requested list of allegedly false claims is factual information that should be produced during fact discovery." (*Id.* at 8:7–8.)

The Magistrate Judge addressed Relator's argument that it needs experts to identify the at-issue false claims. Even if true, the Magistrate Judge reasoned, that would not explain why Relator has not used or cannot now use its experts to provide the list during fact discovery. As Judge Berg put it, "even if expertise is needed, Relator has not explained why its experts have not made sufficient progress on this work, considering it began receiving claims data in August 2024." (*Id.* at 8:14–16.) After all, as Judge Berg explained:

- Relator had had most of the claims data for more than five months (now more than six months).
- This case has been pending for more than five years.
- Discovery has been open since April 2023.
- The Court has granted four extensions of the case schedule.
- In total, the fact discovery deadline has been continued more than 500 days, from January 2, 2024 to May 16, 2025.

- The expert discovery deadline has been continued 528 days, from May 14, 2024 to October 24, 2025.

(*Id.* at 8:20–9:2.) Based on those considerations, Judge Berg expressly found that "Relator has had sufficient time to provide a complete answer to Interrogatory No. 3, ***with or without the assistance of experts*.**" (*Id.* (emphasis added).) Indeed, "[i]n similar discovery disputes, other courts have routinely granted motions to compel this type of information during fact discovery." (*Id.* at 9:3–4; *see also id.* at 9:4–10:7.) On these grounds, the Magistrate Judge ordered Relator to produce a complete list of at-issue claims no later than May 16, with leave for Abbott to complete discovery on any newly identified claims by June 16. (*Id.* at 11.)

That Order came down on April 24. Nonetheless, Relator waited the full 14 days after the Order to file its Objection—leaving just 8 days before the May 16 deadline. (Dkt. No. 161.) Relator obtained a hearing date of June 16 (one month after the ordered deadline and the close of fact discovery) and neither moved *ex parte* to expedite these proceedings nor sought a stay of the Magistrate Judge's Order, which remains in full effect.

## III. LEGAL STANDARDS

"[T]he Federal Rules provide magistrate judges with broad discretion to manage discovery based on the particular facts of the cases before them." *Jardin v. DATAllegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 3299395, at *5 (S.D. Cal. July 29, 2011). A district court will disturb a magistrate judge's factual determinations and discretionary decisions on non-dispositive matters—such as the scheduling decision at issue here—only where "clearly erroneous." *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, No. 3:18-CV-1060-L-LL, 2019 WL 5422931, at *2 (S.D. Cal. Oct. 23, 2019); *see CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022). The clearly erroneous standard is "significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a

6

mistake has been committed." *J.B. v. Kyrene Elementary Sch. Dist. No. 28*, 112 F.4th 1156, 1161 (9th Cir. 2024) (quotation omitted); *see Kurin, Inc.*, 2019 WL 5422931, at *2. Review of a magistrate judge's legal conclusions is *de novo*. *Kurin, Inc.*, 2019 WL 5422931, at *2.

## IV. ARGUMENT

As the Magistrate Judge recognized, this dispute "is essentially about the appropriate timeline for this discovery." (Dkt. No. 159, at 7.) Relator does not dispute that it must, at some point, identify and disclose every single one of the individual alleged false claims at issue.[1] Relator just does not want to do so while Abbott has time to test those false claims using discovery, or to address them in its opening expert reports. But if Relator's allegations cannot stand up to discovery, Relator should not have brought them in the first place.

