LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Email: michele.johnson@lw.com

Michael Morin (*pro hac vice pending*)
555 11th Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: michael.morin@lw.com

Jason M. Ohta (SBN 211107)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Email: jason.ohta@lw.com

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Shireen Matthews (SBN 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Telephone: 858.314.1200

*Attorneys for Defendants*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>Defendants, | Case No. 3:20-cv-00286-W-MSB<br><br>**DISCOVERY MATTER**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO STRIKE RELATOR'S SIXTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**<br><br>Hon. Thomas J. Whelan<br>Hearing Date: July 21, 2025<br>**NO ORAL ARGUMENT PURSUANT TO LOCAL RULE** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 5

I.    Relator's Supplement Violates A Court Order And Thus Should Be Excluded Under Rule 37(b)(2)(A)(ii). ....................................................... 5

II.    Relator's Untimely Response Also Violates Rule 26(e)(1)(A) and Should Be Excluded Under Rule 37(c)(1). .............................................. 8

III.    Relator Should Be Required to Pay Abbott's Reasonable Expenses, Including Attorneys' Fees, for This Motion. ............................. 12

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 11-cv-01846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ...................... 6, 9

*Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*,
   195 F.R.D. 675 (S.D. Cal. 2000) ............................................................... 10

*Cunningham v. Hamilton County*,
   527 U.S. 198 (1999) ................................................................................. 12

*Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc.*,
   No. 05-CV-2236 ........................................................................................ 9

*Erhart v. BofI Holding, Inc.*,
   No. 15-cv-02287-BAS-NLS, 2022 WL 84389 (S.D. Cal. Jan. 7, 2022) ............. 9

*Jones v. Travelers Casualty Insurance Co. of America*,
   304 F.R.D. 677 (N.D. Cal. 2015) ................................................................ 11

*Lew v. Kona Hosp.*,
   754 F.2d 1420 (9th Cir. 1985) ................................................................... 12

*Lewter v. United States*,
   No. 10-CV-2390 ...................................................................................... 10

*Museum Assocs. v. Midzor*,
   No. CV 10-01042-PHX-NVW, 2012 WL 14026 (D. Ariz. Jan. 4, 2012) ......... 11

*Oracle USA, Inc., et al. v. SAP AG, et al.*,
   264 F.R.D. 541 (N.D. Cal. 2009) ................................................................. 8

*Synbiotics Corp. v. Heska Corp.*,
   No. 98-CV-2076 ...................................................................................... 10

*United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*,
   No. 13-cv-3003, 2021 WL 101193 (D. Minn. Jan. 12, 2021) ........................ 6, 7

*Wong v. Regents of Univ. of California*,
  410 F.3d 1052 (9th Cir. 2005) .................................................................................. 10

*Yeti by Molly Ltd v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .................................................................................... 9

**STATUTES**

False Claims Act ............................................................................................................ 1, 3

**RULES**

Fed. R. Civ. P. 26(e) ................................................................................................... *passim*

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 2, 8, 9

Fed. R. Civ. P. 37 ............................................................................................................ 12

Fed. R. Civ. P. 37(b) ......................................................................................................... 6

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................................... 2, 6

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii) ................................................................................. 6

Fed. R. Civ. P. 37(b)(2)(A)(ii) ................................................................................ *passim*

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................ 3, 12

Fed. R. Civ. P. 37(c) ......................................................................................................... 2

Fed. R. Civ. P. 37(c)(1) ............................................................................................ *passim*

Fed. R. Civ. P. 37(c)(1)(A) ........................................................................................ 3, 12

## INTRODUCTION

For years now Relator Everest Principles, LLC ("Relator") has resisted answering a basic question at the center of this False Claims Act case: which claims does it allege are false? Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (together, "Abbott") first tried to get Relator to identify the full list of at-issue claims via an interrogatory served in August 2023. But Relator delayed and delayed until April 2025, when Judge Berg ordered Relator to "produc[e] a complete list of allegedly false claims no later than **May 16, 2025**." Dkt. No. 159 at 11 ("April Order") (emphasis in original).

