James C. Shah (State Bar No. 260435)
jcshah@millershah.com
MILLER SHAH LLP
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Attorneys for Plaintiff-Relator*

[Additional counsel listed on signature pages]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>Defendants. | Case No. 3:20-cv- 00286-W-MSB<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF-RELATOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE SIXTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**<br><br>Hon. Thomas J. Whelan<br>Hearing Date: July 21, 2025<br><br>**NO ORAL ARGUMENT PURSUANT TO LOCAL RULE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................. 3

III. ARGUMENT .................................................................................................. 6

    A. The Sixth Supplemental Response Does Not Violate a Court Order and Should Not Be Excluded Under Rule 37(b)(2)(A)(ii) .................................. 6

    B. The Sixth Supplemental Response Did Not Violate Rule 26(e)(1)(A) .... 10

    C. Abbott is Not Entitled to Expenses and Fees ............................................ 13

IV. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) .................................................................. 8, 9

*Cunningham v. Hamilton*,
  527 U.S. 198 (1999) ............................................................................................................ 13

*Enter Tech. Holdings, Inc. v. Noveon Sys., Inc.*,
  2008 WL 11338356 (S.D. Cal. July 29, 2008) ................................................................... 12

*Erhart v. BofI Holding, Inc.*,
  2022 WL 84389 (S.D. Cal. Jan. 7, 2022) ............................................................................ 11

*Hargis v. Pacifica Senior Living Mgmt. LLC*,
  2025 WL 1140158 (C.D. Cal. Mar. 4, 2025) ...................................................................... 14

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................ 14

*Intel Corp. v. Terabyte Int'l*,
  6 F.3d 614 (9th Cir. 1983) .................................................................................................. 14

*Open Source Sec., Inc. v. Perens*,
  2018 WL 2762637 (N.D. Cal. June 9, 2018) ...................................................................... 14

*Pierce v. Underwood*,
  487 U.S. 442 (1988) ............................................................................................................ 14

*Strom ex rel. U.S. v. Scios, Inc.*,
  676 F. Supp. 2d 884 (N.D. Cal. 2009) .................................................................................. 4

*Synbiotics Corp. v. Heska Corp.*,
  2000 WL 35632582 (S.D. Cal. Sept. 21, 2000) .................................................................. 12

*U.S. ex rel. Brown v. Celgene Corp.*,
  2014 WL 3605896 (C.D. Cal. July 10, 2014) ....................................................................... 4

*U.S. ex rel. Eisenstein v. City of New York, New York*,
   556 U.S. 928 (2009) ........................................................................................... 9

*U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group., Inc.*,
   2019 WL 1453063 (D. Minn. Apr. 2, 2019) ................................................. 7, 8

**Statutes**

31 U.S.C. §§ 3729 ..................................................................................................... 3
42 U.S.C. § 1320a-7b ............................................................................................... 3
42 U.S.C. § 1320a-7b(g) .......................................................................................... 3
Ga. Code § 23–3–120 ............................................................................................. 10

**Rules**

Fed. R. Civ. P. 26(e) ............................................................................................ 2, 5
Fed. R. Civ. P. 26(e)(1) ............................................................................................ 1
Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 10
Fed. R. Civ. P. 26 and 37 .................................................................................. 1, 13
Fed. R. Civ. P. 37 ..................................................................................................... 1
Fed. R. Civ. P. 37(b)(2)(C) .............................................................................. 13, 14
Fed. R. Civ. P. 37(b)(2)(A)(ii) ................................................................................ 2
Fed. R. Civ. P. 37(c)(1) ..................................................................................... 2, 13

Plaintiff-Relator, Everest Principals, LLC ("Relator"), respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion of Defendants, Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Defendants" or "Abbott"), to Strike Relator's Sixth Supplemental Response to Interrogatory No. 3 (ECF No. 174-1 "Motion").

