LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

Michael Morin (*pro hac vice*)
michael.morin@lw.com
555 11th Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200

Jason M. Ohta (SBN 211107)
jason.ohta@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Shireen Matthews (SBN 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Telephone: (858) 314-1200

*Attorneys for Defendants*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>Defendants, | Case No. 3:20-cv-00286-W-MSB<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR EXPENSES**<br><br>Hon. Michael S. Berg<br>Special Briefing Schedule Ordered (ECF No. 183)<br>No Hearing Per Order of Court |

Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Abbott") respectfully request that the Court order Relator to pay Abbott's reasonable expenses incurred as a result of Relator's violation of the Court's order requiring Relator to provide a complete list of allegedly false claims by May 16, 2025, and Relator's untimely disclosure of the real list of at-issue claims.

## INTRODUCTION AND BACKGROUND

For the last two years, Abbott has been seeking from Relator information that goes to the very heart of this False Claims Act case: the list of allegedly false claims at issue. Not only does the list of claims drive Relator's asserted penalties and damages, but it also drives Abbott's factual defense. That is because the alleged kickbacks must be connected to the claims, so the list determines precisely against what Abbott must defend. Critically, the list of claims cannot constantly dramatically change, because as the list changes, so does the shape of the entire case.

In August 2023, Abbott requested the list via Interrogatory No. 3. Despite initially objecting, in January 2024, Relator ultimately agreed to provide it upon receipt of claims data from the government. But even though the government had produced the vast bulk of the claims data by November 2024, Relator still refused to provide a complete list, instead providing only a heavily qualified list of 3,773. Dkt. No. 154-3.

Accordingly, this spring, Abbott moved to compel. In April, Judge Berg granted Abbott's motion, ordering Relator to provide a "complete" list of allegedly false claims no later than the close of fact discovery—May 16, 2025. Dkt. No. 159 ("April Order"). As the April Order put it, Abbott was "entitled to know the specific false claims Relator believes support the allegations in its Operative Complaint." *Id.* at 8. This, the April Order held, is "factual information that should be produced during fact discovery." *Id.*

Relator objected to the April Order but did not move to stay it, leaving the order in full effect as of the May 16 deadline.[1] On that day, Relator served an amended response to Interrogatory No. 3 with its list of at-issue claims, describing it as "pursuant to the Court's Order." Dkt. No. 174-3 at 6. Relator's response included a list of ~120,000 claims. *Id.* at 7. Relator's sole member, Lisa Knott, verified the response, swearing that those ~120,000 claims were the ones that Relator contends were "false." Dkt. No. 174-3 at 6-7, 9.

Abbott immediately set out analyzing the list of ~120,000 claims. For the next month and a half, Abbott relied on it as the operative list of at-issue claims. With that understanding, Abbott's attorneys and experts performed the following work and analyses, among others:

- Assessed the list of ~120,000 claims, along with Medicare and Medicaid claims data, to (i) determine the number of physicians in Relator's list of ~120,000 claims, the number of procedures, and the dollar value of the claims; (ii) identify which physicians were MitraClip implanters and the number and value of claims associated with such implanters; (iii) identify which physicians were members of Abbott's Speaker's Bureau; (iv) identify which claims were related to MitraClip procedures; and (v) identify which claims occurred prior to any reported payment from Abbott to a given physician;

- Compared the physicians included in the list of ~120,000 claims against the physicians named in Relator's interrogatory responses as alleged kickback recipients;

---

[1] Judge Whelan subsequently overruled Relator's Objection and affirmed Judge Berg's April Order in full. *See* Dkt. No. 182. In so doing, Judge Whelan squarely rejected Relator's argument that the list of false claims could be delayed until expert discovery, finding that Relator had "missed the point" and that its position was based on a "misunderstanding" of the law. *Id.* at 4. Judge Whelan further held that Relator already "had ample time and knowledge to produce such false claims, yet has not previously, nor in their Objection, explained why its experts have not made sufficient progress on this work, considering it began receiving claims data in August 2024." *Id.* at 5 (citations omitted).

