| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 | Michele D. Johnson (SBN 198298) |
|   | michele.johnson@lw.com |
| 3 | 650 Town Center Drive, 20th Floor |
|   | Costa Mesa, CA 92626 |
| 4 | Telephone: (714) 540-1235 |

LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

Michael Morin (*pro hac vice*)
michael.morin@lw.com
555 11th Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200

Jason M. Ohta (SBN 211107)
jason.ohta@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Shireen Matthews (SBN 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
Telephone: (858) 314-1200

*Attorneys for Defendants*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*; *ex rel.* EVEREST PRINCIPALS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES INC. a/k/a ABBOTT LABORATORIES, ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC., <br><br> Defendants. | Case No. 3:20-cv-00286-W-MSB <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE RELATOR'S JULY 18, 2025 INTERROGATORY RESPONSES** <br><br> Hon. Michael S. Berg <br> Special Briefing Schedule Ordered (ECF No. 188) <br> No Hearing Per Order of Court |

Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Abbott") respectfully request that the Court confirm its tentative order striking Relator's July 18, 2025 amended interrogatory responses to the extent they purport to add at-issue claims for payment or implanting physicians, and precluding Relator from proceeding with or otherwise seeking any recovery for **(i)** the ~9,300 late-disclosed allegedly false claims of the ~21,000 claims Relator is now pursuing, and **(ii)** the ~950 late-disclosed physicians who implant MitraClip (*i.e.*, all but the 47 implanters disclosed by the close of fact discovery). In addition, under Rule 37(c)(1)(A), Abbott requests its reasonable expenses in addressing Relator's violations.

## INTRODUCTION

More than two months after the close of fact discovery, on July 18, 2025, Relator served amended responses to all three sets of Abbott's interrogatories. Relator's amendments fundamentally recast and dramatically expanded its allegations. Specifically, Relator injected into the case ~9,300 additional allegedly false claims and ~950 additional implanting physicians who allegedly received Abbott kickbacks.[1] In other words, Relator suddenly changed its case from top to bottom—all the way from the physicians who allegedly received kickbacks to the claims for payment those kickbacks purportedly caused.

If allowed to stand, Relator's amendments would pull the rug out from under Abbott right in the middle of expert discovery—even though Relator has had the information on which the amendments are based for many months and in some cases years. Were that not enough, the additional allegedly false claims came two months after the Court-ordered deadline for Relator to disclose the list of at-issue claims, violating a clear Court order.

---

[1] Because Relator's responses purport to incorporate all of Relator's expert reports in full, they implicate thousands of new providers. This motion focuses on the ~1,000 implanters associated with the ~21,000 claims Relator now presses.

After reviewing letter briefing and hearing argument, Judge Berg issued an order tentatively granting this motion. *See* Dkt. No. 188. Abbott now respectfully requests that the Court affirm its tentative ruling in a formal order.

## BACKGROUND

**Claims:** For more than two years, Abbott has been asking Relator for the list of allegedly false claims at issue. After all, the fulcrum of a False Claims Act case are the allegedly false claims. Not only do all of Relator's claimed penalties and damages pivot on that list, but so do Abbott's factual defenses to the kickbacks themselves, because the kickbacks must be connected to the claims. In short, it is impossible to defend against an ever-shifting list of claims.

Abbott first requested the list in August 2023 via Interrogatory No. 3. Despite initially objecting, in January 2024, Relator agreed to provide the list upon receipt of claims data from the government. But even though the government had produced the vast bulk of that data by November 2024, Relator still refused to give a complete list, instead providing only a heavily qualified list of 3,773. Dkt. No. 154-3.

