James C. Shah (State Bar No. 260435)
jcshah@millershah.com
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92660
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Attorneys for Plaintiff-Relator*

[Additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>ABBOTT LABORATORIES, ABBOTT LABORATORIES INC., ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>Defendants. | Case No. 3:20-cv- 00286-W-MSB<br><br>**RELATOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ABBOTT'S MOTION TO STRIKE RELATOR'S JULY 18, 2025 INTERROGATORY RESPONSES**<br><br>Magistrate Judge: Michael S. Berg<br><br>Special Briefing Schedule Ordered (ECF No. 188) |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

    A.  Relator Timely Objected and Responded to Each of the ROGs ...................... 3

    B.  The Court Ruled that Further Supplementation of the ROG 3 Response Would Be Left to the Discretion of the District Court ....................................... 5

ARGUMENT .................................................................................................................... 7

    A.  Relator was not Required to Provide Complete Answers to the Overbroad Contention ROGs Before the Close of Fact Discovery and with Prejudice to its Experts' Analysis ................................................................................................ 7

    B.  Rule 26(e) and the Court's April 24, 2025 Order Required Relator to Amend the ROG 3 Response ........................................................................................ 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bovarie v. Schwarzenegger*,
  2011 WL 719206 (S.D. Cal. Feb. 22, 2011) ............................................................. 7

*Erhart v. BofI Holding, Inc.*,
  2022 WL 84389 (S.D. Cal. Jan. 7, 2022) .................................................................. 9

*Fed. Trade Comm'n v. Kroger Co.*,
  2024 WL 2805295 (D. Or. May 31, 2024) ............................................................... 8

*FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*,
  2018 WL 722834 (S.D. Cal. Feb. 5, 2018) ............................................................... 7

*Luke v. Family Care and Urgent Medical Clinics*,
  323 Fed. Appx. 496 (9th Cir. 2009) ......................................................................... 8

*Impact Engine, Inc. v. Google LLC*,
  2020 WL 2745230 (S.D. Cal. May 26, 2020) .......................................................... 4

*Mancini v. Ins. Corp. of New York*,
  2009 WL 1765295 (S.D. Cal. June 18, 2009) .......................................................... 7

*Synbiotics Corp. v. Heska Corp.*,
  2000 WL 35632582 (S.D. Cal. Sept. 21, 2000) ........................................................ 9

*Woods v. DeAngelo Marine Exhaust, Inc.*,
  692 F.3d 1272 (Fed. Cir. 2012) ................................................................................ 8

Rules

Fed. R. Civ. P. 26 ........................................................................................................ 7, 10

Fed. R. Civ. P. 33 ............................................................................................................. 7

Plaintiff-Relator, Everest Principals, LLC ("Relator"), respectfully submits this Memorandum of Points and Authorities in Opposition ("Opposition") to the Motion to Strike and Preclude Relator from relying on its July 18, 2025 Interrogatory Responses ("Motion") filed by Defendants, Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Abbott" or "Defendants").

## INTRODUCTION

The Motion is Abbott's latest unfounded attempt to dramatically **narrow** the scope of this case. Abbott previously sought to impose geographic and temporal limits on the scope of discovery. ECF No. 103. The Court rejected that attempt and accurately characterized it as a "belated motion to dismiss." ECF No. 126, at 6:28–7:1; ECF No. 108. Despite the Court's admonition, Abbott has once again resorted to distorting the record in an attempt to avoid defending its actions on the merits. Under any fair reading of the record and the well-established requirements of the Federal Rules of Civil Procedure, Abbott's Motion must be denied.

With less than two months left in expert discovery, Abbott moves to strike Relator's supplemental responses to contention interrogatories ("ROGs") and to preclude Relator from relying on the entire body of fact and expert evidence that it timely adduced and disclosed under the Scheduling Order. In so doing, Abbott resorts to fundamentally mischaracterizing the information sought by the ROGs, Relator's previous objections and responses, and the timing and sequence of fact and expert discovery. Even more perversely, Abbott asks the Court to severely narrow Relator's claims based on the incorrect analysis of Abbott's own expert.

At bottom, the Motion rests on two fundamentally incorrect premises. First, Abbott claims that, "[u]ntil July 18, Relator's interrogatory responses identified 47 implanting physicians who allegedly had received kickbacks from Abbott." That is *false*. No fair reading of Relator's ROG responses would suggest as much. None of the ROGs requested that Relator identify "implanting physicians" who

received kickbacks. Rather, well before the close of fact discovery, Relator's ROG responses conservatively identified approximately 979 HCPs whom Abbott paid kickbacks, subject to Relator's objection that the requested information was the subject of expert testimony and additional responsive information would be provided in connection with the service of expert reports.

