James C. Shah (State Bar No. 260435)
jcshah@millershah.com
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92660
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

*Attorneys for Plaintiff-Relator*

[Additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.; ex rel.* EVEREST PRINCIPALS, LLC,<br><br>    Plaintiffs and Relator,<br><br>  v.<br><br>ABBOTT LABORATORIES, ABBOTT LABORATORIES INC., ABBOTT CARDIOVASCULAR SYSTEMS INC., and ABBOTT VASCULAR INC.,<br><br>    Defendants. | Case No. 3:20-cv- 00286-W-MSB<br><br>**RELATOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ABBOTT'S MOTION FOR EXPENSES**<br><br>Magistrate Judge: Michael S. Berg<br><br>Special Briefing Schedule Ordered (ECF No. 183) |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES......................................................................................ii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................2

ARGUMENT...........................................................................................................5

   A.  An Award of Expenses is Unwarranted Under Rule 37(b)..............................6

   B.  Relator Timely Amended Its ROG 3 Response and Furnished Dr. Kanter's Supplemental Report, as Required by Rule 26(e)............................................8

   C.  Abbott Has Failed to Estimate its Costs and Fees or Show That They Have a Reasoned Connection to Relator's Disclosures ..............................................9

CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*AK Futures LLC v. TBH Supply LLC*,
2024 WL 5185335 (C.D. Cal. Oct. 15, 2024) ......................................................7

*Allgood v. Gen. Motors Corp.*,
2007 WL 647496 (S.D. Ind. Feb. 2, 2007)...........................................................9

*Cervantes v. Zimmerman*,
2019 WL 1598219 (S.D. Cal. Apr. 15, 2019) .......................................................9

*Cleveland v. Ludwig Inst. for Cancer Rsch.*, Ltd.,
2021 WL 4993025 (S.D. Cal. Oct. 27, 2021).....................................................10

*Enterprise Tech. Holdings, Inc. v. Noveon Sys., Inc.*,
2008 WL 11338356 (S.D. Cal. July 29, 2008) ....................................................7

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) ..............................................................................8

*Hargis v. Pacifica Senior Living Mgmt. LLC*,
2025 WL 1140158 (C.D. Cal. Mar. 4, 2025)......................................................10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................................10

*Infanzon v. Allstate Ins. Co.*,
335 F.R.D. 305 (C.D. Cal. 2020)...........................................................................8

*Intel Corp. v. Terabyte Int'l*,
6 F.3d 614 (9th Cir. 1983) ...................................................................................10

*Jet Blast, Inc. v. Blue Lake Serv., LLC*,
348 F.R.D. 714 (N.D. Fla. 2025) ...........................................................................8

*London Wallace v. City of Fresno*,
2021 WL 916244 (E.D. Cal. Mar. 10, 2021).........................................................8

*Luke v. Family Care and Urgent Medical Clinics,*
   323 Fed. Appx. 496 (9th Cir. 2009).........................................................................9

*Pierce v. Underwood,*
   487 U.S. 442 (1988)..............................................................................................7

*Shaw v. Ultimate Franchises,*
   2020 WL 5539963 (C.D. Cal. Aug. 25, 2020) .........................................................8

*Touhy v. Ragen,*
   340 U.S. 462 (1951)..............................................................................................2

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
   259 F.3d 1101 (9th Cir. 2001) ...............................................................................9

<u>Rules</u>

Federal Rule of Civil Procedure 26 ...................................................................*Passim*

Federal Rule of Civil Procedure 37 ...................................................................*Passim*

Plaintiff-Relator, Everest Principals, LLC ("Relator"), respectfully submits this Memorandum of Points and Authorities in Opposition ("Opposition") to the Motion for Expenses (ECF No. 189, "Motion") filed by Defendants, Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively, "Abbott" or "Defendants").