Regardless, the Magistrate Judge has broad discretion to sequence discovery, and he considered and rejected Relator's fact-bound arguments that it should have yet more time. Relator's Objection comes nowhere close to showing that Judge Berg's Order was "clearly erroneous," *Kurin*, 2019 WL 5422931, at *2, and thus should be disturbed. Relator merely repackages its unfounded complaints about the need to analyze data it has had for 6-9 months. As the Magistrate Judge found, Relator has had sufficient time to perform whatever analysis is necessary to provide Abbott with this foundational discovery. There is no reason to depart from the

---

[1] Relator suggests that some kind of broad injustice would result if it is not allowed to delay the provision of this list until June, arguing that "if the Order is upheld, defendants facing FCA-AKS allegations will be rewarded by serving contention interrogatories similar to Interrogatory No. 3 that seek expert testimony and moving to compel at the 11th hour of fact discovery, thereby limiting the universe of false claims (and, accordingly, damages) that may be presented at summary judgment and trial based on the assertion that they should be entitled to 'fact' discovery on those claims." (Dkt. No. 161-1, at 2.) But defendants facing FCA-AKS allegations *should* be "rewarded" for seeking specificity and clarification of Relator's allegations. That is a critical aspect of fact discovery. Further, Relator is going to have to provide the list prior to summary judgment and trial. Not even Relator contests as much. Whether Relator is required to provide that complete list in May or June will not have the slippery-slope effects that Relator's rhetoric implies.

Magistrate Judge's timeline.

### A. The Magistrate Judge properly exercised his discretion to sequence discovery.

The Magistrate Judge's analysis proceeded in three steps, each of which is well-supported by both the law and the facts.

*First*, the identity of the at-issue false claims is properly discoverable under Rule 26(b)(1). (Dkt. No. 159, at 7–8.) That information is obviously "relevant" and "importan[t]" to Realtor's claims and Abbott's defenses. Fed. R. Civ. P. 26(b)(1). Relator does not (and cannot) contest this point.

*Second*, the identity of the allegedly false claims "is factual information that should be produced during fact discovery." (Dkt. No. 159, at 8.) Rule 33(a)(2) permits interrogatories that relate to "any matter that may be inquired into under Rule 26(b)." And contention interrogatories are no exception; generally, "directing a plaintiff to state facts supporting contentions in his complaint [is] entirely appropriate." *United States ex rel. Dougherty v. Guild Mortg. Co.*, No. 16CV2909-JAH(BLM), 2020 WL 3542391, at *5 (S.D. Cal. June 30, 2020) (quotation omitted). The identity of the allegedly false claims are part of the "factual and legal basis for the [plaintiff's] allegations so that Defendant may evaluate the evidence and determine its defenses" and thus should be disclosed as part of fact discovery. *Id.* Relator effectively concedes this point, having already identified 3,773 allegedly false claims, purportedly based on the "personal knowledge" of Relator's sole member (Lisa Knott). (*See* Dkt. No. 159, at 8; Dkt. No. 154-3; Dkt. No. 154-4.)

*Finally*, to the extent Relator requires expert analysis to help it identify any additional at-issue claims, "Relator has had sufficient time" to do so. (Dkt. No. 159, at 9.) Under Rule 33(a)(2), "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Where an interrogatory makes such a request, "the court *may* order that the

8

interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."  Fed. R. Civ. P. 33(a)(2) (emphasis added). Trial courts are thus vested with discretion to manage the relevant deadlines for responding to contention interrogatories.  *See, e.g.*, *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-CV-1058-JLS (DHB), 2018 WL 722834, at *1 (S.D. Cal. Feb. 5, 2018) (recognizing courts compel answers to contention interrogatories where there has been adequate discovery); *Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) (granting motion to compel response to contention interrogatory where plaintiff was "in a position to provide meaningful answers"); *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 1453063, at *3–4 (D. Minn. Apr. 2, 2019), *aff'd sub nom. United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 3245003 (D. Minn. July 19, 2019) (granting motion to compel identification of allegedly false claims before close of fact discovery).

Judge Berg appropriately exercised that discretion here.  He noted that Relator began receiving claims data in August 2024, and that by November 19, 2024, it had received data from three of the four states involved in this case and from the federal government.  (Dkt. No. 159, at 8; *see* Dkt. No. 154-2, at 3.)  The Magistrate Judge also reasoned that this case has been pending for more than five years, with discovery commencing back in April 2023.  (Dkt. No. 159, at 8.)  And, after four extensions of the case schedule, the deadline for fact discovery has already been continued more than 500 days and the deadline for expert discovery has already been continued 528 days.  (*Id.*)  Because Relator had already had ample time to have experts perform the analysis Relator says is required, the Magistrate Judge found it reasonable to require Relator to identify any remaining allegedly false claims by May 16, 2025.  (*Id.* at 9.)