Judge Berg's April Order could not have been clearer: Relator was to provide the "complete" list of at-issue claims by May 16. And Relator did provide a list of 100,000-plus additional claims by May 16. But it turns out even that overstuffed list, which was based on a vague and dubious methodology, was incomplete. Weeks after the May 16 deadline and the close of fact discovery, Relator attempted to insert another 316 new Georgia Medicaid claims via a supplemental interrogatory response served on June 3. And Relator did so without first seeking leave from the Court to violate the operative April Order.

The Court should not permit Relator's untimely, unexcused supplement. As Judge Berg recognized in his April Order, the complete list of at-issue claims is "factual information that should be produced during fact discovery." *Id.* at 8. Indeed, it is hard to imagine a more appropriate subject for fact discovery in a False Claims Act case than the identification of false claims. Facing treble damages and substantial per-claim penalties based on alleged false claims, Abbott should at least know what those alleged false claims are.

As the April Order recognized by requiring that the list of at-issue claims be "complete" by a fixed date—May 16—it is critical that the list not be subject to change at any moment. Abbott needs the certainty of the complete list not only to

test it via fact discovery but also so that Abbott's experts can analyze the at-issue claims ahead of the June 30, 2025 deadline for opening expert reports. That analysis takes time and resources, and changes only cause uncertainty and rework. Further, the 316 additional claims in Relator's June 3 supplement were the first claims Relator had identified from Georgia Medicaid at any point. The amendment thus had the effect of thrusting specific Georgia Medicaid claims into the case for the first time.

To that end, Relator never notified Abbott or the Court before serving the supplement past the court-ordered deadline, much less sought leave to do so. Instead, Relator decided to seek forgiveness rather than permission. If the Court nonetheless allows Relator's supplement, the April Order requiring a "complete" list by May 16 would be effectively nullified.

Relator's June 3 supplement should be stricken and the 316 new claims should be excluded from this case. This relief is warranted by at least two Federal Rules, each of which provides an independent basis for striking the supplement. *First*, Relator's supplement directly violates the April Order, thereby warranting exclusion under Federal Rule of Civil Procedure 37(b)(2)(A), which authorizes a variety of remedial orders when a party "fails to obey an order to provide or permit discovery." *Second*, Relator's supplement independently violates Rule 26(e), which requires parties who have "responded to an interrogatory" to "correct its disclosure or response . . . in a *timely* matter" upon learning that its prior disclosure or response was incomplete. Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Relator's failure to comply with the deadline in the April Order reflects a lack of diligence or a tactical delay—either way, not a valid excuse. Because Relator's violation of Rule 26(e) is neither substantially justified nor harmless, the supplement should be stricken and excluded under Rule 37(c) as well.

Abbott therefore respectfully requests that the Court strike Relator's Sixth Supplemental Response to Interrogatory No. 3 and preclude Relator from pursuing,

relying upon, or using the new claims within it. Abbott further requests reimbursement of its attorneys' fees and costs related to this motion as sanctions against Relator for its outright violation of an operative court order. *See* Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A).

## BACKGROUND

Relator initiated this *qui tam* action under the False Claims Act and related state statutes in February 2020. Dkt. No. 1. Relator's basic theory is that Abbott violated the Anti-Kickback Statute, which purportedly resulted in the submission of "false claims for payment" to federal and state healthcare programs. Dkt. No. 85 ¶ 3. It is those alleged false claims for which Relator seeks treble damages and penalties. *Id.*; *see also id.* ¶¶ 11, 57, 182, 216–17.

Yet, the operative Complaint does not identify the specific claims that are purportedly false—*i.e.*, the claims at issue in this case. Accordingly, throughout fact discovery, Abbott repeatedly sought to determine which specific claims Relator contends were false. That effort led to Interrogatory No. 3.