## I.   INTRODUCTION

Relator fulfilled its obligations under the Federal Rules of Civil Procedure ("Rules") by timely supplementing its response to Interrogatory No. 3 based on the additional, corrected medical claims data that the State of Georgia produced on May 19, 2025. *See* Fed. R. Civ. P. 26(e)(1); Fed. R. Civ. P. 37. Based on this commonplace act of supplementation, Abbott outrageously, baselessly, and incorrectly asserts that Relator violated an order of the Court and has the temerity to seek attorneys' fees for its own frivolous motion. Awarding sanctions for supplementing an interrogatory response—well in advance of the expert disclosure deadline no less—to account for newly received data from the State of Georgia would be fundamentally inconsistent with Rules 26 and 37 and create unworkable precedent for the future of discovery in complex FCA actions.

In support of its Motion, Abbott advances two principal arguments, neither of which has any support under the Rules or applicable law.

*First*, Abbott claims that Relator "violate[d]" the Magistrate Judge's April 24, 2025 Order Granting Defendants' Motion to Compel Discovery (ECF No. 159, "Order"). Not so. The Order expressly provided that "[s]upplementation after May 16, 2025, will be left to the discretion of the District Court." Order, at 11:12–14. Relator has objected to the Order because it required Relator to prematurely furnish expert analysis based on Abbott's argument that it should be entitled to "fact" discovery relating to the allegedly false claims. *See* ECF No. 161. Even setting that Objection (which remains pending before this Court) aside, Relator still

1 complied with the Order by supplementing its Response to Interrogatory No. 3 on
2 May 16, 2025, based on its experts' analysis of the medical claims data that had
3 been produced to the parties at that time. After Georgia furnished corrected claims
4 data on May 19, 2025, Relator's experts worked diligently to analyze this data, after
5 which Relator immediately served the Sixth Supplemental Response on June 3,
6 2025—well within the time period the Order set for Abbott to conduct additional
7 discovery concerning these claims. Neither the Rules nor the Order required
8 Relator to "request leave from the Court to serve this supplement" or "to ask for a
9 stay." *Contra* Motion at 4:25, 5:7–9 (offering no supportive authority for either
10 proposition). Rather, Relator's supplementation remains squarely within the
11 District Court's discretion under the very Order that Abbott falsely asserts Relator
12 violated. *See* Order 11:13–14. Rule 37(b)(2)(A)(ii) simply does not apply.

13     *Second*, Abbott asserts that the Sixth Supplemental Response "was untimely
14 under Rule 26(e) and should be excluded under Rule 37(c)(1)." Motion, at 8:8–10.
15 The opposite is true. Abbott does not (and cannot) support the proposition that
16 Relator's service of the Sixth Supplemental Response a mere *fifteen days* after the
17 State of Georgia produced corrected, responsive medical claims data was
18 "untimely." *Contra id.* at 8:28. Relator supplemented its Response to Interrogatory
19 No. 3 based on this additional, corrected data as soon as its experts completed their
20 analysis of this data. *See* Declaration of James C. Shah ("Shah Decl.") ¶ 8. This is
21 precisely the timely supplementation that Rule 26(e) requires, and Abbott has not
22 come close to demonstrating otherwise. *Contra* Motion, at 8:28.

23     Rather than present a legitimate reason for excluding hundreds of false
24 claims Abbott caused to be submitted to the Government, the Motion illustrates
25 Abbott's gamesmanship and the ulterior motive underlying its numerous
26 manufactured "fact" discovery disputes (*see* ECF Nos. 149, 154, 155, 156, 164,
27 170) regarding Relator's Response to Interrogatory No. 3: to obtain a sneak peek at
28 Relator's expert analysis in advance of applicable expert discovery deadlines and to

curtail its liability for paying kickbacks to physicians implanting its MitraClip device by unduly limiting the universe of false claims (and, accordingly, damages) that may be presented at summary judgment and trial. At bottom, without any reasoned basis for the relief it seeks, the Motion only confirms that Abbott's discovery gambits are entirely motivated by its improper desire to obtain a head start on its affirmative expert reports (which are due June 30, 2025), without regard for the Rules or the Court's scheduling order. It is for that reason that the only "prejudice" Abbott can articulate is that its experts must analyze the Georgia claims data for their opening expert reports,[1] an exercise they undoubtedly would have undertaken regardless. The empty rhetoric that pervades the Motion is unavailing. The Motion should be denied.