- Prepared quantitative data analyses of the ~120,000 claims for inclusion in the opening expert report of Abbott's expert, Dr. Anupam B. Jena;

- Drafted and submitted an expert report from Dr. Jena with qualitative critiques and quantitative analyses of Relator's list of ~120,000 claims; and

- Prepared for a supplemental 30(b)(6) deposition of Relator regarding the alleged false claims newly identified in Relator's May 16 list of ~120,000 claims.

That month and a half culminated in opening expert reports served on June 30, 2025. Abbott's expert reports analyzed the ~120,000 claims that Relator had put at issue via the May 16 list. For example, Dr. Jena (i) identified the subset of claims within the ~120,000 that were not tied to a MitraClip procedure; (ii) identified the subset of claims that were associated with the 47 implanting physicians whom Relator identified in interrogatory responses as having been exposed to alleged kickbacks; and (iii) identified and explained examples of claims in Relator's list of ~120,000 that included services entirely unrelated to MitraClip.

But when Abbott woke up the next morning, on July 1, it found that Relator suddenly appeared to be asserting an entirely different universe of at-issue claims. In the June 30 report of Relator's proffered expert, Dr. Genevieve Kanter, Relator suggested for the first time that it was actually pursuing ~21,000 false claims. *See* Ex. 1, Expert Report of Professor G. Kanter, Ph.D. (June 30, 2025) ("Kanter Report").[2]

The description of Relator's process for arriving at the ~21,000 claims in Dr. Kanter's report also makes clear that Relator's May 16 list of ~120,000 claims was

---

[2] Even then, Dr. Kanter's report did not list the ~21,000 claims. In fact, Relator did not provide the list until July 10, after Judge Berg during a July 8 conference required Relator to provide it within 48 hours. Ohta Decl. ¶¶ 10-11. Relator then incorporated that list by reference into an amended response to Interrogatory No. 3, served on July 18. *See* Ex. 2. (References to "Ex." refer to the exhibits attached to the concurrently filed declaration of Jason Ohta.)

pure gamesmanship. Ex. 1, Kanter Report ¶¶ 46-48. As Dr. Kanter described it, the list of ~120,000 reflected only an *initial step* in the analysis to identify the allegedly false claims. *Id.* That initial step merely identified a large set of MitraClip-related claims and did not take into account in any way whether those claims were connected to the alleged Abbott wrongdoing that is the subject of this case. *Id.* Put differently, that initial step did not account for what would allegedly make those claims "false." *Id.* Relator's strategy for evading the April Order had thus become clear: serve a purposefully over-inclusive list on May 16 that was never intended to be the real list and then serve the actual list later.

Worse still, Relator and its expert misrepresented that the new ~21,000 claims were a subset of the May 16 list. They described the subsequent steps of the analysis as starting with the list of ~120,000 disclosed on May 16 and then "further refin[ing]" and "narrow[ing] down" that set. *Id.* ¶ 48. Likewise, at the July 8 conference with Judge Berg, Relator's counsel represented to the Court and Abbott that *all* ~21,000 claims were part of the list of ~120,000. Ohta Decl. ¶ 10. And, in a supplement provided on July 10, Dr. Kanter said again that "[t]he list of claims associated with my expert report is thus a subset of the claims identified for the Interrogatory response." Ex. 5 at 2.

That was all false. As Relator admitted during a 30(b)(6) deposition on July 31, ~9,300 of ~21,000 claims were *not* part of the May 16 list of ~120,000. *See* Ex. 3, 30(b)(6) Dep. of Everest Principals, LLC, at 44:13–47:17 (July 30, 2025); *see also* Ex. 4, Kanter Suppl. Expert Report ¶ 1 (Aug. 11, 2025) (confirming the May 16 list was missing ~9,300 claims). So, the set of ~21,000 was not only markedly smaller than the May 16 set of ~120,000, but also markedly different. In short, it was a fundamentally different list.