Accordingly, this spring, Abbott moved to compel. In April, Judge Berg granted Abbott's motion, ordering Relator to provide a "complete" list of allegedly false claims no later than the close of fact discovery: May 16, 2025. Dkt. No. 159 ("April Order"). As the April Order put it, Abbott was "entitled to know the specific false claims Relator believes support the allegations in its Operative Complaint." *Id.* at 8. This, the April Order held, is "factual information that should be produced during fact discovery." *Id.*

On May 16, Relator served a response to Interrogatory No. 3 that purportedly put at issue ~120,000 claims for payment. Dkt. No. 174-3.[2] Nonetheless, on June 30,

---

[2] Relator objected to the April Order but never moved to stay it. Accordingly, the deadline was in full effect as of May 16. *See, e.g.*, *Alvarez v. Larose*, 2020 WL 5632659, at *1 (S.D. Cal. Sept. 21, 2020); *Cruz v. Nike Retail Servs.*, 346 F.R.D. 107, 113 (S.D. Cal. 2024). In any case, the District Court has now overruled Relator's objection. *See* Dkt. No. 182. In so doing, Judge Whelan squarely rejected

Relator served expert reports suddenly appearing to assert an entirely different universe of at-issue claims. In the June 30 report of Relator's proffered expert, Dr. Genevieve Kanter, Relator suggested for the first time that it was actually pursuing ~21,000 false claims. Dkt. No. 189-3 (Expert Report of Professor G. Kanter, Ph.D. (Jun. 30, 2025) ("Kanter Report")) ¶ 11 (Table 1). The Kanter Report did not identify the ~21,000 claims, and Relator did not provide the actual list until July 10, after Judge Berg required it to do so.[3] Dkt. No. 189-2 (Ohta Decl.) ¶ 11. On July 18, Relator incorporated by reference that July 10 "revised list of alleged false claims" into its amended interrogatory responses. Dkt. No. 189-4 (Rel.'s Seventh Suppl. Resp. to Defs.' Interrogatories (Set 1) (Jul. 18, 2025)) at 78-79.

Relator told Abbott and the Court that the ~21,000 claims in the June 30/July 10/July 18 set were all among the ~120,000 disclosed on May 16. That is, Relator expressly represented that all ~21,000 had been disclosed by the Court-ordered deadline. Specifically, Dr. Kanter's report stated that she had started with the list of ~120,000 disclosed on May 16 and then simply "further refin[ed]" and "narrow[ed] down" that set. Kanter Report ¶ 48. Likewise, at the July 8 conference with Judge Berg, Relator's counsel represented to the Court and Abbott that *all* ~21,000 claims were among those disclosed by the deadline. Dkt. No. 189-2 (Ohta Decl.) ¶ 10. And, in a "Description of Methodology" provided on July 10, Dr. Kanter said again that

---

Relator's argument that the list of false claims could be delayed until expert discovery, finding that Relator had "missed the point" and that its position was based on a "misunderstanding" of the law. *Id.* at 4. Judge Whelan further held that Relator already "had ample time and knowledge to produce such false claims, yet has not previously, nor in their Objection, explained why its experts have not made sufficient progress on this work, considering it began receiving claims data in August 2024." *Id.* at 5 (citations omitted).

[3] Dr. Kanter explained in a "Description of Methodology" produced on July 10 that Dr. Kanter defined a "claim" in her report as a "group of claims … associated with an individual's procedure date." Dkt. No. 189-7 at 116. Therefore, the July 10 list included 26,548 unique claims for reimbursement, which corresponded to the ~21,000 "claims" Dr. Kanter identified in her report.

"[t]he list of claims associated with my expert report is thus a *subset of the claims identified for the Interrogatory Response*." Dkt. No. 189-7 at 116 (emphasis added).

That was all false. Abbott's experts have since determined that ~9,300 claims were not timely disclosed. Relator admitted as much during a 30(b)(6) deposition on July 31. *See* Dkt. No. 189-5 at 44:13–47:17. Then, on August 11, Relator served a supplemental expert report confirming the ~9,300 untimely claims and providing alternative damages calculations assuming their preclusion. S*ee* Dkt. No. 189-6 (Kanter Suppl. Expert Report (Aug. 11, 2025)) ¶ 1.

The ~9,300 late-disclosed claims were based entirely on data and information that Relator has had for months if not years—and certainly well before May 16.

**Implanting Physicians:** Until July 18, Relator's interrogatory responses identified 47 implanting physicians who allegedly had received kickbacks from Abbott. Throughout fact discovery and beyond, Abbott relied heavily on that disclosure of 47 implanters. For example, Abbott's opening expert reports analyzed those 47 physicians and whether the alleged false claims were connected to them. Abbott also conducted depositions, prepared its own witnesses, prepared extensive internal attorney work product, and pursued other fact discovery under the belief that those were the implanters at issue.