To the extent Abbott falsely claims that it "relied heavily" on the purported "disclosure of 47 implanters," and "conducted depositions, prepared its own witnesses, prepared extensive internal attorney work product, and pursued other fact discovery under the belief that those were the implanters at issue," that feigned belief would be patently unreasonable (if true) and cannot be credited. Further, Abbott's representations throughout discovery do not support an inference that Abbott ever truly believed 47 implanters were at issue. Instead, it is plain that this assertion is based on the faulty and selective reading of its expert, Dr. Anupam B. Jena ("Dr. Jena"), which was recently raised *for the first time* on June 30, 2025.

Second, Abbott claims that Relator violated the Court's April 24, 2025 Order and Rule 26(e). That, too, is objectively and unequivocally false. With respect to Relator's response to ROG 3, the April 24, 2025 Order states "[s]upplementation after May 16, 2025, will be left to the discretion of the District Court." ECF No. 159, at 11:13–14. Relator complied with the Order by supplementing its response based on its expert's analysis on May 16, 2025, in accordance with a method widely accepted within the econometrics literature to identify false claims. Relator timely fulfilled its obligation under Rule 26(e) by serving its July 18, 2025 Amended ROG 3 Response and the August 11, 2025 Supplemental Report of its expert, Genevieve P. Kanter, PhD ("Dr. Kanter"). Striking Relator's ROG 3 Amended Response would be fundamentally inconsistent with the April 24 and August 6, 2025 Orders and Rule 26(e).

Awarding the severe relief that Abbott requests is neither warranted nor permitted under the Rules. Granting the Motion would effectively sanction

Relator for fulfilling its duty to supplement under the Rule 26(e) and preclude Relator from relying on the opinions and analysis of its experts at trial. Relator respectfully suggests that the Court, in the interest of justice and based on the complete record underlying the issues raised by Abbott, should set aside its August 21, 2025 tentative ruling (ECF No. 188) and deny the Motion.

## BACKGROUND

### A. Relator Timely Objected and Responded to Each of the ROGs

On August 14, 2023, August 28, 2024, and November, 18, 2024, Abbott served the ROGs, which purported to require Relator to: "[i]dentify each kickback" (ROG 1); "each patient referral" (ROG 2); "each alleged false claim" (ROG 3); "all [HCPs] to whom" Abbott specifically promised participation in "future clinical trials" (ROG 6); "any MitraClip event . . . that did not provide the attendees with any education" (ROG 8); "each alleged violation of the [AKS] related to MitraClip where . . . Abbott provided a kickback . . . to Hospital Administrators" (ROG 9); "every MitraClip Event and MitraClip Interaction . . . that was conducted in a manner inconsistent with the guidance set forth in the [AdvaMed Code]" (ROG 12); "all evidence . . . that Abbott 'engaged in an unlawful, systematic, and nationwide scheme of paying kickbacks'" (ROGs 15–20); and "all evidence . . . that Abbott 'knowingly' violated the [AKS]." (ROG 22). *See* Ex. 1 (ROG Set 1), Ex. 2 (ROG Set 2); Ex. 3 (ROG Set 3).[1]

On September 18, 2023, October 11, 2024, and January 31, 2025, respectively, Relator timely objected to the ROGs "to the extent they call[ed] for premature expert discovery" and "to the extent that they are premature contention Interrogatories" because "there remain[ed] substantial discovery to be conducted," while expressly stating that ***additional information responsive to [the ROGs] will be provided in its expert reports*** " and reserving the right to supplement or amend its responses. Ex. 4 (ROG Set 1 Responses), at 4:25–5:6 (citing *Impact Engine,*

---

[1] All Exhibits are attached to the concurrently submitted Declaration of James C. Shah.

MPA IN OPP. TO MOTION TO STRIKE     3     3:20-cv-00286-W-MSB

1 *Inc. v. Google LLC*, 2020 WL 2745230, at *4 (S.D. Cal. May 26, 2020)); Ex. 5 (ROG Set 2 Responses), at 2:11–3:8, 4:25–5:6; Ex. 6 (ROG Set 3 Responses), at 6:20–7:2, 24:18–20, 42:24–27, 69:22–24 (emphasis added).