## **INTRODUCTION**

Despite its empty rhetoric and the innumerable, baseless aspersions it casts on Relator, the Motion does not approach making the showing necessary to award expenses under Federal Rule of Civil Procedure ("Rule") 37. Abbott has not shown that Relator violated the Court's April 24, 2025 Order (ECF No. 159, "April 24 Order") granting Defendants' Motion to Compel. Similarly, Abbott has not demonstrated that Relator violated Rule 26(e). To the contrary, the record demonstrates that Relator complied with both the April 24 Order and Rule 26 by fulfilling its duty to supplement its Response to Interrogatory No. 3 ("ROG 3"). There is no support for the notion that Relator's timely and accurate disclosures— based on its knowledge and the information reasonably available to it throughout discovery—are inconsistent with the Court's Orders and the Rules.

In reality, the Motion illustrates Abbott's persistent strategy: attempting to require Relator to present and prove its ***entire*** case during fact discovery and hamstring its ability to supplement based on its experts' disclosure of opinions pursuant to the operative Scheduling Order as required by the Rules. The circumstances certainly do not warrant the award of Abbott's expert and legal fees and costs. That Abbott seeks its expert costs merely confirms that an analysis of claims in this complex matter requires fulsome expert analysis. Setting Abbott's theatrics aside, at the very least, Relator's May 16 ROG 3 Response was substantially justified. Awarding the indeterminate expenses that Abbott seeks would be manifestly unjust under the circumstances because its own discovery conduct strongly contributed to (if not created) the instant dispute.

# BACKGROUND

Abbott's Motion provides an inaccurate and incomplete recitation of the record.  Only against this backdrop does Abbott have the temerity to bombastically assert that "[f]or the last two years, Abbott has been seeking from Relator information that goes to the very heart of this False Claims Act case: the list of allegedly false claims at issue." Mot. at 1:8–10.  In fact, the record demonstrates that Relator and its experts have diligently worked throughout discovery to identify the false claims at issue in this Action.  Abbott cannot credibly support its specious claims that Relator engaged in any violation—let alone a "purposeful violation"—of the Court's Orders or the Rules.

Over two years ago, on June 2, 2023, Relator asked Abbott to: "identify all HCPs who performed the transcatheter implanting procedure with the MitraClip device, and provide the name of each patient, the date of each procedure, the name of the hospital where the procedure was performed, the name of the implanting physician," and other information.  Ex. 1 (Relator's ROG 4).  In August 2023, without the benefit of any claims data having been produced, Abbott requested that Relator: "[i]dentify each alleged false claim (as that term is used in the Complaint) that You allege Abbott presented or caused to be presented to either a federal or state government." *See, e.g.*, ECF No. 154-5 (ROG 3).

As of 2023, Abbott objected to providing discovery beyond five states (Arizona, California, Florida, Georgia, and New York) and unilaterally limited the relevant time period to 16 months (October 23, 2015 to February 28, 2017). *See* ECF No. 103, at 1:4–10.  Accordingly, as of December 18, 2023, Abbott "object[ed] to the breadth of Relator's request," pursuant to Rule 45, 45 C.F.R. § 2.5, and *Touhy v. Ragen*, 340 U.S. 462 (1951), that the Centers for Medicare & Medicaid Services ("CMS") produce nationwide claims data on the basis that "Relator's federal FCA claim survived within a limited scope" and "Relator's claims for all but four states (California, Florida, Georgia, and New York) were

dismissed for lack of well-pleaded allegations in those states." Ex. 2 (December 18, 2023 Letter from Abbott to CMS), at 2, 3, n. 2.[1]  After the District Court affirmed Your Honor's rejection of Abbott's attempts to limit the scope of discovery on January 26, 2024 (ECF No. 126), Abbott withdrew its objection to the scope of Relator's *Touhy* request.  Over 9 months later, the parties received the requested medical claims data from CMS.

Between the fall of 2024 and May 16, 2025, Relator continued to take substantial fact discovery by serving additional written discovery on Abbott and dozens of third-party subpoenas, as well as taking numerous depositions of fact witnesses and 30(b)(6) witnesses.  During this period, on December 23, 2024, Abbott amended its Response to Relator's ROG 4 requesting the identification of all MitraClip procedures by directing Relator procedure data.  ECF No. 191-13.