## B.    Relator's challenges to the Order fail.

None of Relator's arguments comes close to demonstrating an error of law or

9

1    clear error of fact.

2    **1.    Relator tries to invent a legal error where none exists.**

3    Given that the Order is a reasonable exercise of the Magistrate Judge's

4    discretion to manage discovery deadlines, Relator strains to identify something to

5    call a legal error.  In Relator's telling, "[t]he Order is based entirely on the erroneous

6    finding that the contention interrogatory at issue seeks exclusively 'factual

7    information' as a matter of law." (Dkt. No. 161-1, at 1; *see id.* at 6–7 (stating the

8    Order found that "false claims under the FCA constitute purely factual information

9    that is not the proper subject of expert opinion and analysis"); *id.* at 2 (similar).)  That

10   finding cannot be right, Relator argues, because identifying false claims has been

11   held to be a proper subject of expert opinions.  (*Id.* at 8–9.)

12   Relator simply mischaracterizes the Order.  Nowhere did the Magistrate Judge

13   rule that identification of false claims is "exclusively factual" or "not the proper

14   subject of expert opinion and analysis."  The Magistrate Judge did reason that a "*list*

15   of allegedly false claims is factual information that should be produced during fact

16   discovery," as demonstrated by the list of 3,773 claims Relator has already produced.

17   (Dkt. No. 159, at 8 (emphasis added).)  A review of that list—which includes only

18   identifier numbers and dates—shows that the information therein is indeed "factual

19   information" under any reasonable understanding of that term.  (*See* Dkt. No. 154-

20   4.)

21   More to the point, the Magistrate Judge then granted for the sake of argument

22   Relator's premise that it would need to consult with experts to identify certain

23   remaining claims.  (Dkt. No. 159, at 8–9.)  And Judge Berg explained why this did

24   not counsel in favor of a further-extended schedule: "[E]ven if expertise is needed,

25   Relator has not explained why its experts have not made sufficient progress on this

26   work."  (*Id.* at 8.)  The Magistrate Judge thus concluded that "Relator has had

27   sufficient time to provide a complete answer to Interrogatory No. 3, with or without

28

10

1   the assistance of experts." (*Id.* at 9.)

2       Under this proper view of the Order, Relator's claim of legal error quickly falls

3   apart. Relator is essentially arguing that a court can *never* require interrogatory

4   responses that require consultation with experts during fact discovery. (*See* Dkt. No.

5   161-1, at 7–9.) That is not the law. Rule 33(a)(2) itself provides that an interrogatory

6   is not objectionable merely because it "asks for an opinion or contention that relates

7   to fact or the application of law to fact." And while the Rule states that a court "may"

8   order a deferred response to that kind of request, it ultimately leaves the timing

9   question to the trial court's discretion. Fed. R. Civ. P. 33(a)(2). So, even if Relator's

10  need to consult with experts somehow rendered Abbott's request for a list of basic

11  information a "contention interrogatory," the Magistrate Judge had ample discretion

12  to require an answer by May 16, 2025. *See Fesenmaier*, 2019 WL 1453063, at *3–

13  4 (compelling "identification of the specific claims allegedly tainted by kickbacks"

14  before close of fact discovery); *see also Soo Line R.R. Co. v. Travelers Indem. Co.*,

15  No. 18-CV-1989 (SRN/TNL), 2019 WL 2296596, at *6 (D. Minn. May 30, 2019)

16  (compelling disclosure of documents underlying allegations during fact discovery

17  notwithstanding "[t]he fact that [plaintiff] may rely on experts in the future").