Served in August 2023, Interrogatory No. 3 is straightforward. It asks Relator to list the claims it alleges are false: "[i]dentify each alleged false claim (as that term is used in the Complaint) that You allege Abbott presented or caused to be presented to either a federal or state government." Dkt. No. 154-5 at 3. This is standard discovery in *qui tam* cases. And for good reason: Without false claims, there can be no False Claims Act case.

Nonetheless, Relator refused to answer for the better part of two years. In its initial response in September 2023, Relator did not identify any specific false claims at all. Dkt. No. 154-6. Within two weeks, Abbott pressed Relator to supplement. Dkt. 156-4 at 5–6. Relator claimed it could not provide the complete list because it did not yet have claims data but ultimately promised to supplement "once it receive[d] claims data." Dkt. No. 154-7 at 3–4. So, Abbott waited until Relator had obtained claims data.

MOTION TO STRIKE
CASE NO. 3:20-cv-00286-W-MSB

1  But even after the claims data was produced—most between August and November 2024—Relator still did not provide a complete, unqualified list of at-issue claims. *See* Dkt. No. 154-1 at 2–3. The most Relator would provide was a so-called "initial list" that Relator acknowledged was incomplete and that Relator claimed it would later "further supplement." Dkt. No. 154-4; *see* Dkt. No. 154-3 at 4.

Relator provided that incomplete list on March 21, 2025. Dkt. Nos. 154-3, 154-4. With just under two months left in fact discovery, Abbott again pressed Relator to provide the complete list so that Abbott would have time to investigate and test those claims during fact discovery. When Relator refused, Abbott promptly raised the dispute with Judge Berg, who heard the parties' arguments at an informal discovery conference and issued a tentative ruling in Abbott's favor on April 10, 2025. *See* Dkt. No. 154-2 ¶ 3; Dkt. No. 151. But Relator chose to delay further, refusing to accept Judge Berg's tentative ruling and forcing formal motion practice on the issue. *See* Dkt. No. 151.

On April 24, 2025, Judge Berg granted Abbott's motion to compel. Dkt. No. 159. Critically, Judge Berg held that the "requested list of allegedly false claims is factual information that should be produced ***during fact discovery***." *Id.* at 8:7–8 (emphasis added). Judge Berg thus ordered Relator to "produc[e] a complete list of allegedly false claims no later than **May 16, 2025**"—the date fact discovery was set to close. *Id.* at 11 (emphasis in original). Abbott would then be permitted 30 days to take additional fact discovery on any newly added claims. *Id.* In short, Judge Berg's April Order recognized that Abbott was entitled to a full list of at-issue claims by a date certain (May 16) with time for Abbott to conduct fact discovery on those claims, all ahead of the June 30 deadline for opening expert reports.

Relator objected to Judge Berg's April Order but did not ask for a stay, which means that order setting out the May 16 deadline was and is operative. With the April Order in place, Relator served a fifth supplemental response identifying what appeared to be a complete list of at-issue claims. Ex. 1. To be sure, none of the

claims identified on May 16 are "false," and there is no evidence that any alleged Abbott wrongdoing resulted in any of them. But that is a motion for another day.

This motion concerns what came next: On June 3, 2025, Relator served yet another supplemental response to Interrogatory No. 3—its sixth—identifying 316 new allegedly false claims submitted to the Georgia Medicaid program. Ex. 2. This was more than two weeks after the court-ordered deadline.

While the April Order stated that "[s]upplementation after May 16, 2025, will be left to the discretion of the District Court" (Dkt. No. 159 at 11), Relator did not request leave from the Court to serve this supplement. Nor did Relator even acknowledge the May 16 deadline in its supplemental response, much less explain why it had violated the court-ordered deadline. During subsequent meet-and-confer discussions, Relator argued that the new claims were based on "supplemental" Georgia Medicaid data it obtained on May 19, 2025—after the close of fact discovery. Ex. A (Declaration of Jason Ohta) ¶¶ 4–5. According to Relator, the data previously provided by Georgia in August 2024 lacked sufficient detail to allow it to identify these 316 new claims. *Id.* But Relator did not explain why it took it nine months to obtain this additional information from Georgia. *Id.* ¶ 6. And Relator has offered no reason why it should be permitted to rely on data that was not produced to Abbott during fact discovery.