## II.     BACKGROUND

On February 14, 2020, Relator initiated this *qui tam* action under seal alleging claims pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b, and applicable analogue state laws concerning Abbott's unlawful scheme to manufacture, market, and sell the MitraClip throughout the United States. The Court unsealed the action on March 25, 2021. ECF No. 9. On August 18, 2022, in denying Abbott's motion to dismiss Relator's federal FCA claims, the Court noted that a "***claim 'resulting from' a violation of the federal [AKS] is a false claim for purposes of the FCA***." ECF No. 56 at 9:5–6 (quoting 42 U.S.C. § 1320a-7b(g)) (emphasis added). The Court further held that Relator had sufficiently established a causal "'link' at [that] stage of proceedings" to demonstrate causation—that is, which claims were "tainted by an AKS violation," or, otherwise put, "which claims, if any, were the result of Defendants' fraudulent activity." *Id.* at 13:18–21 (citing

---

[1] Tellingly, Abbott's claim that its experts must analyze the false claims at issue belies the entire foundational principle of its repeated discovery motions insisting that the identification of false claims is a "fact" issue. As Abbott has now plainly admitted, the identification of false claims *does* require expert analysis.

*U.S. ex rel. Brown v. Celgene Corp.*, 2014 WL 3605896, at *8 (C.D. Cal. July 10, 2014)), 14:7–9 (quoting *Strom ex rel. U.S. v. Scios, Inc.*, 676 F. Supp. 2d 884, 894 (N.D. Cal. 2009)).  In so holding, the Court implicitly rejected the suggestion in Abbott's Motion that the "operative Complaint" was somehow required to "identify the specific claims that are purportedly false."  *Contra* Mot. at 3:12–15.[2]  On November 29, 2022, the Court subsequently sustained Relator's claims under the laws of the states of California, Florida, Georgia, and New York.  ECF No. 62.

On August 14, 2023, Abbott served Interrogatory No. 3 ("ROG 3") requesting that Relator "[i]dentify each alleged false claim [] that [Relator] allege[s] Abbott presented or caused to be presented to either a federal or state government."  *See* ECF No. 154-5.  Relator timely objected to ROG 3 as a premature contention interrogatory "to the extent it seeks information outside the control, custody, and possession" of the parties and "to the extent it seeks information to be provided by Relator's expert witnesses pursuant to the Federal Rules and the Court's scheduling order."  ECF No. 154-6, at 12:22–13:3.[3]  Subject to and without waiving these objections, Relator asserted that "each and every claim submitted to [the Government] that resulted from procedures performed by or referred to by Healthcare Providers who received remuneration from Abbott was false, fraudulent, or otherwise ineligible [] because one purpose of the remuneration Abbott provided [] was to induce MitraClip implantations, in violation of applicable law."  *Id.* at 4–28.  Relator subsequently amended its Response to explain it remained "without the benefit of fulsome discovery or receipt of claims data," standing on its objections,

---

[2] Abbott's aspersions that it has somehow been prejudiced by Relator's failure to identify specific false claims in its operative Complaint, when that showing must be made at summary judgment and trial, not the pleading stage—only demonstrate Abbott's unfaithful recitation of this action's procedural history and the parties' exchange of discovery, a mischaracterization which pervades each of Abbott's ROG 3 discovery disputes and efforts to disturb the law of the case.

[3] As Relator has explained at every juncture, the identification of allegedly false claims is "standard discovery in *qui tam* cases" which requires expert analysis and is disclosed in expert reports.  Mot. at 3:19–20.

but nonetheless responded to ROG 3 with the aggregate payment information, including amounts attributable to false claims, that was reasonably available to Relator at that time. ECF No. 155-2, at 23:16–24:19; 154-7, at 2–3.