Abbott's motion to strike those ~9,300 claims is the subject of separate briefing. But the fact that, in addition to being *over-inclusive*, the May 16 list was also significantly *under-inclusive* reveals that Relator's characterizations of what it

had done were false. It could not be true that Dr. Kanter had simply "narrowed down" and "further refined the set of claims identified previously," Ex. 1, Kanter Report ¶¶ 46-48, because if that were so then there could not have been ~9,300 claims on the June 30 list that were not on the May 16 list. What really happened was Relator served a purposefully over-inclusive list on May 16 then redid that list in its expert disclosures—exactly what Relator had long argued to the Court it should be permitted to do and what the April Order forbade it from doing.

The effect of all this is that Abbott has been whipsawed from ~120,000 claims to ~21,000 claims (~9,300 of which were not even part of the ~120,000). In the interim month and a half, Abbott incurred substantial fees and costs analyzing the inaccurate list. And Abbott incurred additional expenses in presenting this issue to the Court, including with respect to this briefing. None of that would have been necessary had Relator simply complied with the Court's April Order.

Abbott now moves to recover those expenses.

## ARGUMENT

### I. Relator's May 16 Disclosure Violates a Court Order, Warranting Payment of Expenses Under Rule 37(b)(2)(C).

The April Order was straightforward: It required Relator to provide a "complete" list of at-issue claims by May 16. Dkt. No. 159 at 11. Further, despite Relator's argument that it should be permitted to wait until expert discovery to provide the actual list, the order specifically held that Abbott was "entitled" to that information by the close of fact discovery on May 16. *Id.* at 8. And, in overruling Relator's Objection to the April Order and confirming that the complete list was due on May 16, Judge Whelan held that "Relator has had ample time and knowledge" to comply. Dkt. No. 182 at 5.

But Relator did not comply with the April Order. Instead, on May 16, Relator served a wildly overstuffed list that was purposefully overbroad. The ~120,000 listed claims were not those that Relator in fact contends are "false," as required. That is

clear because the analysis that gave rise to that list, even as described in Relator's expert's own report, never attempted to factor in whether any of the ~120,000 had any connection whatsoever to alleged Abbott wrongdoing, which is what would render them "false." *See* Ex. 1, Kanter Report ¶¶ 46-48. By nonetheless labeling as "false" tens of thousands of claims it never intended to pursue, Relator defied the plain terms of the April Order and frustrated its purpose, which was to stabilize the universe of claims at issue. Rather than do what the Court had instructed, Relator attempted an end-run that would allow Relator to delay providing the real list until after its opening expert reports. The problem for Relator is that it already argued it should be able to proceed that way to both Judge Berg and Judge Whelan—and both Judges disagreed. *See* Dkt. Nos. 159, 182.

This is a clear violation of a court order, which makes cost-shifting mandatory under Federal Rule of Civil Procedure 37(b). Where a party fails to comply with an order, Rule 37(b)(2)(C) provides that a court "must" award the aggrieved party "the reasonable expenses, including attorney's fees, caused by the failure." The only exceptions are where "the failure was substantially justified" or "other circumstances make an award of expenses unjust."

Neither exception applies here. "Substantial justification" requires "'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc.*, 2008 WL 11338356, at *3 & n.6 (S.D. Cal. July 29, 2008). No reasonable person could believe that serving an inflated list of ~120,000 MitraClip claims completely untethered to any alleged wrongdoing complied with an order directing identification of the "false" claims at issue. Relator's choice to proceed that way has imposed massive costs on Abbott and undercuts the Court's authority. That the violation was so clearly purposeful is not required but makes it even worse. *See, e.g., Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985) ("We consistently have held that sanctions may be

imposed even for negligent failures to provide discovery."). Nor are there any other circumstances that would make an award unjust. Either Abbott or Relator will have to incur the reasonable expenses at issue here. Rule 37 provides that it be the party who violated the court order.