Nonetheless, on July 18, Relator attempted to disclose more than 1,000 implanting physicians—over 950 more than before. Dkt. No. 189-4 at 75-77; Ex. 1 (Rel.'s Third Suppl. Resp. to Defs.' Interrogatories (Set 2) (Jul. 18, 2025)) at 12-15; Ex. 2 (Rel.'s Second Suppl. Resp. to Defs.' Interrogatories (Set 3) (Jul. 18, 2025)) at 25-32. In Relator's amended responses, gone were the bulleted lists of alleged kickbacks and physician implanters who had received them. In their place were references incorporating wholesale Relator's expert reports, which included lists of hundreds of new physician implanters never previously disclosed. The effect is a twentyfold expansion of the scope of the case—*after* the last minute.

Those ~950 late-disclosed physician implanters were based entirely on public Open Payments data and other information that Relator had long before May 16.

## ARGUMENT

### I. Relator's July 18 Amendment to Interrogatory No. 3 Violates This Court's Order to Disclose All Claims by May 16.

Relator's July 18 amendment to Interrogatory No. 3 and attempt to proceed with ~9,300 late-disclosed claims directly violates the April Order and should be excluded under Rule 37(b)(2)(A). *See United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2021 WL 101193, at *21-22 (D. Minn. Jan. 12, 2021) (affirming magistrate judge's order in relevant part "excluding from evidence the untimely identified false claims" that were disclosed "after the close of fact discovery").

The April Order was straightforward: It required Relator to provide a "complete" list of at-issue claims by May 16, making clear that Abbott was "entitled" to that information by the close of fact discovery. Dkt. No. 159 at 8, 11. And, in overruling Relator's Objection to the April Order and confirming that the complete list was due on May 16, Judge Whelan held that "Relator has had ample time and knowledge" to comply. Dkt. No. 182 at 5.

But Relator did not comply. Instead, on May 16, Relator served an inflated list of ~120,000 claims, only to later assert a *different* list of ~21,000 claims many weeks after the Court's deadline. And, most important for present purposes, ~9,300 of the claims on the July 10 list were entirely new—they were not included even in the sprawling list served on May 16.

Relator and its expert initially misrepresented that all ~21,000 appeared on the May 16 list, but they now concede that is untrue, acknowledging that ~9,300 did not. *See* Dkt. No. 189-5 (30(b)(6) Dep.) at 44:13–47:17; *see also* Dkt. No. 189-6 (Kanter Suppl. Report) ¶ 1. That concession ends the inquiry: Relator's amendment directly violates the April Order, which warrants exclusion under Rule 37(b)(2)(A). *See, e.g.*, *Fesenmaier*, 2021 WL 101193, at *21-22.

Relator appears to be trying to shift the blame for its violation of the April Order to Abbott. In her August 11 supplemental expert report, Dr. Kanter states that the primary reason she introduced ~9,300 new claims in her June 30 expert report (and on the list served to Abbott on July 10) was because she previously relied on a list of physicians derived from Abbott Salesforce data that she "understood to have included the full universe of MitraClip procedures performed by physicians, including the identities of the implanting physicians," even referring to "representations that [she] understand[s] Abbott made concerning the completeness of the information it produced in discovery." Dkt. No. 189-6 (Kanter Suppl. Report) ¶ 3. This is another falsehood. For one, Abbott never said that the Salesforce data was a comprehensive list of MitraClip implanters. Quite the contrary: Abbott made clear the data included only the procedures that certain Abbott employees both knew about and happened to enter into the database. Ex. 3 (Defs.' Am. Resp. to Rel.'s Rogs. (Set 1) (Dec. 23, 2024)) at 16. As Abbott's interrogatory responses put it, that information only appeared "to the extent recorded in Salesforce." *Id.*

Regardless, Relator's excuse only underscores Abbott's broader point. Rather than do what it was ordered to do and disclose the real list by May 16, Relator tried to game the April Order by being purposefully over-inclusive. Relator said its expert had merely "narrowed" and "refined" the list of ~120,000 claims into a subset of ~21,000. Actually, though, Relator's expert *redid* the list altogether. That became clear when the list from Relator's expert was under-inclusive by ~9,300 claims, which would not have happened had Relator actually been "narrowing." In other words, if Relator had simply complied with the April Order rather than try to cleverly evade it, there would have been no issue at all. Relator should bear the consequences of its own gamesmanship.