Without waiving these objections, Relator furnished responses based on its knowledge and the information reasonably available to it at that time—as of October 11, 2024, Relator identified approximately 137 HCPs, by name and pursuant to Rule 33(d), as having received kickbacks from Abbott in response to ROG Sets 1 and 2. Exs. 4, 5; Shah Decl. ¶ 10 . By March 5, 2025, Relator had identified approximately 979 HCPs in total in response to ROG Sets 1, 2, and 3. *Id.* ¶ 13; Exs. 6–7 (ROG Set 3 Responses). As of May 16, 2025, Relator identified approximately 1099 HCPs. Shah Decl. ¶ 15; Exs. 4–8.

Importantly, ***none*** of Abbott's ROGs asked Relator to identify each and every implanting physician at issue in this case. Relator never waived or withdrew its ***repeated*** objections to prematurely providing complete responses to the contention ROGs and furnishing its expert reports in advance of case deadlines. Abbott never challenged these objections, as required by Your Honor's Civil Chambers Rules. Relator's responses to the ROGs were based entirely on the documents produced by Abbott, including its procedure data, which Abbott itself directed Relator to when asked to "[i]dentify all HCPs who performed the transcatheter implanting procedure with the MitraClip device." Ex. 10 (Abbott ROG 4 Response). Abbott's 30(b)(6) witness confirmed this data was "procedural information that [it logged] after every procedure" reflecting "all the case information," including "the person who [performed] the procedure" (*i.e.*, the implanting physicians). Ex. 11 (Trissler Dep., at 9:14–15, 10:8–9, 12:16–19, 32:4–19). Relator only discovered through its experts' analysis of billions of lines of Open Payments and claims data that the procedure data reflected a fraction of the procedures and, thus, implanting physicians during the relevant period.

One need not speculate as to whether Abbott's current positions are legal

gamesmanship—Abbott never took any fact discovery, through interrogatories or depositions, that asked Relator to identify the implanting physicians at issue in this case. That is because these are matters for experts. For that reason, Abbott did not suggest it believed 47 implanting physicians were at issue until it served Dr. Jena's June 30, 2025 report. Ex. 12 (Jena Report, at 51–52). Despite purporting to have reviewed the ROG responses, it is clear that Dr. Jena did not consider the substance of Relator's objections and responses at all. *Id.* In any event, the "review" of one expert hardly justifies retroactively shrinking this Action's entire scope. Indeed, a party's ability to limit the scope of a case based on its expert's questionable interpretation of the evidence (before that expert has even appeared for a deposition or the Court deems his opinions admissible over any evidentiary challenge) would turn the concept of justice and well-worn principles under the Federal Rules of Civil Procedure and Evidence on their head. That is the result for which Abbott advocates.

In response to the ROGs, Relator identified approximately 1099 HCPs as having received kickbacks by the close of fact discovery. Shah Decl. ¶ 15. Based on the further analysis of its experts, approximately 564 of these HCPs were implanting physicians. That Abbott and its expert, Dr. Jena, reached a different number is immaterial and does not mean that the implanters were "newly identified."

### B. The Court Ruled that Further Supplementation of the ROG 3 Response Would Be Left to the Discretion of the District Court

In granting Abbott's Motion to Compel Relator to produce a list of allegedly false claims, the Court held that "[s]upplementation after May 16, 2025, will be left to the discretion of the District Court." ECF No. 159, at 11:13–14.

In complying with the April 24, 2025 Order, Relator relied on the analysis of its expert, Dr. Kanter, who reviewed six billion claim lines using a standard methodology for identifying claims associated with episodes of care relating to

procedures identified in Abbott's procedure data, which Relator believed was complete. Relator supplemented its response to ROG 3 with additional claims data produced by the State of Georgia, which Abbott moved to strike. ECF No. 174. The District Court denied that Motion, holding "[t]he parties maintain an obligation to supplement discovery responses beyond the close of discovery" and need not " ask the court for permission to supplement." ECF No. 182, at 6:18–24.

On June 30, 2025, Relator served Dr. Kanter's Affirmative Report, which presented a highly conservative approach to identify at-issue MitraClip claims for the purpose of calculating damages, based on additional expert analysis. At that time, Dr. Kanter believed the approximately 21,000 claims identified in her Affirmative Report were a subset of the claims Relator identified on May 16 based on her reasonable assumption that the universe of implanting physicians reflected in the procedure data was complete, as Abbott had represented.