The Court subsequently issued the April 24 Order requiring Relator to produce a complete list of allegedly false claims, with "*[s]upplementation after May 16, 2025 [] left to the discretion of the District Court*."  ECF No. 159, at 11:13–14.  In response to the April 24 Order, Relator and its expert, Genevieve P. Kanter, PhD, immediately expedited their analysis of the CMS-produced Medicare data.  Kanter Dec. ¶¶ 6–7.  This data spans *8.4 million beneficiaries and billions of claim lines* across extremely large files, which even the most powerful desktop computers are incapable of processing.  *Id.* ¶¶ 5–7.  Accordingly, Dr. Kanter secured high-performance computing resources that are specifically designed to analyze large data sets.  *Id.*  In order to identify the false claims connected to Abbott's payment of kickbacks, Dr. Kanter employed a widely accepted research method involving highly voluminous administrative claims data.  *Id.* ¶¶ 8–12.

---

[1] These objections to Relator's *Touhy* request do not square with Abbott's recent, repeated representations that a party is required to "move to stay" an operative Order pending the District Court's ruling on an Objection pursuant to Rule 72(a).  *Contra* Mot. at 2:1–2.  Abbott did not "move to stay" Your Honor's October 10, 2023 Order on the Scope of Discovery (ECF No. 108) yet, at the outset of discovery, Abbott nonetheless objected to Relator's efforts to secure from CMS the medical claims data necessary to support its claims.  *See* ECF No. 116.

Abbott fundamentally mischaracterizes the analysis that Dr. Kanter performed in connection with preparing the May 16 list. Specifically, Abbott is incorrect that Dr. Kanter's analysis constituted an "initial step" that "merely identified a large set of MitraClip-related claims and did not take into account in any way whether those claims were connected to the alleged Abbott wrongdoing[.]" *Contra* Mot. at 4:3–5. As Relator and Dr. Kanter have explained repeatedly, Dr. Kanter included only claims following a physician's receipt of an alleged improper inducement from Abbott. *See* Kanter Dec. ¶ 11. Dr. Kanter explained that she "identified the claims at issue as the set of all episode-of-care claims occurring after a physician's first Abbott event [inducement]." ECF No. 189-3, Mot. Ex. 1 ("Kanter Report"), at ¶ 47.

Specifically, in preparing her analysis for the May 16 ROG 3 Response, Dr. Kanter relied on a list of physicians and the date they received payments or other transfer of value from Abbott that was derived from Abbott's own procedure data—which Abbott itself cited in response to Relator's ROG 4. Kanter Decl. ¶¶ 11, 15–16. At that time, Dr. Kanter (and Relator) reasonably believed the procedure data produced by Abbott included the full universe of implanting physicians. *Id.* Abbott's repeated suggestions that the May 16 ROG 3 Response was "purposefully over-inclusive," "purposefully overbroad," and "wildly overstuffed" are absurd. Mot. at 4:8, 5:27. The notion that, on May 16, Relator "label[ed] as 'false' tens of thousands of claims it never intended to pursue" is nothing more than Abbott's own rank and self-serving speculation. *Id.* at 6:4–5.[2]

Following Relator's service of the May 16 ROG 3 Response in accordance with the April 24 Order, Relator and its experts continued to diligently advance their analysis of the record, including all available payment and medical claims

---

[2] Surprisingly, given Abbott's criticisms of Relator's expert analysis, Dr. Kanter has explained that Abbott's own expert advocates for an approach that results in a far greater inclusion of non-MitraClip claims than the fixed-window episode of care methodology applied for the ROG 3 Response. *See* Kanter Decl. ¶ 12.

data, in advance of the June 30 deadline for affirmative expert reports.  Dr. Kanter chose to adopt an even more conservative approach by limiting her causation and damages analysis of the claims.  As outlined in Dr. Kanter's Report, this is a "highly conservative approach to identifying MitraClip claim-associated damages."  Kanter Report ¶¶ 48–50.  To estimate the causal effect of Abbott's kickbacks on physician use of MitraClip, Dr. Kanter used a quasi-experimental methodology to further conservatively estimate causation and, therefore, damages. *Id.* ¶ 30.  In conducting the analysis for her June 30 Report, Dr. Kanter believed that the universe of MitraClip implanting physicians was fixed based on the assumption that Abbott's own procedure data was complete.  Kanter Dec. ¶ 15. Accordingly, Dr. Kanter believed that the claims identified in her June 30 Report constituted a subset of the claims Relator identified on May 16.  *Id.*