18      A proper reading of the Order also puts to bed Relator's argument that the

19  Magistrate Judge misunderstood "what makes a claim 'false' under the FCA in this

20  case." (Dkt. No. 161-1, at 9.) As the Magistrate Judge correctly determined, Relator

21  has had enough time to do whatever analysis is required to identify at-issue claims.

22      The cases Relator invokes to suggest otherwise all miss the mark. Relator first

23  relies on the principle that an interrogatory is improper if it asks a party to "provide

24  an expert opinion." (Dkt. No. 161-1, at 8 (quoting *Amgen Inc. v. Sandoz Inc.*, 2017

25  WL 1352052, at *2–3 (N.D. Cal. Apr. 13, 2017)).) But a list of basic claim

26  information is hardly an "expert opinion." Relator may well want or even need its

27  experts help in formulating that list, but that does not make the list itself expert

28

11

opinion any more than is the response to any interrogatory asking for facts underlying a party's contentions on a subject that experts might touch on (*e.g.*, defect or causation in a product liability case). Interrogatory No. 3 does not ask for Relator's data analysis, its legal reasoning, "every fact that undergirds why [the plaintiff] thinks that particular claim is tainted by a kickback," or "a complete theory of *why* the claim is a false claim." *Fesenmaier*, 2019 WL 1453063, at *3. It "only seek[s] to identify relevant claims." *Id.* (*See* Dkt. No. 154-5, at 2.) That is fundamentally a factual inquiry. The (apparently incomplete) list of 3,773 at-issue claims that Relator already has provided is instructive: It contains nothing even approaching expert testimony. (*See* Dkt. No. 154-5, at 2.) *See Amgen Inc.*, 2017 WL 1352052, at *2 (requiring a response to the extent the disputed interrogatory sought "facts, as opposed to expert testimony").

On this front, Relator invokes decisions it says treat claim identification as a proper subject of expert testimony. (Dkt. No. 161-1, at 8–9.) But even Relator's characterization of those cases would not be inconsistent with Judge Berg's Order in any way. At best, those cases address expert qualifications and the sufficiency of expert testimony about false claims to survive summary judgment.[2] The fact that experts *can* testify about false claims does not foreclose a court from exercising its discretion to require disclosure of basic identifying information about Relator's

---

[2] *See United States v. Teva Pharms. USA, Inc.*, No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *24 (S.D.N.Y. Feb. 27, 2019) (ruling plaintiff carried burden of production at summary judgment in part via expert who identified potential sets of false claims); *United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2013 WL 6017329, at *11 (M.D. Fla. Nov. 13, 2013) (denying summary judgment in part in reliance on expert analysis of Medicare claims data); *United States v. Reliance Med. Sys., LLC*, No. CV 14-06979 DDP (JCX), 2022 WL 524062, at *2 (C.D. Cal. Feb. 22, 2022) (crediting expert analysis of Medicare claims); *United States v. SuperValu, Inc.*, No. 11-3290, 2019 WL 1277031, at *7 (C.D. Ill. Mar. 20, 2019) (denying motion to exclude expert testimony calculating overcharges by analyzing claims submitted to Government Healthcare Programs); *United States ex rel. Garbe v. Kmart Corp.*, No. 12-CV-881-NJR-RJD, 2017 WL 3175983, at *7 (S.D. Ill. July 21, 2017) (denying motion to exclude expert testimony calculating damages by analyzing reimbursement data).

12

1    claims during fact discovery.

2        Put differently, and as the Magistrate Judge recognized, Relator's cases say

3    nothing about what matters here: the proper timeline for claim identification.  (Dkt.

4    No. 159, at 10–11.)  On that issue, Relator still has not cited a single case coming out

5    its way under analogous circumstances.  Rather, as explained in more detail below,

6    the case law is in Abbott's favor.  And Relator's case law certainly does not suggest

7    that Judge Berg's order was *clearly erroneous*.