## ARGUMENT

**I.    Relator's Supplement Violates A Court Order And Thus Should Be Excluded Under Rule 37(b)(2)(A)(ii).**

Relator's attempt to insert 316 Georgia Medicaid claims into the case directly violates the April Order requiring a "complete" response to Interrogatory No. 3 "no later than **May 16, 2025**." Dkt. No. 159 at 11 (emphasis in original). That order was clear and categorical. Yet, nearly three weeks after the deadline—and after the fact discovery deadline—Relator supplemented its response again, purporting to add

hundreds of newly asserted claims without seeking leave, without explanation, and without notice. That violation triggers this Court's authority under Rule 37(b).

Under Rule 37(b)(2)(A), when a party "fails to obey an order to provide or permit discovery," the Court may impose a range of sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" and even "dismissing the action" or "rendering default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

This case squarely fits within that framework. Relator defied a direct court order on an issue central to the case: the identification of which claims it contends are false. That is the very sort of conduct Rule 37(b) is designed to address. Indeed, federal courts routinely strike and exclude late-identified evidence under similar circumstances. *See, e.g.*, *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2021 WL 101193, at *21–22 (D. Minn. Jan. 12, 2021) (affirming magistrate judge's order in relevant part for "excluding from evidence the untimely identified false claims" that were disclosed "after the close of discovery"); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846, 2012 WL 3155574, at *3 (N.D. Cal. Aug. 2, 2012) (applying Rule 37(b) to strike evidence identified late because "failure to fully comply with the Order to Compel . . . necessarily prejudiced [party's] ability to build its case").

While prejudice to the other side is not required for relief under Rule 37(b)(2)(A)(ii), here Abbott would suffer prejudice if Relator were allowed to insert these untimely new claims into the case. Abbott needed the complete list of at-issue claims by a date certain during fact discovery, not only to test those claims, but also so that Abbott's experts could analyze the claims ahead of the June 30, 2025 deadline for opening expert reports. That analysis takes time and resources, and Relator's late supplementation with new claims only causes confusion and rework. Part of the point of Abbott's obtaining the April Order requiring a complete list of at-issue

claims by a particular date was certainty. The Court should not permit Relator to undermine that certainty by later changing the list without leave. Otherwise, the April Order requiring a "complete" list by May 16 would be effectively nullified.

Nor can Relator show good cause for its unexcused violation of a court order. During the meet and confer for this motion, Relator argued that its delay was justified because it obtained additional data from Georgia on May 19, 2025. *See* Ex. A (Declaration of Jason Ohta) ¶ 5. But that does not justify its violation for several reasons.

*First*, even crediting Relator's explanation that it needed this additional data from Georgia that it did not receive until May 19, that did not give Relator carte blanche to violate a court order. Relator still could have moved for an extension or sought leave to supplement after the May 16 deadline. Relator also could have at least notified Abbott that the list it served on May 16 was incomplete. Relator did none of those things. Instead, it acted unilaterally and without notice, serving an untimely and unexplained disclosure that flatly contradicts a court order.

*Second*, the additional data from Georgia was not produced to Abbott during fact discovery, which had closed on May 16. Relator simply cannot rely on data that was not timely produced during fact discovery. *See Cameron-Ehlen Grp., Inc.*, 2021 WL 101193, at *21–22.

*Third*, Relator received claims data from Georgia in August 2024 yet did not identify any claims from Georgia Medicaid by May 16. *See supra* at 4. While Relator seems to be arguing that the data it received from Georgia in August 2024 was incomplete, it had nine months to secure supplemental data during fact discovery. It did not.