The State of Georgia produced responsive claims data relating to MitraClip procedures in response to Relator's Rule 45 subpoena in August 2024, which Relator promptly served on Abbott. Shah Decl. ¶ 5. However, while performing an analysis of the Georgia medical claims data, Relator's expert identified issues preventing any identification of the allegedly false claims therefrom. *Id.* ¶ 6. The State of Georgia did not produce updated, corrected medical claims data until May 19, 2025, which Relator again promptly served on Abbott. *Id.* ¶ 7. The claims identified in the June 3, 2025 supplemental response are based solely on the May 19, 2025 corrected data. *Id.* ¶ 8.

It is simply untrue for Abbott to assert that "Relator refused to answer [ROG 3] for the better part of two years." *Contra* Mot. at 3:22. Rather, on February 24, 2025, Abbott suddenly demanded that Relator immediately supplement its Response to ROG 3, which gave rise to the several discovery disputes now at issue. ECF Nos. 154-8, 161, 170, 173, 174. Despite Relator's repeated explanations of why expert analysis remains necessary to identify the full universe of false claims—as is customary in FCA cases of this nature and scope—Abbott has not abandoned its baseless attempts to improperly accelerate the ongoing analysis of Relator's experts and stifle Relator from fulfilling its continued obligation under Rule 26(e) to timely supplement the ROG 3 Response as additional information is made available.

## III. ARGUMENT

### A. The Sixth Supplemental Response Does Not Violate a Court Order and Should Not Be Excluded Under Rule 37(b)(2)(A)(ii)

The Motion is accurate in one respect: the Magistrate Judge's Order was "clear and categorical" (Mot. at 5:25–26) that "[s]upplementation [of ROG 3] after May 16, 2025, will be left to the discretion of the District Court." Order, at 11:13–14. The Order did not require or suggest, however, that Relator was required to "seek[] leave," provide "explanation," or furnish "notice" in order to so supplement the Response as necessary. *See generally id.*; *contra* Mot. at 1:17–18, 6:1–2.

The Order required Relator to furnish a "complete list of allegedly false claims no later than May 16, 2025" (*id.* at 11:10–12), which Relator did by serving the Fifth Supplemental Response based on the information and data reasonably available to it at that time and its experts' analysis of that information and data. Importantly, in the Fifth Supplemental Response, Relator explicitly explained that:

> ***By way of further Response and pursuant to the Court's Order, without waiving Relator's rights pursuant to its Objection to the Order filed on May 8, 2025, ECF. No. 161, and the current scheduling order, Relator incorporates a list of false claims identified through its experts' analysis as set forth below:***
>
> • A list of Medicare Part A FFS false claims attached hereto as Attachment A;
> • A list of Medicare Part A managed care false claims attached hereto as Attachment B;
> • A list of additional Medicare Part B FFS false claims attached hereto as Attachment C;
> • A list of Medicare Part B managed care false claims attached hereto as Attachment D; and
> • A list of New York State Medicaid false claims attached hereto as Attachment E.
>
> ***Relator will further supplement its Response in connection with its expert reports and/or upon receipt of any additional claims data and/or discovery.***

ECF No. 174-3, at 6:25–7:14 (emphasis added). Relator maintained this same objection and explanation in the Sixth Supplemental Response. *See* ECF 174-4, at 6:25–5. There is simply no support for the proposition that Relator defied the Order, *contra* Mot. at 174-1, and Abbott resorts to inapposite authorities to

manufacture a "violation" when there has been none.