Indeed, federal courts commonly award aggrieved parties expenses under Rule 37(b)(2)(C). For example, in *Jet Blast, Inc. v. Blue Lake Serv., LLC*, the court issued sanctions against the plaintiff because, among other reasons, "Jet Blast failed to comply with this Court's February 3 Order requiring Jet Blast to produce all responsive documents, without objection, to Blue Lake by February 6." 348 F.R.D. 714, 718 (N.D. Fla. 2025), *objections overruled*, 2025 WL 1942589 (N.D. Fla. July 14, 2025). As the court explained, its deadlines "are not aspirational; they are mandatory," and "a lack of prejudice is neither an excuse nor reason for non-compliance." *Id.*; *see also, e.g.*, *London Wallace v. City of Fresno*, 2021 WL 916244, at *8 (E.D. Cal. Mar. 10, 2021); *Shaw v. Ultimate Franchises*, 2020 WL 5539963, at *2 (C.D. Cal. Aug. 25, 2020); *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 315 (C.D. Cal. 2020).

Rule 37(b)(2)(C) therefore compels an award to Abbott of its reasonable fees and costs.

## II. Relator's Conduct Also Violates Rule 26(e), Warranting Payment of Expenses Under Rule 37(c).

An award of expenses is separately warranted under Rules 26(e)(1)(A) and 37(c)(1)(A).

Independent of the April Order, Rule 26(e)(1)(A) imposed on Relator an affirmative duty to "timely" supplement its response to Interrogatory No. 3 upon learning that its prior disclosure was materially incomplete or incorrect. Relator's expert reports, which first suggested Relator's new universe of alleged false claims,

were not disclosed until June 30.[3] Yet, Relator knew well before then that its May 16 disclosure of ~120,000 claims was wrong. The tectonic shift from ~120,000 claims to ~21,000 different claims was no immaterial adjustment; it was a wholesale redefinition of the case. That shift could not have suddenly emerged on July 18 or July 10 or June 30. Relator therefore knew well before late June that its May 16 disclosure was materially inaccurate. Indeed, given that the analysis that resulted in the ~120,000 claims (as described in the Kanter Report) omitted the alleged falsity part of the so-called "false" claims, Relator knew even before May 16 that its list of ~120,000 was inaccurate. Nonetheless, Relator allowed Abbott to continue devoting resources to that overstuffed list for a month and a half.

Nor can Relator excuse its conduct by arguing that Rule 26(e) somehow *shields* its improper delay, as Relator has argued in other contexts. Rule 26(e) requires "timely" corrections to inaccuracies; it does not excuse constantly moving the goalposts. The Ninth Circuit has made this clear, holding that Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 500 (9th Cir. 2009). Instead, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was *not available at the time of the initial disclosure*." *Id.* (emphasis added); *see also, e.g.*, *Allgood v. Gen. Motors Corp.*, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007) (Although Rule 26(e) "requires a party to 'supplement or correct' disclosure upon information later

---

[3] Even then, Relator did not disclose the actual list of ~21,000 claims along with its expert reports but rather waited until July 10, following Judge Berg's instruction that it do so within 48 hours of the July 8 hearing. Ohta Decl. ¶ 11. Relator then waited another eight days to incorporate by reference that list into an amended response to Interrogatory No. 3. *See* Ex. 2.

acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset)."). Here, Relator had the data and documents on which it based its later amendment long ago.

Rule 37(c)(1) provides the remedy for violations of Rule 26(e), stating that the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Rule 37(c)(1) is "self-executing" and "automatic" once non-compliance is shown. *Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Relator's bait-and-switch is the very kind of disclosure failure that Rule 37(c)(1)(A) is designed to address. Courts regularly award expenses under such circumstances. *See, e.g.*, *Cervantes v. Zimmerman*, 2019 WL 1598219, at *8 (S.D. Cal. Apr. 15, 2019) ("imposing an appropriate financial cost for Plaintiffs' untimely disclosures") (collecting cases).

An award of expenses is therefore independently warranted under Rules 26(e)(1)(A) and 37(c)(1)(A).

### III. Abbott's Requested Expenses Are Reasonable.

Both Rule 37(b)(2)(C) (for failure to comply with a court order) and Rule 37(c)(1)(A) (for failure to timely supplement a discovery response) contemplate the award of all "reasonable" expenses—including not only costs but also attorney's fees—caused by the failure. Further, "Rule 37 and the advisory committee notes to it contemplate that an award of fees caused by the failure to obey an order should be the norm" in order to stem "abuses occurring in the discovery process." *Rodeo Realty, Inc. v. Radtke*, 2017 WL 4621228, at *3 (C.D. Cal. Sept. 20, 2017) (citations omitted).