What is more, Relator's expert admitted that her change away from relying on Abbott's Salesforce data does not explain the full addition of ~9,300 claims: Several hundred of the "newly identified" claims are instead the result of "methodological

adjustments" Dr. Kanter made in her June 30 report. Dkt. No. 189-6 (Kanter Suppl. Report) ¶ 9. Relator cannot convert its decision to change its chosen methodology into an excuse for missing a court-ordered deadline.

The ~9,300 claims are untimely, their late disclosure violates the April Order, and Relator should not be permitted to proceed with them.

## II. Relator's July 18 Amendments Also Violate Rule 26(e).

As to both the late-disclosed claims and the implanters, Relator's amendments also violate Rule 26(e), which requires parties to "timely" supplement interrogatory responses.

Rule 26(e) does *not* "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was *not available at the time of the initial disclosure*." *Id.* (emphasis added).

Here, the information on which Relator based its amendments concerning both the implanters and false claims was available long ago. This is thus precisely what the Ninth Circuit has forbidden under Rule 26(e). *See id.* (striking expert disclosures).

To that end, relief here is compelled by the reasoning of Judge Whelan's recent order on the late-disclosed Georgia Medicaid claims. *See* Dkt. No. 182 at 6. There, Judge Whelan did not strike those claims because "Relator did not receive the additional data from Georgia until May 19"—*after* the May 16 deadline. *Id.* Exactly the opposite is true here. Here, all of the data and information on which the July 18 amendments were based was available long *before* May 16.

As for the ~9,300 false claims, the Court has already recognized that this is "factual information that should be produced during fact discovery." Dkt. No. 159 at 8. Just like the subset of the claims that were disclosed by the close of fact discovery, the information on which the ~9,300 was based was available to Relator before then. Indeed, Relator (falsely) told Abbott and the Court that the ~9,300 *had* been disclosed by the deadline. Given the undisputed availability of the information on which the ~9,300 claims were based well before May 16, Relator has no good excuse for their untimely disclosure.

Just like the false claims, the identity of the physician implanters at issue is core factual information that must be disclosed during fact discovery. Unless Relator discloses the physicians to whom Abbott allegedly provided kickbacks, Abbott cannot adequately defend itself. And before the July 18 amendments, Relator's interrogatory responses did just that, explicitly naming 47 implanting physicians in response to relevant interrogatories requesting details of the alleged kickbacks such as to whom they purportedly were offered. *Compare, e.g.*, Dkt. No. 189-4 (Rel.'s Seventh Suppl. Resp. to Defs.' Interrogatories (Set 1) (Jul. 18, 2025)) at 75-76, *with* Ex. 4 (Rel.'s Suppl. Resp. to Defs.' Interrogatories (Set 1) (Dec. 19, 2023)) at 51-59. As set out above, Relator relied on that list of 47 in significant ways during both fact discovery and the beginning of expert discovery. Yet, Relator's July 18 amendments added ~950 physicians (via incorporation by reference of its expert reports)—a twentyfold increase. And it is not as though the increase was based on some newfound information: Those late-disclosed implanters were based entirely on public OpenPayments data and other information that Relator had long before May 16. Nor was it as though Relator added a handful of physicians; it changed its entire case.

Relator cannot excuse its conduct by arguing that Rule 26(e) somehow *shields* its improper delay, as Relator has argued before. Rule 26(e) requires "timely" corrections to inaccuracies; it does not excuse constantly moving the goalposts,

especially not after the ball has already been kicked. The Ninth Circuit has made this clear, holding that Rule 26(e) does not create a "loophole" for revamping a party's theory of the case "after the court's deadline for doing so has passed." *Luke*, 323 F. App'x at 500; *see also, e.g.*, *Allgood v. Gen. Motors Corp.*, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007) (Although Rule 26(e) "requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset)."). Here, Relator waited until well after fact discovery to attempt to dramatically reshape its case.