On July 18, 2025, Relator amended its response to Interrogatory No. 3 to incorporate the list of claims identified in Dr. Kanter's June 30 Report. Ex. 9 (July 18 Supp. Responses to ROG Sets 1, 2, and 3). Consistent with its previous responses, Relator furnished supplemental responses to the ROGs incorporating its experts' June 30 Reports by reference. *Id.* In preparing for the July 30 Supplemental Rule 30(b)(6) Deposition of Relator, Dr. Kanter became aware that 9,310 of the claims identified in her June 30 Report were not included in the May 16 ROG 3 response. Dr. Kanter investigated and determined that the claims identified in the May 16 ROG 3 response did not include all implanting physicians engaged by Abbott. Dr. Kanter served a Supplemental Report on August 11 correcting this discrepancy and inadvertent error, as the Rules require. *See* Rule 26(e)(2).

# ARGUMENT

The Rules and applicable law clearly bar the extraordinary relief sought.

### A. Relator was not Required to Provide Complete Answers to the Overbroad Contention ROGs Before the Close of Fact Discovery and with Prejudice to its Experts' Analysis

The Rules and applicable law do not require a party to provide complete answers to overbroad contention interrogatories before the close of fact discovery, nor do they allow a propounding party to move to strike based on a purported belief (however unreasonable) that a party had furnished "complete" responses.

Rule 33(a)(2) is clear: an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but *the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time*." Fed. R. Civ. P. 33(a)(2) (emphasis added). The ROGs purport to require Relator to identify each and every kickback, payment, referral, and piece of evidence supporting its claims. These are classic contention interrogatories that attempt to require Relator "to state 'every fact' or 'all facts' supporting identified allegations or defenses.'" *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, 2018 WL 722834, at *2 (S.D. Cal. Feb. 5, 2018) (quoting *Mancini v. Ins. Corp. of New York*, 2009 WL 1765295, at *3 (S.D. Cal. June 18, 2009)); *see also Bovarie v. Schwarzenegger*, 2011 WL 719206, at *1 (S.D. Cal. Feb. 22, 2011).

When a party propounding interrogatories *timely* moves to compel complete answers, "courts often convert overly broad and unduly burdensome contention interrogatories seeking 'all facts' into requests for 'the material or principal facts.'" *FootBalance*, 2018 WL 722834, at *2. Even then, "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape[,] answers to those interrogatories may not come into focus until the end of discovery," and "Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly

contention interrogatories, be corrected or supplemented to reflect those changes." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). If Abbott had moved to compel answers to the ROGs during the fact discovery, however, that motion would have been of no moment: Relator's previous responses identified all the material and principal facts responsive to these ROGs.

Moreover, contention ROGs that "require the application of law to fact" and "prematurely seek expert discovery" are "more appropriately reserved for the expert discovery period." *Fed. Trade Comm'n v. Kroger Co.*, 2024 WL 2805295, at *2 (D. Or. May 31, 2024) (denying motion to compel during fact discovery). Relator objected to the ROGs for precisely this reason and specifically indicated its intention to supplement with its expert analysis and reports. Abbott **never** challenged those objections or responses. This is not surprising. Abbott understands that this is expert work. Remarkably, Abbott seeks to sanction Relator for using expert analysis when it asserted, for the first time, based on its own expert's "analysis" that it believed that only 47 implanters were at issue.

None of the authorities Abbott relies on support its position that Relator's July 18 Supplemental ROG responses should be stricken. In *Luke v. Family Care and Urgent Medical Clinics*, in response to the defendants' motion for summary judgment and ten weeks before trial, the plaintiffs served expert declarations in which they presented a new theory as to a key element of their medical negligence claim. *See* 323 Fed. Appx. 496 (9th Cir. 2009). Under those distinct circumstances, the Ninth Circuit held that Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Id.* at 500. The Court here did not order Relator to provide "complete" or "final" responses to ROGs 1, 2, 6, 8, 9, 12, 15–20, and 22 before the close of fact discovery because Abbott never moved to

compel. More importantly, Relator has not presented ***any new theories*** by supplementing.

Abbott further claims that "Relator had all the information it needed to provide these amendments long ago." That is incorrect. While Relator properly identified 1099 HCPs in its previous responses, Relator was under no requirement to furnish its expert analysis before the close of fact discovery in advance of the expert disclosure deadlines—particularly given its objections and repeatedly express intention to supplement its responses in conjunction with its expert reports. Therefore, Abbott's continued reliance on *Erhart* and *Synbiotics* remains puzzling. *See Erhart v. BofI Holding, Inc.*, 2022 WL 84389, at *2 (S.D. Cal. Jan. 7, 2022) (granting motion in limine to exclude text messages because it was clear that "responsive communications were missing from [the plaintiff's] document production" and plaintiff "should have produced [the texts] under his duty to supplement"); *Synbiotics Corp. v. Heska Corp.*, 2000 WL 35632582, at *2 (S.D. Cal. Sept. 21, 2000) (Whelan, J.) (excluding expert report submitted two months after disclosure deadline because party "was expressly aware of [the expert's] failing health from the time she was retained as an expert"). In sum, Relator fulfilled its duty pursuant to Rule 26(e) by serving the supplemental ROG responses. Abbott's assertion—that these responses violate Rule 26(e) and, thus, Rule 37(c)(1) warrants striking them—does not have any support.