On July 18, 2025, Relator amended its response to Interrogatory No. 3 to incorporate the list of claims identified in Dr. Kanter's June 30 Report based on its reasonable belief that these claims constituted a subset of the May 16 Response. On July 29, 2025, while preparing for her deposition as Relator's designee, Dr. Kanter became aware that approximately 9,300 claims were not in fact a subset of the claims identified in the May 16 ROG 3 Response.  *See* ECF No. 189-5, Mot. Ex. 3, at 44:6–45:6.  Dr. Kanter proceeded to immediately investigate this previously mistaken belief.  Subsequently, Dr. Kanter determined that the claims identified in the May 16 ROG 3 response did not include all implanting physicians engaged by Abbott because she had reasonably assumed that all implanting physicians were reflected in Abbott's procedure data.  Relator served Dr. Kanter's August 11 Supplemental Report correcting this discrepancy and inadvertent error.

## ARGUMENT

Abbott has failed to articulate any cognizable basis for awarding expenses under Rule 37.  Simply put, the entire crux of Abbott's Motion is that Relator "served a wildly overstuffed list that was purposefully overbroad" by "labeling as

'false' tens of thousands of claims it never intended to pursue" without "any connection whatsoever to alleged Abbott wrongdoing" in "an end-run that would allow Relator to delay providing the real list until after its opening expert reports." Mot. at 5:27–6:9.  The record simply ***does not*** support that narrative one iota. In stark contrast, Relator complied with the April 24 Order by furnishing a list of allegedly false claims based on its expert's application of an accepted methodology for analyzing and matching complex administrative claims data contained within a universe of billions of claim lines.  Pursuant to the April 24 Order and Rule 26(e)—which expressly contemplates supplementation—Relator amended its ROG 3 Response based on its expert's further analysis and formulation of a highly conservative causation and damages model in conjunction with the identification and matching of claims.  When Relator and its expert became aware they had mistakenly believed Abbott's representations that all implanting physicians were reflected in the procedural data, Relator supplemented its disclosures, as required by Rule 26(e).  Even if Abbott were able to identify a violation of Rule 37(b) or 26(e), Relator's responses and disclosures were substantially justified and other circumstances make an award of expenses unjust.  The Motion should be denied.

### A.    An Award of Expenses is Unwarranted Under Rule 37(b)

To demonstrate its entitlement to sanctions under Rule 37(b), Abbott must show that Relator did not "obey" the April 24 Order.  Fed. R. Civ. P. 37(b).  The May 16 ROG 3 Response complied with the April 24 Order, however, by identifying a complete list of allegedly false claims based on its experts' application of an accepted methodology to identify relevant medical claims specifically associated with recipients of Abbott's kickbacks.  Furthermore, Your Honor held in the April 24 Order that "[s]upplementation after May 16, 2025 will be left to the discretion of the District Court."  ECF No. 159, at 11:13–14.  In short, Abbott cannot demonstrate that Relator violated the April 24 Order.