8        In particular, Relator relies on *United States ex rel. Poehling v. United Health

9    Grp., Inc.*, No. CV 16-8697 FMO (SSX), 2021 WL 9763051 (C.D. Cal. May 28,

10   2021).  There, the government alleged the defendant had submitted false diagnosis

11   codes to increase its receipt of risk-adjustment payments under Medicare.  *Id.* at *1

12   The government provided a list of 28 million diagnosis codes it contended were

13   invalid, and later moved to compel *the defendant* to identify (a) which codes were

14   supported by medical records, and (b) every medical record review that the defendant

15   conducted.  *Id.* at *1.  The court denied the motion, reasoning that the interrogatory

16   "cannot be answered until expert discovery is completed and only if [the defendant]

17   intends to assert a defense based on this information."  *Id.* at *2.  Here, though, it is

18   the defendant asking the plaintiff to submit basic information about the plaintiff's

19   own allegations.  And neither of the circumstances at play in *Poehling* applies here,

20   because Relator has had adequate time to consult with experts if necessary, and

21   Abbott must know the identity of the alleged false claims to defend itself.  Moreover,

22   the interrogatory in *Poehling* essentially asked the defendant to "*explain* whether

23   medical records do or do not support [the] codes."  *Id.* at *2 (emphasis added).  In

24   contrast, Interrogatory No. 3 does not seek any reasoning or explanation—just basic

25   claims identification.

26       Relator also cites *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-JLS

27   (DHB), 2015 WL 11233384 (S.D. Cal. July 17, 2015), a non-FCA decision that

28

13

denied a motion to compel a detailed explanation of design-defect claims. *Id.* at *6. But the interrogatories at issue there sought far more than the basic facts underlying the plaintiff's claims: they sought a description of alleged design defects, supporting facts, identification of knowledgeable persons, and identification of supporting documents. *Id.* at *5. Abbott's interrogatory seeks information that is both less extensive (simple claim identification) and more fundamental (the identity of the very claims at issue) than anything requested in *Montgomery*.

In *United States ex rel. Lutz v. Lab'y Corp. of Am. Holdings*, the court simply denied as moot a motion to compel false-claim identification because the relevant disclosures had already been made in the interim during expert discovery. No. CV 9:14-3699-RMG, 2021 WL 7367121 (D.S.C. Feb. 3, 2021), at *1-2. The decision says nothing at all about the propriety of compelling those disclosures during fact discovery.[3]

## 2. Relator has failed to distinguish the numerous cases that support Abbott's position.

At the outset, the Order is fully justified by the discretion entrusted to the Magistrate Judge to set discovery deadlines even without heavy reliance on analogous case law. Therefore, contrary to Relator's suggestion, even Relator's (incorrect) reading of the cases addressing this issue would provide no basis to disturb the Order. In any event, Relator's reading is wrong.

In *U.S. ex rel. Dougherty v. Guild Mortg. Co.*—a False Claims Act case before Magistrate Judge Major—the defendant served an interrogatory requesting the identification of all alleged false claims along with the specific reasons the

---

[3] Relator elsewhere cites *Mancini v. Ins. Corp. of New York*, No. 07cv1750–L(NLS), 2009 WL 1765295 (S.D. Cal. June 18, 2009), for the idea that contention interrogatories can be overly broad when they seek "all facts" supporting an allegation, and that courts may modify those requests to require only "material or principal facts." (Dkt. No. 161-1, at 8.) But Relator cannot reasonably argue that Interrogatory No. 3 is overbroad: The request seeks only the identification of the claims at issue.

14

government thought the claims were false. 16-cv-2909, 2020 WL 3542391, at *3 (S.D. Cal. June 30, 2020). The government identified the universe of potentially false claims—more than what Relator has done here—but it did not identify the types of materiality and underwriting violations it was alleging. *Id.* Judge Major granted a motion to compel that additional information. *Id.* at *5. Much like Relator, the government claimed in *Dougherty* that it "shouldn't have to answer . . . until after fact discovery ends and expert discovery begins." *Id.* Judge Major disagreed, explaining that the interrogatories sought "to determine the factual and legal basis for the Government's allegations so that Defendant may evaluate the evidence and determine its defenses." *Id.*