*Finally*, by bringing this *qui tam* action, Relator purports to have stepped into Georgia's shoes and litigate on the State's behalf. Dkt. No. 85 ¶ 276 ("This is a *qui tam* action brought by Relator on behalf of the State of Georgia . . . ."). In essence, Relator claims to stand in Georgia's shoes and thus cannot use its own failure to

produce additional claims data until May 19 to excuse its own failure to comply with a court order.

In sum, pursuant to Rule 37(b)(2)(A)(ii), the Court should strike Relator's sixth supplemental response and prohibit Relator from proceeding with the 316 untimely claims.

## II. Relator's Untimely Response Also Violates Rule 26(e)(1)(A) and Should Be Excluded Under Rule 37(c)(1).

In addition to violating an operative court order, Relator's Sixth Supplemental Interrogatory Response was untimely under Rule 26(e) and should be excluded under Rule 37(c)(1). Relator had an independent obligation under Rule 26(e) to "timely" supplement its interrogatory responses. Fed. R. Civ. P. 26(e)(1)(A). It failed to do so. Relator's untimely supplement is neither substantially justified nor harmless, and Rule 37(c)(1) thus mandates exclusion. Fed. R. Civ. P. 37(c)(1).

Rule 26(e)(1)(A) requires a party who has responded to an interrogatory to supplement its response "in a *timely* manner" if it learns that the response is "in some material respect . . . incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Parties are expected to supplement their discovery responses "promptly when required under that Rule, without the need for a request from opposing counsel." *Oracle USA, Inc., et al. v. SAP AG, et al.*, 264 F.R.D. 541, 544 (N.D. Cal. 2009). Here, Relator has had claims data from Georgia since August 2024. Dkt. No. 154-2 at 3. If Relator had reason to believe that data was incomplete, it had substantial time to obtain whatever data it believed was missing before the discovery deadline. Rather than promptly addressing the issue, Relator waited nearly nine months to obtain additional information.

Even then, Relator failed to act with diligence. Relator admits that it received new Georgia Medicaid data on *May 19* yet it waited until *June 3* to supplement its response—with no notice, explanation, or leave of court. That delay renders the disclosure untimely and violates Rule 26(e)(1)(A) in and of itself. *See, e.g., Erhart*

*v. BofI Holding, Inc.*, No. 15-cv-02287-BAS-NLS, 2022 WL 84389, at *2 (S.D. Cal. Jan. 7, 2022) (holding that plaintiff failed to timely "supplement his discovery response" as required by Rule 26(e)(1)(A), and excluding the evidence per Rule 37(c)(1)).

Rule 37(c)(1) provides the remedy for violations of Rule 26(e), stating that a noncompliant party "is not allowed to use that information . . . at a hearing or at trial" unless the failure was "substantially justified or harmless." Rule 37(c)(1) is "self-executing" and "automatic." *Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate either substantial justification or harmlessness. *Apple, Inc.*, 2012 WL 3155574, at *4. Relator cannot show either.

*First*, Relator cannot meet its burden to show that its untimeliness was "substantially justified" under Rule 37(c)(1). As this Court has explained, "[s]ubstantial justification requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc.*, No. 05-CV-2236 W (CAB), 2008 WL 11338356, at *3 & n.6 (S.D. Cal. July 29, 2008) (citation omitted) (finding party's late disclosure of documents not substantially justified or harmless and excluding such evidence from all further proceedings). Relator's only attempted justification appears to be that it received additional data from Georgia on May 19. But that excuse falls flat for the same reasons set out above in the Rule 37(b)(2)(A)(ii) context. Plus, even if that could justify not meeting the May 16 deadline for serving a "complete" list, it still could not explain the additional delay between May 19 and June 3. Relator's delay may have resulted from a lack of diligence or from tactical considerations, but either way, it is not "substantially justified" under Rule 37(c)(1).