First, Abbott continues to misguidedly rely on *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group., Inc.* In that nonbinding District of Minnesota case, an FCA-AKS defendant served a similar contention interrogatory demanding the identification of the claims the Government alleged to be false. 2019 WL 1453063, at *3 (D. Minn. Apr. 2, 2019). The magistrate judge there required the Government to provide a "complete[]" list within 45 days of the close of fact discovery. *Id.* at *3–4; *see also* ECF No. 161-1, at 15:20–18:1, but subsequently extended fact discovery, effectively extending this deadline by more than five months. Ex. A (*Fesenmaier*, Case No. 13-cv-3003 (WMW/DTS), ECF No. 264). Then, the day before the extended deadline, the magistrate judge provided the Government an additional 45 days to fashion a complete response beyond the extended fact discovery deadline. Ex. B (*Fesenmaier*, Case No. 13-cv-3003 (WMW/DTS), ECF No. 380). In doing so, the court noted that the Government "diligently attempted to comply with the deadlines set by the Court ***for a process that is time consuming and reliant upon data from third parties***" and, in fact, "substantially complied with" the previous deadlines. *Id.* at 1–2 (emphasis added). The magistrate judge further explained that "[a] party has a general duty under Rule 26 to supplement in a timely manner its response to a discovery request if it learns that that the response is materially incomplete or incorrect," and providing "additional time [to supplement the response] reflects the diligent work Plaintiffs have performed in identifying the claims they allege to be false and ensures they are not 'boxed in' to only those claims they knew about when discovery was ongoing." *Id.* at 2. "At the same time, ***Defendants [still had] two full months to evaluate the information during the expert discovery phase***." *Id.* at 3 (emphasis added). Only after the Government supplemented claims data beyond the repeated extension of deadlines and ***after*** expert discovery did the *Fesenmaier* district court exclude certain allegedly false claims as "untimely identified." *See Fesenmaier*, 2021 WL 101193,

at \*21–22 (emphasis added).

Neither the Motion nor any of Abbott's other filings on this issue engage with the entirely distinct circumstances in *Fesenmaier* warranting exclusion of allegedly false claims. Mot. at 6:9–20 (citing only the *Fesenmaier* summary judgment opinion); ECF No. 163, at 3:3–13 (claiming that here, the "fact discovery deadline here has already been extended—several times, for more than 500 days in total," but conspicuously omitting the fact that all the *Fesenmaier* extensions were granted ***after*** the magistrate judge compelled the government to identify all allegedly false claims and furnish expert analysis during fact discovery). *Fesenmaier* simply does not support the exclusion of the Sixth Supplemental Response.

Abbott's only other authority purporting to support the application of Rule 37(b), *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, is a patent case in which Judge Koh of the Northern District of California found that "[e]ven crediting Samsung's partial compliance of source code production, it was not clearly erroneous for [the magistrate judge] to find that Apple was still prejudiced by Samsung's failure to fully comply with [the magistrate judge's] order to produce all source code." 2012 WL 3155574, at \*3 (N.D. Cal. Aug. 2, 2012). Judge Koh confronted the entirely distinct set of facts where "it was a reasonable finding that Samsung's failure to fully comply with [the magistrate judge's] Order to Compel Source Code necessarily prejudiced Apple's ability to build its case as to each infringing product and to defend itself against cross-examination of its expert witnesses," since Apple's experts were "vulnerable on cross examination to attacks that they had not thoroughly analyzed the source code." *Id.* at \*3. Abbott has not even attempted to explain how the source code Samsung belatedly produced in patent litigation after expert reports had been served has any application to the instant Action or Relator's identification of allegedly false claims. *See id.* ("it would hardly be fair to allow Samsung to offer what little design-around code it may have produced for a handful

of the accused products, or to allow Samsung to produce all kinds of non-source code evidence, after it withheld substantial source code that would have permitted Apple to challenge such evidence"); *see generally* Mot.