Here, Abbott seeks reasonable expenses comprised of attorney and expert work that would not have been necessary but for Relator's conduct. As detailed in the Declarations Abbott is filing along with this motion, Abbott's counsel and experts undertook a variety of tasks and analyses concerning the list of ~120,000

claims. *See* Ohta Decl. ¶¶ 4-18, Matthews Decl. ¶¶ 3-6, Fournier Decl. ¶¶ 3-4. That work turned out to be a waste, and had to be redone, once Relator revealed that the actual list of at-issue claims was far different than the list served on May 16. In addition, Abbott has incurred costs and fees in bringing this matter to the Court's attention, including at the July 8 conference before Judge Berg and via this motion. The only question is who should bear these expenses: Relator or Abbott. Because Relator caused them, Rules 26 and 37 require it be Relator.

If the Court grants this motion, Abbott respectfully requests that the Court order the parties to meet and confer regarding the amount of fees and costs. Abbott will continue to incur expenses in connection with briefing this motion, so the final amount cannot yet be determined. A meet-and-confer process will allow the parties to account for these ongoing costs, and Abbott is optimistic that the issue can be resolved without the Court's intervention. If agreement cannot be reached, the Court can then permit supplemental submissions to set the amount. This staged approach is consistent with the process followed in *Cleveland v. Ludwig Inst. for Cancer Rsch., Ltd.*, 2021 WL 4993025 *14 (S.D. Cal. Oct. 27, 2021), where the court ordered reimbursement under Rule 37 but directed the parties to confer first and submit additional briefing only if necessary. This approach would ensure that Abbott is made whole in a process that is fair, efficient, and collegial, while also conserving judicial resources.

## CONCLUSION

Abbott thus respectfully requests that the Court order Relator to pay Abbott's reasonable expenses incurred as a result of Relator's violation of the Court's order requiring Relator to provide a complete list of allegedly false claims by May 16, 2025, and Relator's untimely disclosure of the real list of at-issue claims. Abbott requests that the Court further order that the parties confer on the exact dollar figure to be awarded, with any disputes to be submitted to the Court for determination.

1
2   Dated: August 22, 2025              Respectfully submitted,
3                                       **LATHAM & WATKINS LLP**
4                                       By: /s/ *Jason M. Ohta*
5                                            Jason M. Ohta
6                                       LATHAM & WATKINS LLP
7                                       Jason M. Ohta (SBN 211107)
                                        jason.ohta@lw.com
8                                       12670 High Bluff Drive
9                                       San Diego, CA 92130
                                        Telephone: (858) 523-5400
10
11                                      Michele D. Johnson (SBN 198298)
                                        michele.johnson@lw.com
12                                      650 Town Center Drive, 20th Floor
13                                      Costa Mesa, CA 92626
                                        Telephone: (714) 540-1235
14
15                                      Michael Morin (*pro hac vice*)
                                        Michael Clemente (*pro hac vice*)
16                                      michael.morin@lw.com
17                                      555 11th Street NW, Suite 1000
                                        Washington, D.C. 2004
18                                      Telephone: (202) 637-2200
19
20                                      Kirstin Scheffler Do (SBN 261652)
                                        kirstin.schefflerdo@lw.com
21                                      330 North Wabash Avenue, Suite 2800
                                        Chicago, IL 60611
22                                      Telephone: (312) 876-7700
23
24                                      Nathan Saper (SBN 294492)
                                        nathan.saper@lw.com
25                                      355 South Grand Avenue, Suite 100
                                        Los Angeles, CA 90071
26                                      Telephone: (213) 485-1234
27
28

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Shireen Matthews (SBN 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121.3134
Telephone: (858) 314-1200

Ann T. Rossum (SBN 281236)
atrossum@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: (949) 851-3939

*Attorneys for Defendants*