The remedy for violating Rule 26(e) is prescribed by Rule 37(c)(1), which authorizes courts to bar parties from using improperly supplemented information, unless the failure was substantially justified or harmless. Given that Relator had all the information it needed to provide these amendments long ago, and in light of the prejudice to Abbott of changing the very foundation of the case at this late stage, it was neither. *See*, *e.g.*, *Erhart v. BofI Holding, Inc.*, 2022 WL 84389, at *2 (S.D. Cal. Jan. 7, 2022) (excluding for untimely disclosure); *Synbiotics Corp. v. Heska Corp.*, 2000 WL 35632582, at *2 (S.D. Cal. Sept. 21, 2000) (same).

Abbott's requested relief is thus independently warranted under Rule 26(e).

### III. Relator Should Be Required to Pay Abbott's Reasonable Expenses, Including Attorney's Fees, for This Motion.

Both Rule 37(b)(2)(C) (for failure to comply with a court order) and Rule 37(c)(1)(A) (for failure to timely supplement a discovery response) contemplate the award of all "reasonable" expenses—including not only costs but also attorney's fees—caused by the failure. Further, "Rule 37 and the advisory committee notes to it contemplate that an award of fees caused by the failure to obey an order should be the norm" in order to stem "abuses occurring in the discovery process." *Rodeo*

*Realty, Inc. v. Radtke*, 2017 WL 4621228, at *3 (C.D. Cal. Sept. 20, 2017) (citations omitted).

Here, Relator's July 18 amendment to Interrogatory No. 3 plainly violates an operative court order, and its improper amendments adding ~950 physician implanters is directly contrary to Rule 26(e). Abbott has been prejudiced because it has incurred costs and fees in connection with this motion. Abbott therefore respectfully requests reimbursement of its reasonable expenses.

If the Court grants this motion, Abbott requests that the Court order the parties to meet and confer regarding the amount of fees and costs. Abbott will continue to incur expenses in connection with briefing this motion, so the final amount cannot yet be determined. A meet-and-confer process will allow the parties to account for these ongoing costs, and Abbott is optimistic that the issue can be resolved without the Court's intervention. If agreement cannot be reached, the Court can then permit supplemental submissions to set the amount. This staged approach is consistent with the process followed in *Cleveland v. Ludwig Inst. for Cancer Rsch., Ltd.*, 2021 WL 4993025 *14 (S.D. Cal. Oct. 27, 2021), where the court ordered reimbursement under Rule 37 but directed the parties to confer first and submit additional briefing only if necessary. This approach would ensure that Abbott is made whole in a process that is fair, efficient, and collegial, while also conserving judicial resources.

## CONCLUSION

Abbott respectfully requests that the Court strike Relator's July 18, 2025 amended interrogatory responses to the extent they purport to add at-issue claims for payment or implanting physicians and preclude Relator from proceeding with or otherwise seeking any recovery for **(i)** the ~9,300 late-disclosed allegedly false claims of the ~21,000 claims Relator is now pursuing, and **(ii)** the ~950 late-disclosed physicians who implant MitraClip (*i.e.*, all but the 47 implanters disclosed by the close of fact discovery). In addition, under Rule 37(c)(1)(A), Abbott requests its reasonable expenses in addressing Relator's violations.

Dated: September 4, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: *s/Jason M. Ohta*
    Jason M. Ohta

LATHAM & WATKINS LLP
Jason M. Ohta (SBN 211107)
jason.ohta@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400

Michele D. Johnson (SBN 198298)
michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

Michael Morin (*pro hac vice*)
michael.morin@lw.com
Michael Clemente (*pro hac vice*)
michael.clemente@lw.com
555 11th Street NW, Suite 1000
Washington, D.C. 2004
Telephone: (202) 637-2200

Kirstin Scheffler Do (SBN 261652)
kirstin.schefflerdo@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

Nathan Saper (SBN 294492)
nathan.saper@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Shireen Matthews (SBN 237930)
shireenmatthews@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, CA 92121.3134
Telephone: (858) 314-1200

Ann T. Rossum (SBN 281236)
atrossum@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: (949) 851-3939

*Attorneys for Defendants*