**B.    Rule 26(e) and the Court's April 24, 2025 Order Required Relator to Amend Its ROG 3 Response**

Abbott next claims "relator tried to game the April Order by being purposefully over-inclusive." That is ***false***. As Relator has repeatedly explained, Relator relied on Dr. Kanter's analysis which used a standard methodology to prepare a list of allegedly false claims based on Abbott's procedure data. Dr. Kanter subsequently refined her statistical models to further conservatively estimate figures supporting causation and damages in

1  connection with her June 30, 2025 Report.  Until July 29, 2025, Dr. Kanter
2  believed that the claims identified in her June 30 Report were a complete subset
3  of the claims identified by Relator in its May 16 Supplemental ROG 3
4  Response.  When Dr. Kanter became aware that was not the case, she promptly
5  investigated the matter and served her August 11 Supplemental Report.

6      The April 24 Order stated: "[s]upplementation after May 16, 2025, will be
7  left to the discretion of the District Court." ECF No. 159, at 11:13–14.  As Judge
8  Whelan recently held in denying Abbott's Motion to Strike Relator's Sixth
9  Supplemental Response to Interrogatory No. 3 (ECF No. 174), "[t]he parties
10 maintain an obligation to supplement discovery responses beyond the close of
11 discovery." ECF No. 182, at 6:23–24.  Pointedly, however, the District Court
12 found that Relator *does not* have a "duty to notify the parties or ask the court for
13 permission to supplement" in fulfilling this obligation. *Id.* at 6:18–20.  This
14 obligation is triggered "if the party learns that in some material respect the . . .
15 response is incomplete or incorrect." *Id.* at 3:19–22 (quoting Fed. R. Civ. P.
16 26(e)(1)).  Importantly, the duty to supplement applies to "an expert whose report
17 must be disclosed under Rule 26(a)(2)(B)" and "extends both to information
18 included in the report and to information given during the expert's deposition."
19 Fed. R. Civ. P. 26(e)(2).  "Any additions or changes to this information must be
20 disclosed by the time the party's pretrial disclosures" are due. *Id.*

21     Relator's July 18 responses were timely, substantially justified, and required
22 under Rules 26 and 37.  There is simply no basis for exclusion.

## CONCLUSION

24     For the foregoing reasons, Relator respectfully requests that Your Honor not
25 adopt the tentative decision and, instead, deny Abbott's requested relief.

| | | |
|---|---|---|
| 1 | Dated: September 4, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | **MILLER SHAH LLP** |
| 4 | | By: *James C. Shah* |
| 5 | | James C. Shah (State Bar No. 260435)<br>jcshah@millershah.com |
| 6 | | 19712 MacArthur Boulevard, Suite 222 |
| 7 | | Irvine, CA 92660<br>Telephone: (866) 540-5505 |
| 8 | | Facsimile: (866) 300-7367 |
| 9 | | James E. Miller (State Bar No. 262553) |
| 10 | | jemiller@millershah.com<br>Laurie Rubinow (*Pro Hac Vice*) |
| 11 | | lrubinow@millershah.com |
| 12 | | 65 Main Street<br>Chester, CT 06412 |
| 13 | | Telephone: (860) 526-1100 |
| 14 | | |
| 15 | | Bruce D. Parke (*Pro Hac Vice*)<br>bdparke@millershah.com |
| 16 | | Christopher A. Miller (*Pro Hac Vice*)<br>camiller@millershah.com |
| 17 | | 1845 Walnut Street, Suite 806 |
| 18 | | Philadelphia, PA 19103<br>Telephone: (610) 891-9880 |
| 19 | | |
| 20 | | Jonathan K. Tycko (*Pro Hac Vice*) |
| 21 | | jtycko@tzlegal.com<br>TYCKO & ZAVAREEI, LLP |
| 22 | | 2000 Pennsylvania Avenue., NW |
| 23 | | Suite 1010<br>Washington, D.C. 20006 |
| 24 | | Telephone: 202.973.0900 |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Monique Olivier (State Bar No. 190385)
monique@os-legal.com
OLIVIER & SCHREIBER LLP
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

*Attorneys for Plaintiff and Relator
Everest Principals, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ James C. Shah*
James C. Shah