In any event, Relator was "substantially justified" in serving the May 16

ROG 3 Response because "reasonable people could differ as to the appropriateness of the contested action" under the circumstances. *Pierce v. Underwood*, 487 U.S. 442, 565 (1988). Specifically, Relator relied on the analysis of its expert and the representations of Abbott that its procedure data was complete in producing the May 16 ROG Response list of false claims based on an analysis of billions of claim lines of data requiring high-performance computing resources and time to process the data. Abbott has not pointed to any genuine facts suggesting the absence of substantial justification on the part of Relator. *Cf. Enterprise Tech. Holdings, Inc. v. Noveon Sys., Inc.*, 2008 WL 11338356, at *3 (S.D. Cal. July 29, 2008) (Whelan, J.) (involving the revelation that a defendant possessed relevant documents after the defendant's "representation to [the Court] that she had no further information or documents in her possession" and had to produce such documents in discovery). Importantly, Abbott has not come close to suggesting that Relator ever acted unreasonably or in bad faith, let alone in a manner that warrants sanctions. *AK Futures LLC v. TBH Supply LLC*, 2024 WL 5185335, at *6 (C.D. Cal. Oct. 15, 2024) ("While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether the imposition of sanctions would be unjust"). If anything, it is Abbott that has acted unreasonably by causing Relator to rely on incomplete procedure data—only for Relator to discover, though the analysis of its experts, that Abbott had failed to identify 507 HCPs throughout such data. Abbott cannot demonstrate that this reliance by Relator and its experts was unreasonable, particularly when considering the hundreds of implanters Abbott paid to implant its MitraClip device during the relevant period, yet it did not maintain documents concerning their procedures in the normal course of business. Relator respectfully submits that these other circumstances make the award of expenses Rule 37(b)(2)(C) unjust.

Abbott's authorities do not support the instant application. In *Fjelstad v. Am. Honda Motor Co.*, the Ninth Circuit noted that the defendant had exhibited

"willful delay" and been issued "stern warning that further discovery problems would be met with increasingly severe sanctions."  762 F.2d 1334, 1343 (9th Cir. 1985); *see also Jet Blast, Inc. v. Blue Lake Serv., LLC*, 348 F.R.D. 714, 718 (N.D. Fla. 2025) (after repeatedly failing to comply with deadlines set by the Rules and the court for the production of documents, the party's sole explanation was "we were working on it"); *London Wallace v. City of Fresno*, 2021 WL 916244, at *6 (E.D. Cal. Mar. 10, 2021) (plaintiff withheld responsive video footage with no explanation for failure to produce); *Shaw v. Ultimate Franchises*, 2020 WL 5539963, at *2 (C.D. Cal. Aug. 25, 2020) ("Defendants [] remained absent from [the] proceeding"); *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020) (plaintiff effectively ignored discovery requests).  In sum, none of the responding parties in Abbott's inapposite cases complied or attempted to comply with the discovery orders at issue—in stark contrast to the circumstances here.

### B.    Relator Timely Amended Its ROG 3 Response and Furnished Dr. Kanter's Supplemental Report, as Required by Rule 26(e)

When Relator became aware that it had unknowingly incorporated by reference new claims via its July 18 Amended Response to ROG 3, Relator promptly acted by investigating and serving Dr. Kanter's August 11 Supplemental Report to address this inadvertent error.  This is precisely the fulfillment of the duty to timely correct ***required*** by Rule 26(e)(1) and (2).  As Judge Whelan held, Relator does not have a "duty to notify the parties or ask the court for permission to supplement its response under Rule 26(e)" and "[t]he parties maintain an obligation to supplement discovery responses beyond the close of discovery."  ECF No. 182, at 6:18–20.  Furthermore, the April 24 Order expressly contemplated supplementation.  ECF No. 159, at 11:13–14.  Abbott, again, resorts to fundamentally misrepresenting the state of affairs to invent a Rule 26(e) violation when there has been none.  Relator timely supplemented as soon as it learned that new claims had been included.  Furthermore, there is no reasonable

inference that Relator had all the necessary "data and documents on which it based its later amendment long ago." Mot. 9:3–4.  Relator became aware through additional discovery and a review of the complete record that Abbott did not maintain data and documents in the normal course of business on its payments to physicians.  This required Relator to marshal additional expert resources to conduct an analysis based on the Open Payments data—only because a complete record demonstrates that Abbott's documents and data are incomplete.

Abbott's cases do not remotely suggest Relator has violated Rule 26(e) and, instead, involve the entirely distinct scenario where a party discloses an expert report or evidence shortly before trial.  *See Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496 (9th Cir. 2009) (striking expert declarations disclosing new case theory served in response to defendants' motion for summary judgment and ten weeks before trial); *Allgood v. Gen. Motors Corp.*, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007) (striking untimely "supplemental" expert report that expert "did not present" as a supplement and "based on research and data that were never presented before"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001) (disclosure of rebuttal report 28 days before trial and 1 year after the report it purported to rebut); *Cervantes v. Zimmerman*, 2019 WL 1598219, at *5 (S.D. Cal. Apr. 15, 2019) (failure to describe documents on initial disclosures before close of fact discovery).