Relator's Objection latches onto the fact that Judge Major allowed the government to supplement its list of false claims over time with the "precise types of underwriting, origination, or endorsement violations… allegedly committed." *Id.* (*See* Dkt. No. 161-1, at 14.) But Judge Major still ordered this information to be produced ***before the close of discovery***—even though this information required the sort of analysis that Relator claims is off-limits until expert discovery. *Dougherty*, 2020 WL 3542391, at *5. Judge Major concluded the government had adequate time to identify even that information, which is even more analysis-based than what Interrogatory No. 3 seeks. *Id.*

Similarly, in *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group., Inc.*, the court compelled the government to provide the exact kind of information Abbott has requested here: "identification of the specific claims allegedly tainted by kickbacks." 13-cv-3003, 2019 WL 1453063, at *3 (D. Minn. Apr. 2, 2019). The court reasoned that the request "may well be a contention interrogatory, but the Government must still respond." *Id.* The government later violated that order by "identif[ying] additional allegedly false claims two months after the close of fact discovery." *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 13-cv-3003, 2021 WL 101193, at

15

1  *21 (D. Minn. Jan. 12, 2021).  Because the newly added claims had not been timely

2  identified during fact discovery, the court excluded them.  *Id.*

3      The sum total of Relator's response to *Fesenmaier* is that even though

4  complete identification was required by the close of fact discovery, the parties

5  received a number of extensions of that deadline. (Dkt. No. 161-1, at 15–17.)  As an

6  initial matter, the fact discovery deadline here has already been extended—several

7  times, for more than 500 days in total.  (Dkt. No. 159, at 8.)  In any case, Relator's

8  argument amounts to nothing more than a disagreement with the Magistrate Judge

9  about how much time Relator needs to consult with its experts.  The Magistrate Judge

10  knows the facts and procedural history of this case well, and he is in the best position

11  to evaluate and set deadlines.  He considered this case's procedural posture and found

12  Relator had provided no persuasive reason why it could not perform the necessary

13  identification by May 16.  (*Id.*)  That determination was not clearly erroneous.

14      Finally, in *U.S. v. Vision Quest Industries, Inc.*, even after the government

15  identified a set of 24,000 false claims, the court compelled the government to identify

16  which subset of those claims involved a purported lack of medical necessity so the

17  defendant could adequately defend itself.  21-cv-05197, 2022 WL 21826111, at *3,

18  5–6, 11 (C.D. Cal. Feb. 3, 2022).  Critically, the government was ordered to identify

19  those claims ***six months before the close of fact discovery***.  *See id.* at *1 (identifying

20  August 19, 2022 as the close of fact discovery); *id.* at *11 (compelling production by

21  February 22, 2022).  So even where plaintiffs identify *some* allegedly false claims,

22  courts demand specificity so that defendants can know and test the universe of claims

23  data during fact discovery.  Relator suggests the outcome would have been different

24  had the government argued it needed to consult with experts. (Dkt. No. 161-1, at 18.)

25  But that is pure conjecture—particularly where (as here) the fact discovery schedule

26  included sufficient time to consult with experts.

27

28

    **C.**    **This Court should neither excuse any failure by Relator to comply with the in-effect Court Order requiring the complete list by May 16 nor extend any other deadlines.**

Relator's ultimate ask seems to be extending the May 16 deadline for Relator to provide the complete list of at-issue claims to June 30 (*i.e.*, extending the deadline to the day opening expert reports are due).  (Dkt. No. 161-1, at 21.)

At the outset, Relator's request confirms that the dispute over the Order is simply one about discovery deadlines, which is well within Judge Berg's discretion. Nowhere does Relator contend that it need not identify the allegedly false claims; it simply seeks more time to do so.  For that reason alone, Judge Berg's Order should stand.