This Court reached a similar conclusion in *Synbiotics Corp. v. Heska Corp.*, No. 98-CV-2076 W (NLS), 2000 WL 35632582, at *2 (S.D. Cal. Sept. 21, 2000).

There, the plaintiff's expert withdrew from the case due to "failing health," and the plaintiff then designed a new expert and served a supplemental expert disclosure two months after the close of discovery. *Id.* This Court found that the supplemental disclosure "was untimely and must therefore be stricken" under Rule 37(c)(1). *Id.* The Court concluded that the delay was not "substantially justified," because the plaintiff was aware of its original expert's poor health from the time she was retained. *Id.* The same result is warranted here, where Relator's disclosure is untimely and Relator was or should have been aware of any deficiencies in its data from Georgia long before the close of fact discovery.[1]

*Second*, Relator also cannot meet its burden to show that its untimely supplement was "harmless." Far from it. As explained above in the Rule 37(b)(2)(A)(ii) context, the ever-changing list of at-issue claims has undermined the certainty the "complete" list was intended to provide. The timing interferes with Abbott's expert analysis ahead of the June 30 disclosure deadline. "Disruption to the schedule of the court and other parties" that has been laid out for months "is not harmless." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). Moreover, allowing supplement now would send the message to Relator that other supplements would also be permitted. *Cervantes*, 2019 WL 1598219, at *6 ("Plaintiffs' untimely disclosures plainly harmed Defendants' ability to pursue discovery that Defendants had a right to pursue before the close of fact discovery.").

That is exactly the type of prejudice that Rule 26(e) and Rule 37(c)(1) are designed to prevent. The case law applying these rules make that clear. For

---

[1] *See also, e.g.*, *Lewter v. United States*, No. 10-CV-2390 W (WVG), 2012 WL 13034849, at *8–9 (S.D. Cal. Aug. 10, 2012) (excluding untimely disclosed declaration under Rule 37(c)(1); plaintiffs withheld certain information until "ten days before the discovery deadline" and other information "until the deadline itself," which resulted in defendants not having an opportunity to refute the declaration); *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675 (S.D. Cal. 2000) (excluding expert testimony produced after expert designation deadline passed; plaintiff failed to provide adequate explanation and additional discovery would burden defendant and disrupt pretrial proceedings).

example, in *Jones v. Travelers Casualty Insurance Co. of America*, the court struck two spreadsheets that the defendant produced roughly three weeks after the close of fact discovery. 304 F.R.D. 677 (N.D. Cal. 2015). The court held that the late production violated Rule 26(e) and that the failure was neither substantially justified nor harmless under Rule 37(c)(1). *Id.* at 682–83. As the court explained, the late disclosure interfered with, among other things, the other party's ability to incorporate the new information into expert reports. *Id.* at 681. The court thus granted the motion to strike and precluded the defendant from relying on the spreadsheets. *Id.* at 683. The same remedy is warranted here. As in *Jones*, Relator's untimely attempt to supplement its response to Interrogatory No. 3 prejudices Abbott by materially hindering its experts' analyses. *Id.* at 681; *see Museum Assocs. v. Midzor*, No. CV 10-01042-PHX-NVW, 2012 WL 14026, at *2 (D. Ariz. Jan. 4, 2012) (plaintiff's failure to timely disclose medical documents to support claim of emotional damages harmed defendant's ability to find an expert to challenge the claim).

Nor would extending any case deadlines cure the prejudice caused by Relator's untimely disclosure of hundreds of additional claims. To the contrary, extending case deadlines would only serve Relator's aim of delaying the case. In other words, a deadline extension would only compound the prejudice on Abbott. Relator must comply with the deadlines as ordered by the Court, and its failure to do so should not be rewarded with more delay. Indeed, as Judge Berg noted nearly a month and a half ago, Relator "has had sufficient time to provide a complete answer to Interrogatory No. 3," given that this case has been pending for more than five years, discovery has been open since April 2023, and the Court has already granted four extensions of the case schedule amounting to more than 500 days. Dkt. No. 159 at 8–9.