Unable to support its plea to exclude the Sixth Supplemental Response with any meaningful or applicable authority, Abbott contends it "needed the complete list of at-issue claims by a date certain during fact discovery, not only to test those claims, but also so that Abbott's experts could analyze the claims ahead of the June 30, 2025 deadline for opening expert reports." Mot. at 6:23–26. According to Abbott, "Relator's late supplementation with new claims only causes confusion and rework," when it needed "certainty." *Id.* at 6:26–7:1. Tellingly, these contentions are devoid of any reference to Rule 37 or other applicable law, and are thinly veiled excuses to cover the true reasons why Abbott has indefatigably pursued a "complete" response to ROG 3: to falsely limit the universe of false claims with a premature "certain" deadline and to get a sneak peek at the analysis of Relator's experts and, thus, present responsive expert analysis in both its opening and rebuttal expert reports. The scheduling order does not contemplate—and the Court should not allow—such gamesmanship. *Id.*

As a final throwaway argument, Abbott remarkably asserts that "Relator claims to stand in Georgia's shoes and thus cannot use its own failure to produce additional claims data until May 19 to excuse its own failure to comply with a court order." Mot. at 7:25–8:2. The only possible way to read this sentence to make logical sense is to attribute a false equivalency between Relator and the State of Georgia. But while governmental bodies may be the real parties in interest in FCA (and state law equivalent) litigation, they are not themselves "parties" in cases where they do not intervene. *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 937 (2009) ("[W]hen the United States has declined to intervene in a privately initiated FCA action, it is not a 'party' to the litigation," but instead a "real party in interest," which "does not automatically convert it into a 'party'"). Abbott

does not and cannot point to any authority suggesting that the Georgia state false claims act, Ga. Code § 23–3–120, *et seq.* (also known as the "Taxpayer Protection False Claims Act") makes the State of Georgia a "party" to this action. Moreover, if the State of Georgia were in fact a party, rather than a party in interest, Relator would not have needed to obtain the requested claims data from the State of Georgia via a Rule 45 subpoena.

In sum, the Motion provides no basis for excluding the claims identified in the Sixth Supplemental Response pursuant to Rule 37(b)(2)(A)(ii).

### B. The Sixth Supplemental Response Did Not Violate Rule 26(e)(1)(A)

The Motion remarkably asserts that the Sixth Supplemental Response "*violates*" Rule 26(e)(1)(A). The opposite is true. Rule 26(e)(1)(A) **requires** Relator, as a party who "responded to an interrogatory," to "supplement or correct its [] response [] in a timely manner" upon "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Relator served the Sixth Supplemental Response within 15 days of being provided the corrected Georgia data.[4] Relator's response to ROG 3 did not include any allegedly false claims identified from the data the State of Georgia had produced as of April 24, 2025 because those claims were not the subject of Relator's personal knowledge and Relator had, up until that point, properly anticipated furnishing such information in connection with expert discovery given the lengthy and laborious expert analysis required to match the raw reimbursement data to kickbacks and identify allegedly false claims. Contrary to Abbott's baseless accusation that

---

[4] Relator further points out that it provided the same claims data it received from Georgia, both in August 2024 and on May 19, 2025, to Abbott after receiving the same from Georgia. Abbott's experts have thus had more than ample time to consider this data.

1  Relator "waited nearly nine months to obtain additional information," Mot. at 8:23–
2  24, prior to the Court's Order, Relator and its experts had been diligently working
3  to identify the false claims by the June 30, 2025 expert report deadline, a process
4  they accelerated to comply with the Order.