### C.   Abbott Has Failed to Estimate its Costs and Fees or Show That They Have a Reasoned Connection to Relator's Disclosures

Other than offering the conclusory assertion that its fees are "reasonable," Abbott has done nothing to put the Court or Relator on notice of the magnitude of attorney's fees and costs it seeks.  "Abbott seeks reasonable expenses comprised of attorney and expert work that would not have been necessary but for Relator's conduct."  Mot. at 9:25–26.  It is plain based on the declarations submitted concurrently with the Motion that Abbott seeks an order requiring Relator to pay

all its expert costs from the Analysis Group, and associated legal fees—even though it would have incurred those costs in connection with preparing its June 30 reports, irrespective of whether it sought to compel a response to ROG 3 before the close of fact discovery in the first place.  An application for fees and expenses must include evidence of the hours worked and rates claimed, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and the applicant must further show that those hours and rates were reasonable.  *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983); *Hargis v. Pacifica Senior Living Mgmt. LLC*, 2025 WL 1140158, at *3 (C.D. Cal. Mar. 4, 2025) ("district courts may not uncritically accept a fee request, but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case").  Here, Abbott has offered neither the hours worked nor the rates claimed, depriving Relator and the Court of the ability to make an informed inquiry into the reasonableness of the relief sought.

There are no unique circumstances that justify Abbott's "staged approach" to accounting for fees and expenses.  To support such an approach, Abbott relies only on *Cleveland v. Ludwig Inst. for Cancer Rsch.*, Ltd., 2021 WL 4993025 (S.D. Cal. Oct. 27, 2021).  There, however, the "Court [found] that the requested sanction [was] too indirectly related to the present dispute to be supported" because the Defendants sought an order for expenses incurred in a ***different action***.  *Id.* at *14.  No analogous circumstances exist here.  It is plain that, despite its stated goal of "ensur[ing] that Abbott is made whole in a process that is fair, efficient, and collegial, while also conserving judicial resources" (Mot. at 10:18–20), Abbott seeks to surprise Relator without the benefit of the Court's scrutiny into the reasonableness of the alleged expenses.

## **CONCLUSION**

For the foregoing reasons, Relator respectfully submits that the Motion should be denied.

1

Dated:  September 5, 2025

Respectfully submitted,

2

3

**MILLER SHAH LLP**

4

By:  *James C. Shah*

James C. Shah (State Bar No. 260435)

5

jcshah@millershah.com

6

19712 MacArthur Boulevard, Suite 222
Irvine, CA 92660

7

Telephone: (866) 540-5505

8

Facsimile: (866) 300-7367

9

James E. Miller (State Bar No. 262553)

10

jemiller@millershah.com
Laurie Rubinow (*Pro Hac Vice*)

11

lrubinow@millershah.com

12

65 Main Street
Chester, CT 06412

13

Telephone: (860) 526-1100

14

15

Bruce D. Parke (*Pro Hac Vice*)
bdparke@millershah.com

16

Christopher A. Miller (*Pro Hac Vice*)
camiller@millershah.com

17

1845 Walnut Street, Suite 806

18

Philadelphia, PA 19103
Telephone: (610) 891-9880

19

20

Jonathan K. Tycko (*Pro Hac Vice*)
jtycko@tzlegal.com

21

TYCKO & ZAVAREEI, LLP

22

2000 Pennsylvania Avenue., NW
Suite 1010

23

Washington, D.C. 20006
Telephone: 202.973.0900

24

25

26

27

28



Monique Olivier (State Bar No. 190385)
monique@os-legal.com
OLIVIER & SCHREIBER LLP
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

*Attorneys for Plaintiff and Relator*
*Everest Principals, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ James C. Shah*
James C. Shah