Were that not enough, Relator's requested extension is unwarranted.  While Relator pays lip service to the notion that Abbott could then take fact discovery on the complete list for 30 days following expert disclosures on June 30 (*id.*), Relator ignores that its proposal would deprive Abbott of the list for its own opening expert reports.  Relator also ignores that its request would force Abbott to simultaneously respond to Relator's expert reports and conduct this additional fact discovery—even though the latter should inform the former.  Better, as the Magistrate Judge did, to structure the deadlines in an orderly, phased manner, with disclosure of the complete list followed by the 30-day period for Abbott to take additional fact discovery followed by the beginning of expert discovery.  Certainly the Magistrate Judge's approach is not clearly erroneous.

Relator offers no real reason for this requested extension.  Relator repeatedly suggests that Abbott waited too long to raise this dispute, saying that Abbott raised it only "at the eleventh hour." (*E.g.*, Dkt. No. 161-1, at 11).  Not only is that argument in tension with Relator's contention that it is too *early* for Relator to provide this information, but it is also inaccurate.  Abbott originally served Interrogatory No. 3 in

17

August 2023.  (Dkt. No. 154-5.)  Relator initially declined to immediately provide a complete list in its September 2023 response. (Dkt. No. 154-6.)  *Eleven days later*, Abbott pressed Relator to supplement.  (Dkt. No. 156-4, at 14–15.)  That led to meet-and-confer discussions during which Relator claimed it could not provide the complete list because it did not yet have claims data.  Those discussions culminated in January 2024 with Relator promising to supplement "once it receives claims data." (Dkt. No. 154-7, at 2–3.)  Yet, when the claims data came in, Relator still did not supplement as it had promised.  So, in February 2025, Abbott again pressed Relator to fulfill its commitment. (Dkt. No. 154-8.)  Again, Relator promised to supplement, but its March 2025 supplemental response was still incomplete and qualified.  (Dkt. No. 154-3.)  Relator ultimately confirmed on Friday, April 4 that the parties were at an impasse. (Dkt. No. 156-2, at 1.)  Abbott raised the issue with Magistrate Judge Berg the next business day, which was Monday, April 7.  (*Id.*)  That hardly evinces a lack of diligence by Abbott.

Relator tries another way of pinning the blame on Abbott: insinuating that Abbott's provision of discovery (or even how Abbott's internal records are organized) somehow held up Relator's provision of the complete list.  (*See* Dkt. No. 161-1-1, at 11 (calling Abbott's internal data "disorganized and disparate"); *id.* at 12 ("Abbott has been blatantly unable (or at least unwilling) to provide basic information in response to interrogatories about its own data").)  Relator wholly mischaracterizes the facts, but its contention is irrelevant anyway because the solution would have been to bring a motion to compel many months ago.  Relator did not bring one.[4]

---

[4] That Relator has not yet obtained claims data from one of the states, Florida, does not change things.  As an initial matter, Relator purports to be bringing claims on Florida's behalf; accordingly, Relator should not be able to use Florida's own failure to provide its own claims data to prejudice Abbott.  Regardless, if Relator does not obtain and produce to Abbott Florida claims data by the close of fact discovery on May 16, Relator will not be able to rely on it in expert discovery (much less at trial) anyway, so it will not matter if Florida claims are on the list of at-issue allegedly false claims.

18

Moreover, the ruling that Relator seeks seems to be an extension of the May 16 deadline ***after May 16 has passed***.  That would only cause confusion.  Absent an order from this Court by Friday, Judge Berg's Order with the May 16 deadline will be in effect as of that deadline, meaning Relator must comply with it—not ignore it and later ask for forgiveness.  *See Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 112–14 (S.D. Cal. 2024) (sanctioning party for disobeying magistrate judge discovery order while objection was pending); *Alvarez v. Larose*, No. 320CV00782DMSAHG, 2020 WL 5632659, at *1 (S.D. Cal. Sept. 21, 2020) ("Filing an objection pursuant to Rule 72 does not automatically stay the magistrate judge's order.").  Once Abbott receives the complete list on May 16, it will begin its month of fact discovery on any additional claims (*i.e.*, any beyond the 3,773 already identified).  Abbott will also promptly provide the list to its own experts for analysis ahead of the June 30 deadline for opening reports.[5]