At bottom, Relator's sixth supplemental response was not timely, not substantially justified, and not harmless. The Court should exclude it under Rule 37(c)(1).

### III. Relator Should Be Required to Pay Abbott's Reasonable Expenses, Including Attorneys' Fees, for This Motion.

Rule 37 authorizes monetary sanctions against a party who has violated a discovery order in addition to any other sanctions that are imposed. Monetary sanctions are designed to deter unjustified delay in the discovery process. *Cunningham v. Hamilton County*, 527 U.S. 198, 207 (1999).

Specifically, Rule 37(b)(2)(C) mandates that a court "must" generally award the aggrieved party the reasonable expenses, including attorneys' fees, it incurred as a result of the other party's failure to comply with the court's discovery orders. No showing of willfulness is required for such an award. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1427 (9th Cir. 1985). Similarly, under Rule 37(c)(1)(A), a court may order payment of the reasonable expenses, including attorneys' fees, caused by the failure to timely supplement interrogatory responses as required by Rule 26(e).

Here, Relator's violation of an operative court order is clear, as is its failure to timely supplement its response to Interrogatory No. 3. Abbott has been prejudiced because it has incurred costs and fees in connection with this motion. Abbott therefore respectfully requests reimbursement of its attorneys' fees and costs.

### CONCLUSION

For the foregoing reasons, the Court should strike Relator's Sixth Supplemental Response to Interrogatory No. 3 and preclude Relator from pursuing, relying upon, or using the new claims within it. Abbott also requests recovery of its attorneys' fees and expenses.

| | | |
|---|---|---|
| 1 | Dated: June 13, 2025 | Respectfully submitted, |
| 2 | | **LATHAM & WATKINS LLP** |
| 3 | | By: */s/  Jason M. Ohta* |
| 4 | | Jason M. Ohta |
| 5 | | LATHAM & WATKINS LLP |
| 6 | | Jason M. Ohta (SBN 211107)<br>jason.ohta@lw.com |
| 7 | | 12670 High Bluff Drive<br>San Diego, CA 92130 |
| 8 | | Telephone: (858) 523-5400 |
| 9 | | |
| 10 | | Michele D. Johnson (SBN 198298)<br>michele.johnson@lw.com |
| 11 | | 650 Town Center Drive, 20th Floor<br>Costa Mesa, CA 92626 |
| 12 | | Telephone: (714) 540-1235 |
| 13 | | |
| 14 | | Michael Morin (*pro hac vice pending*)<br>michael.morin@lw.com |
| 15 | | 555 11th Street NW, Suite 1000<br>Washington, D.C. 2004 |
| 16 | | Telephone: (202) 637-2200 |
| 17 | | |
| 18 | | Kirstin Scheffler Do (SBN 261652)<br>kirstin.schefflerdo@lw.com |
| 19 | | 330 North Wabash Avenue, Suite 2800<br>Chicago, IL 60611 |
| 20 | | Telephone: (312) 876-7700 |
| 21 | | |
| 22 | | Nathan Saper (SBN 294492)<br>nathan.saper@lw.com |
| 23 | | 355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071 |
| 24 | | Telephone: (213) 485-1234 |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| 1 | |
| 2 | JONES DAY |
| 3 | Karen P. Hewitt (SBN 145309) |
|   | kphewitt@jonesday.com |
| 4 | Shireen Matthews (SBN 237930) |
|   | shireenmatthews@jonesday.com |
| 5 | 4655 Executive Drive, Suite 1500 |
| 6 | San Diego, CA 92121.3134 |
|   | Telephone: 858.314.1200 |
| 7 | |
| 8 | Ann T. Rossum (SBN 281236) |
|   | atrossum@jonesday.com |
| 9 | 3161 Michelson Drive, Suite 800 |
|   | Irvine, CA 92612.4408 |
| 10 | Telephone: 949.851.3939 |

*Attorneys for Defendants*