5        Knowing its repeated suggestions that Relator sat on the Georgia data for
6  nine months are frivolous, Abbott incredibly asserts fifteen days is also too long—
7  and somehow untimely.  *See* Mot. at 8:26–9:4.  That argument is illogical, not least
8  because it ignores the expert analysis required to identify allegedly false claims
9  based on unprocessed data pertaining to medical claims for payment, as Relator has
10 repeatedly explained.[5]  The authority Abbott cites for this position, again, does not
11 remotely suggest that fifteen days is untimely, particularly when Abbott received
12 the Sixth Supplemental Response well in advance of the expert disclosure
13 deadlines.  *See* Mot. at 8:28–9:4.  In *Erhart v. BofI Holding, Inc.*, a defendant
14 learned during third-party depositions that "responsive communications were
15 missing from [the plaintiff's] document production" and "moved to compel
16 production of the missing texts." 2022 WL 84389, at *1 (S.D. Cal. Jan. 7, 2022).
17 Judge Bashant granted the defendant's "request [*in limine*] to exclude" the text
18 messages altogether because it was "obvious that [the plaintiff's] document
19 production was incomplete" since it contained "incomplete text chains where it
20 makes no sense that the first relevant message is the one produced." *Id.* at *2.
21 Judge Bashant observed that the plaintiff "should have produced [the texts] under
22 his duty to supplement his discovery response" once plaintiff's "counsel knew there
23 were relevant, missing texts[.]" *Id.*  Abbott's reliance on *Erhart* is, therefore,
24 puzzling, as Relator precisely followed Judge Bashant's instruction therein by
25 supplementing the ROG 3 Response as soon as its experts performed the analysis

---

[5] On March 21, 2025, Relator unambiguously put Abbott on notice that its expert's review of data produced by state agencies could result in necessary follow-up discussions with the producing agency and, by implication, the production of updated, corrected data.  *See* Ex. C (March 21, 2025 Letter from Bruce D. Parke), at 2.

necessary to meaningfully fashion a response, within 15 days of receiving the corrected Georgia data.

The Motion fares no better in purporting to show that any "untimeliness" was not "substantially justified" under Rule 37(c)(1). Abbott relies on this Court's decision in *Enter Tech. Holdings, Inc. v. Noveon Sys., Inc.* for the proposition that "[s]ubstantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." 2008 WL 11338356, at *3 (S.D. Cal. July 29, 2008) (Whelan, J.). There, the defendant "represented to Judge Bencivengo that she had no further information or documents in her possession" and subsequently failed to produce these documents during discovery. *Id.* By contrast, here, Relator has consistently noted in its ROG 3 Responses that it would "further supplement its Response in connection with its expert reports and/or upon receipt of any additional claims data and/or discovery," which is precisely what Relator has done. ECF No. 174-3, at 6:25–7:14. Abbott can offer no facts demonstrating that the Sixth Supplemental Response was not "substantially justified" and should be excluded under Rule 37(c)(1).

Undeterred, Abbott invokes *Synbiotics Corp. v. Heska Corp.*, another case decided by this Court, for the proposition that the Sixth Supplemental Response should be stricken. There, however, a party served an expert report two months after the disclosure deadline and attributed the delay to its original expert's failing health, even though it "was expressly aware of [the expert's] failing health from the time she was retained as an expert." 2000 WL 35632582, at *2 (S.D. Cal. Sept. 21, 2000) (Whelan, J.). Even then, this Court permitted the new belatedly identified expert to testify at trial so long as the testimony was consistent with the ill expert's timely disclosed and "previously submitted expert reports, rebuttals and deposition testimony." *Id.* at *3. Thus, *Synbiotics* likewise does not bear on the present Motion.

Finally, in a last-ditch effort to concoct the artifice of "prejudice" and assert that the Sixth Supplemental Response is not "harmless," Abbott reiterates that "[t]he timing interferes with Abbott's expert analysis ahead of the June 30 disclosure deadline." Mot. at 10:13–14.  Again, this only confirms that the true motivation behind these discovery disputes has always been to hamstring Relator and obtain a sneak peek at its expert analysis, thereby permitting Abbott to serve not one, but two, expert rebuttal reports.  Accordingly, the only "prejudice" present here is the time and expense Relator has incurred by objecting to Abbott's tireless schemes to compress the timeline for Relator's expert analysis and limit its own liability for kickbacks.  The Court should not countenance these efforts.

In sum, the Sixth Supplemental Response was timely, substantially justified (and required) under Rules 26 and 37, and harmless.  There is no basis for exclusion under Rule 37(c)(1).