To the extent Relator plans to provide the list on May 16 and is seeking an order after that date stating that it can supplement later, that is a request for an advisory ruling where the Court would not have the benefit of understanding what exactly Relator seeks to add or why Relator has good cause to do so.  Judge Berg's Order already states that "[s]upplementation after May 16, 2025, will be left to the discretion of the District Court."  (Dkt. No. 159, at 11.)  If circumstances change somehow such that Relator can show good cause to further supplement after May 16, it would have to move the Court to do so then—just like any party seeking relief from

---

[5] Relator is wrong that "Abbott has not endeavored to take any discovery of any of the 3,773 false claims that Relator has identified to date."  (Dkt. No. 161-1, at 21.)  Abbott conducted extensive deposition questioning of Relator's sole member, Lisa Knott, on whose "personal knowledge" those claims were purportedly based.  For example, Abbott asked Ms. Knott about doctors involved in claims on the list.  (Matthews Decl., Ex. A, at 230:09–236:24.)  In addition, Abbott marked the list itself as an exhibit and asked another series of questions about it.  (*Id.* at 227:03–232:14; *see* Matthews Decl., Exs. B, C.)  Abbott intends to conduct additional questioning about the list of 3,773 claims at this week's Rule 30(b)(6) deposition of Relator itself.  Once Abbott has the complete list, it will need to conduct follow-up deposition questioning.

19

a passed deadline.  To be clear, it is hard to see what would have changed such that Relator could meet its burden to further supplement, particularly given the prejudice that would result to Abbott from any late supplementation.  But that would be a question for another day based on circumstances that have not yet arisen.

In the alternative, Relator asks that the Court extend "all" current deadlines by 60 days.  (Dkt. No. 161-1, at 21.)  But Relator fails to explain why it should be allowed yet another departure from the case schedule.  As Judge Berg held, Relator has had enough time to perform this analysis, given that it has had the claims data for 6-9 months.  On top of that, Relator has known since August 2023 that Abbott was requesting this list, since February 2025 that Abbott was not going to simply forget about Relator's promise to provide the list once it obtained claims data, since April 10 that the Magistrate Judge's tentative decision was to order it, and since April 24 that the Magistrate Judge actually had ordered it.  Further, to the extent Relator is requesting an extension of its own deadline to take fact discovery from Abbott or third parties, that would be unjust.  Relator should not be rewarded for its own resistance to providing foundational discovery.

At bottom, any *post hoc* variance from the deadlines in Judge Berg's Order would foster uncertainty about what claims are and are not in the case that would require motion practice to resolve, and would only lead to needless rework on both sides in terms of expert analysis and fact discovery.  If Relator actually wanted relief from the Court-ordered deadline of May 16, it at least should have given the Court enough time to provide it *before* the deadline passed.  It did not, and it should not be compensated for its own delay with yet more delay.

1    **V.    CONCLUSION**

2        Abbott respectfully requests that the Court overrule Relator's Objection in full.

3    Dated: May 14, 2025                JONES DAY

4

5                                By: */s/ Shireen Matthews*

6                                    Shireen Matthews

7                                JONES DAY
                                Karen P. Hewitt (State Bar No. 145309)
8                                kphewitt@jonesday.com
                                Shireen Matthews (State Bar No. 237930)
9                                shireenmatthews@jonesday.com
                                4655 Executive Drive, Suite 1500
10                               San Diego, CA  92121.3134
                                Telephone: 858.314.1200
11

12                               Ann T. Rossum (State Bar No. 281236)
                                atrossum@jonesday.com
13                               3161 Michelson Drive, Suite 800
                                Irvine, CA 92612.4408
14                               Telephone: 949.851.3939

15

16                               Attorneys for Defendants Abbott
                                Laboratories, Abbott Laboratories Inc.,
17                               Abbott Cardiovascular Systems Inc., and
                                Abbott Vascular Inc.

18

19

20

21

22

23

24

25

26

27

28

21