### C. Abbott is Not Entitled to Expenses and Fees

Having failed to cogently argue that Relator violated a Court Order or Rules 26 and 37, Abbott has no ground to seek any sanctions, including expenses and attorneys' fees.  *Contra* Mot. at 12.  While monetary sanctions may be designed to deter unjustified delay in discovery (*see, e.g.*, *Cunningham v. Hamilton*, 527 U.S. 198, 207 (1999)), if anything, it is Abbott, not Relator, who caused unjustified delay and forced the Court and Relator to spend needless time and resources opposing the multiple discovery motions relating to ROG 3.

Even if the Court were to find Relator's Sixth Supplemental Response violated the Order, the violation was "substantially justified," and the Court need not impose expenses. Fed. R. Civ. P. 37(b)(2)(C).  As explained above, the Order left supplemental responses to ROG 3 to the discretion of this District Court, and Relator provided its updated Sixth Supplemental Response as soon as was practicable upon receiving the necessary updated data from Georgia.  These uncontroverted facts are plainly sufficient to meet the "substantially justified"

standard, which asks only "if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 442, 565 (1988).

Moreover, Abbott has provided no accounting of what its fees and costs actually are (likely because the Sixth Supplemental Response, produced nearly four weeks before Abbott's expert reports are due, did not actually cause its experts any "confusion" or "rework"). An application for fees and expenses must include evidence of the hours worked and rates claimed, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and the applicant must further show that those hours and rates were reasonable. *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983); *Hargis v. Pacifica Senior Living Mgmt. LLC*, 2025 WL 1140158, at *3 (C.D. Cal. Mar. 4, 2025) ("district courts 'may not uncritically accept a fee request, but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case.'") (quoting *Open Source Sec., Inc. v. Perens*, 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018)). Abbott has not even attempted to make that showing here. Thus, the Court should not award any fees and costs Abbott may have incurred in bringing this duplicative, frivolous Motion. *See* Fed. R. Civ. P. 37(b)(2)(C) (explaining that the "disobedient" party need not pay expenses when "circumstances make an award of expenses unjust.").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Abbott's Motion and the relief it seeks in its entirety.

| | |
|---|---|
| Dated: June 30, 2025 | Respectfully submitted,<br><br>MILLER SHAH LLP<br><br>By: *James C. Shah*<br>James C. Shah (State Bar No. 260435)<br>jcshah@millershah.com<br>8730 Wilshire Blvd., Suite 400<br>Los Angeles, CA 90211<br>Telephone: (866) 540-5505<br>Facsimile: (866) 300-7367<br><br>James E. Miller (State Bar No. 262553)<br>jemiller@millershah.com<br>Laurie Rubinow (*Pro Hac Vice*)<br>lrubinow@millershah.com<br>65 Main Street<br>Chester, CT 06412<br>Telephone: (860) 526-1100<br><br>Bruce D. Parke (*Pro Hac Vice*)<br>bdparke@millershah.com<br>Christopher A. Miller *(Pro Hac Vice)*<br>camiller@millershah.com<br>1845 Walnut Street, Suite 806<br>Philadelphia, PA 19103<br>Telephone: (610) 891-9880<br><br>Jonathan K. Tycko (*Pro Hac Vice*)<br>jtycko@tzlegal.com<br>TYCKO & ZAVAREEI, LLP<br>2000 Pennsylvania Avenue., NW<br>Suite 1010<br>Washington, D.C. 20006<br>Telephone: 202.973.0900<br><br>Monique Olivier (State Bar No. 190385)<br>monique@os-legal.com<br>OLIVIER & SCHREIBER LLP<br>475 14th Street, Suite 250<br>Oakland, CA 94612<br>Tel: (415) 484-0980<br><br>*Attorneys for Plaintiff and Relator Everest Principals, LLC* |

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, I caused the foregoing Plaintiff-Relator's Opposition to Defendants' Motion to Strike Sixth Supplemental Response to Interrogatory No. 3 to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

*/s/ James C. Shah*
James C. Shah