UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. ex rel. Everest Principals, LLC,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES, et al.,<br><br>　　　　　　　　　　　　　Defendants. | Case No.:  20cv286-W (MSB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>**[ECF NO. 224]** |

　　　This is a *qui tam* case, wherein Plaintiff-Relator, Everest Principals, LLC ("Relator") maintains causes of action against Defendants Abbott Laboratories, Abbott Laboratories Inc., Abbott Cardiovascular Systems Inc., and Abbott Vascular Inc. (collectively referred to as "Defendants" or "Abbott") on behalf of the United States of America and several states for violations of the federal False Claims Act ("FCA") and analogous state laws. (ECF No. 85 at 6.)  Relator is a limited liability company whose sole member was employed by Defendants as a Therapy Development Specialist in its Structural Heart Division from August 2015 to April 2017.  (Id. at 7.)  Defendants are involved in the manufacturing and sale of medical devices, instruments, medications, and other health care products.  (Id. at 8.)

/ / /

The instant discovery dispute concerns Defendants' Motion to Strike Expert Rebuttal.  (ECF No. 224, hereinafter "Motion to Strike.")  After reviewing letter briefs lodged by the parties, the Court held Telephonic Discovery Conferences on October 6, 2025, and October 14, 2025, to address various issues pertaining to expert reports.  (ECF Nos. 216 & 219.)  Following the conference, the parties jointly requested an opportunity for formal briefing as to the Court's tentative order striking the entire August 29, 2025, report of Relator's expert Dr. David Healy ("Healy Report").  (ECF No. 221.)  For the reasons outlined below, the Court **DENIES** Defendants' Motion to Strike.

## I.  BACKGROUND

### A. Defendants' Motion to Strike

In short, Defendants argue the Healy Report should be stricken because it improperly discloses affirmative expert opinions disguised as rebuttal opinions.  (ECF No. 224-1 at 2.)  On August 29, 2025, the rebuttal report deadline, Relator disclosed Dr. Healy for the first time.  (Id.)  The Healy Report contains two overarching opinions: (1) "Abbott's Therapy Awareness Programs lacked many of the qualities necessary to meet an educational objective consistent with prevailing standards;" and (2) "Abbott's Therapy Awareness Programs . . . [were] inconsistent with accepted educational standards" in other respects too.  (Id. at 3 (citing Healy Report ¶¶ 14–15).)  Defendants contend that "none of Abbott's opening reports contained any opinions whatsoever on the subjects that Dr. Healy references." (Id.)  Moreover, Defendants argue that Dr. Healy makes "textbook affirmative expert opinions that should have been disclosed, if at all, by the June 30 [affirmative expert] deadline."  (Id. at 5.)

Defendants dispute Relator's contention that Dr. Healy's opinions are based on the same subject matter as Defendants' expert reports.  (Id. at 5–6.)  Instead, Defendants assert that Abbott's experts "opined that education was necessary and explained why—not whether Abbott's provision of education was or was not appropriate as judged against the so-called 'standards of medical education.'"  (Id. (citing Healy Report ¶ 47).)  While the Healy Report references five of Abbott's

experts—Dr. Moody Makar, Dr. Steven Bolling, Dr. Marcus Urey, Dr. Ryan Reeves, and Dr. Anupam Jena—Defendants argue "none of those references contradict or rebut evidence on the same subject matter identified in Abbott's reports," in violation of Rule 26(a)(2)(D)(ii).  (Id. at 6–8.)  Finally, Defendants contend striking the Healy Report is the proper remedy because Relator cannot establish substantial justification or harmlessness.  (Id. at 9 (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).)  By disclosing Dr. Healy's opinion on August 29 rather than June 30, Defendants contend "Relator deprived Abbott of the opportunity to rebut [the opinions]."  (Id.)  Further, Defendants claim Relator's late disclosure harmed Defendants by forcing them to divert attention from expert depositions and dispositive motions and incur additional attorneys' fees.  (Id. at 10.)

**B. Relator's Opposition**

In response, Relator argues the Healy Report is proper rebuttal testimony and Defendants' Motion to Strike should be denied.  (ECF No. 225 at 2.)  Relator alleges that Defendants "seek[] an impermissibly narrow standard of what constitutes proper rebuttal that prevents a rebuttal expert from challenging affirmative experts' underlying assumptions and methodology and presenting facts and data that they failed to consider altogether."  (Id.)  Further, Relator maintains that accepting Defendants' position "would turn the very purpose of rebuttal testimony on its head."  (Id.)

More specifically, Relator argues that the Healy Report contains proper rebuttal testimony because it (1) addresses the same subject matter as Defendants' affirmative experts' reports—namely, the purported medical education need and fulfillment of such need by Abbott's events—and (2) is intended solely to rebut Defendants' affirmative experts' reports.  (Id. at 4–5.)  On June 30, 2025, Relator contends five of Defendants' medical experts offered affirmative opinions "on the supposed need for physician education on the MitraClip and whether Abbott's events were conducted in a manner to meet that need."  (Id. at 5, 6–9.)  Relator argues it served the Healy Report on August 29, 2025, to directly contradict and rebut Abbott's experts' wide-ranging opinions on

medical education need. (Id. at 9–11.)  Moreover, Relator maintains that the Healy Report is offered to show Defendants' experts "consistently overlooked established principles of professional learning, substituting personal impressions or anecdotal experience for evidence-based evaluation." (Id. at 10–11 (citing Healy Report ¶¶ 62–63).)  Furthermore, Dr. Healy's Report shows that "Abbott's events 'deviated substantially from the standards of legitimate medical education.' " (Id. at 11 (citing Healy Report ¶¶ 62–63).)  Even if the Court finds any of Dr. Healy's opinions were improper rebuttal, Relator argues the Healy Report was served before the discovery cutoff, Dr. Healy's deposition, and the final pretrial conference.  (Id. at 11.)  Thus, there is time to cure any possible prejudice, and the appropriate relief would be to permit Defendants to take Dr. Healy's deposition and serve a rebuttal report in response to the Healy Report.  (Id.)

## II.   APPLICABLE LAW

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony.  "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness . . . ." Fed. R. Civ. P. 26(a)(2)(B).  The report must contain a "complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).  Additionally, the report must include the witness's qualifications and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(iv), (vi).  "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"A party need not disclose an expert within the deadline for initial expert reports, and can instead disclose an expert as a 'rebuttal expert,' when the expert's testimony is 'intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness.'" Clear–View Techs., Inc. v. Rasnick, No. 13-cv-02744-BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (internal citations omitted); see also

Fed. R. Civ. P. 26(a)(2)(D)(ii).  The phrase "same subject matter" should be read narrowly because a broad reading that "encompass[es] *any* possible topic that *relates* to the subject matter at issue . . . will blur the distinction between 'affirmative expert' and 'rebuttal expert.'"  Vu v. McNeil–PPC, Inc., No. CV 09-1656 ODW (RZx), 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010).  "The court must carefully analyze the initial expert's proposed testimony and the corresponding expert's rebuttal testimony to determine the propriety of the rebuttal testimony."  Obesity Research Inst., LLC v. Fiber Research Int'l, LLC, No. 15-cv-0595-BAS-MDD, 2016 WL 795888, at *1 (S.D. Cal. Mar. 1, 2016) (citing HM Elec., Inc. v. R.F. Techs., Inc., No. 12-cv-2884-BAS-MDD, 2015 WL 1879428, at *1 (S.D. Cal. Apr. 17, 2015)).  Ninth Circuit courts have denied motions to strike supplemental expert reports considering "the low risk of prejudice to the Plaintiff and the public policy favoring disposition of cases on the merits."  Gray v. United States, No. 05-cv-1893-J (BLM), 2007 WL 4644736, at *3 (S.D. Cal. Mar. 12, 2007).

"A 'party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report.'"  Cueto v. Overseas Shipholding Grp., Inc., No. 10-cv-1243-LAB (NLS), 2012 WL 28357, at *2 (S.D. Cal. Jan. 4, 2012) (quoting Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc., 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008)).  Further, a rebuttal expert report "is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies."  Alvarez v. NBTY, Inc., No. 17-cv-00567-BAS-BGS, 2019 WL 1353713, at *3 (S.D. Cal. Mar. 25, 2019) (internal citation and quotation marks omitted).  "[O]ffering a different, purportedly better methodology," however, is a "proper way to rebut the methodology of someone else."  Id. (internal citation and quotation marks omitted).

Parties who run afoul of Rule 26 may face sanctions as specified Rule 37, which provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  The party facing sanctions bears the burden of proving substantial justification or harmlessness.  Yeti by Molly, Ltd., 259 F.3d at 1107.  A district court has "particularly wide latitude" in determining whether to issue sanctions under Rule 37(c)(1).  Id. at 1106.

### III.   DISCUSSION

#### A. Healy Report

On August 29, 2025, Relator produced the Healy Report, purportedly rebutting five of Defendants' affirmative expert reports.[1]  Dr. Healy is a Clinical Professor of Anesthesiology and the Assistant Dean for Continuing Medical Education ("CME") and Lifelong Learning at the University of Michigan Medical School.  (Healy Report ¶ 5.)  Dr. Healy notes he was retained by Relator to respond to Defendants' affirmative experts' opinions "concerning medical education provided by Abbott's therapy awareness programs for the MitraClip device."  (Healy Report ¶ 1.)  In doing so, Dr. Healy explains he "addresses the standards of appropriate medical education, the characteristics of activities that are inconsistent with medical education purposes, and whether the therapy awareness programs, and more specifically the speaker programs and other company-sponsored events . . . held by Defendants . . . met prevailing standards for providing medical education."  (Id.)  Dr. Healy states that "[a]s an expert witness, I evaluate whether educational activities meet accepted professional standards, are free from commercial bias, and are designed to promote improved clinical care."  (Healy Report ¶ 12.)  The Healy Report contains two principal opinions: (1) "Abbott's Therapy Awareness Programs lacked many of the qualities necessary to meet an educational

---

[1] The parties shared copies of the relevant expert reports with the Court via e-mail on September 30, 2025.  (ECF No. 224 at 3 n. 1; ECF No. 225 at 3 n. 1.)

objective consistent with prevailing standards;" and (2) "Abbott's Therapy Awareness Programs" were otherwise "inconsistent with accepted educational standards." (Healy Report ¶¶ 14–15.) Dr. Healy references five of Defendants' expert reports, which are summarized below.

### B. Makar Report

In a footnote, Dr. Healy claims to rebut parts of Dr. Moody Malak Makar's June 30 Report ("Makar Report"). (See Healy Report ¶ 37 n. 6.) Dr. Makar is "an echocardiographer and cardiac anesthesiologist." (See Makar Report at 1.) Dr. Makar was retained by Defendants "to opine on various topics relating to echocardiography and the MitraClip procedure." (Id.) Relevant to the instant dispute, Dr. Makar concluded: "heart teams at new implanting sites need to be trained on how to perform the MitraClip procedure and diagnose appropriate patients for the procedure." (Makar Report ¶ 3.)

Relator argues Dr. Healy rebuts Dr. Makar's "opinions about 'medical education generally' because the 'technical device training' Dr. Makar discusses is fundamentally distinct from Abbott's speaker programs, which Dr. Makar does not address specifically." (ECF No. 225 at 8 (citing Healy Report ¶ 37 n. 6).) Dr. Healy acknowledges "Dr. Makar does not address Abbott's speaker programs at all, and his Report provides no evidence that those programs were legitimate educational activities." (Healy Report ¶ 37 n. 6.) Moreover, Dr. Healy opines that an article Dr. Makar relies on "does not support Dr. Makar's position" and instead "demonstrates how far Abbott's programs fall from established standards of medical education." (Id.)

### C. Bolling Report

Similarly, Dr. Healy addresses paragraph 2.A of Dr. Steven Bolling's June 30 Report ("Bolling Report") in a footnote. (See Healy Report ¶ 37 n. 7.) Dr. Bolling is a cardiac surgeon who was retained by Defendants "to opine on the impact of MitraClip on treatment for degenerative mitral regurgitation, including the education necessary to help physicians identify and refer the correct candidates, as well as the role of the

cardiac surgeon in ultimately recommending the MitraClip procedure to the patient." (Bolling Report at 1.) Dr. Bolling concluded: "Because MitraClip was an innovation, it was not well-known or well-understood when it was approved, thus, there has been an unmet need that persisted as many patients who could have benefited from the device were not appropriately referred." (Bolling Report ¶ 2.A.)

Relator argues Dr. Healy rebuts Dr. Bolling's medical education opinions by explaining Dr. Bolling "assumes, without analysis, . . . that Abbott's speaker programs satisfied this educational role." (ECF No. 225 at 8 (citing Healy Report ¶ 37 n. 7).) Dr. Healy also remarks on how Dr. Bolling did not "examine their design, content, interdependence, or effectiveness" or "distinguish between accredited CME and promotional speaker events." (Healy Report ¶ 37 n. 7.) Further, Dr. Healy opines that Dr. Bolling conflates two issues: "the genuine need for physician education and the question of whether Abbott's programs constituted legitimate education." (Id.) Dr. Healy notes "literature makes clear that commercially influenced events often lack independence and are less effective than independent, peer-reviewed CME activities." (Id.)

**D. Urey Report**

Next, Dr. Healy claims to rebut paragraphs 2.1 through 2.10 of Dr. Marcus Urey's June 30 Report ("Urey Report"). (See Healy Report ¶¶ 38–39.) Dr. Urey is a "cardiologist who specializes in advanced heart failure, mechanical circulatory devices, and the care of heart transplant patients." (See Urey Report at 1.) Dr. Urey was retained by Defendants "to opine on how mitral regurgitation patients are referred for specialized evaluation and treatment, including with MitraClip, the role of industry-sponsored events in educating healthcare providers involved in cardiac referral pathways, the impact of MitraClip on the treatment of mitral regurgitation patients, and the roles of the heart failure specialist in recommending, and the patient in choosing, MitraClip." (Id.)

Relator argues the Healy Report rebuts the Urey Report's conclusion that

"industry-sponsored events improve patient outcomes by providing education necessary to ensure that patients are timely referred for vital treatments." (ECF No. 225 at 7 (citing Urey Report ¶¶ 2.1–2.10).) First, Dr. Healy opines that Dr. Urey's "assertion that Abbott's programs improved outcomes is unsupported" because "Dr. Urey provides no evaluation data[,] does not examine whether the programs met accepted educational standards," and "relies primarily on his own experience as both a participant and speaker at such events." (Healy Report ¶ 38 (citing Urey Report ¶ 2.8).) Additionally, Dr. Healy notes that "broader evidence" contradicts Dr. Urey's conclusion. (Healy Report ¶ 39.) For example, Dr. Healy says "[s]ystematic reviews consistently show that didactic, commercially influenced programs do not improve long-term knowledge retention or patient outcomes." (Id.) Dr. Healy also found "Dr. Urey overlooks the robust, independent sources of physician education, including CME, peer-reviewed literature, and professional society guidelines." (Id.)

### E. Reeves Report

Dr. Healy next addresses paragraphs 5.1 through 5.7 of Dr. Ryan Reeves' June 30 Report ("Reeves Report"). (See Healy Report ¶¶ 40–43.) Dr. Reeves is "a board-certified cardiologist who specializes in cardiovascular medicine and interventional cardiology." (See Reeves Report at 1.) He was retained by Defendants "to opine on the disease state of mitral regurgitation and its treatment, including treatment with Abbott's MitraClip device, the role of physician education and referrals in the selection of proper MitraClip patients, and the role of an interventional cardiologist in evaluating a patient for, and implanting, MitraClip." (Id.) Regarding medical education, Dr. Reeves concluded: "It is important to educate clinical cardiologists so that they can identify appropriate candidates for evaluation by a heart team early enough to give the patient the best outcome." (Reeves Report ¶ 5.)

Relator argues the Healy Report rebuts the Reeves Report in several ways. (ECF No. 225 at 6–7.) First, Dr. Healy explains, "Dr. Reeves assumes that Abbott's therapy awareness programs constituted legitimate education without evaluating whether they

included any hallmarks of bona fide educational activity." (Healy Report ¶ 40 (citing Reeves Report ¶¶ 5.1–5.7).)  Dr. Healy continues, "Dr. Reeves does not examine whether the programs were based on documented educational needs, whether the content was balanced and evidence-based, whether multidisciplinary perspectives were included, or whether outcomes were assessed." (Healy Report ¶ 40.)  Further, Dr. Healy opines Dr. Reeves does not "distinguish between accredited CME and company-controlled promotional events." (Id.)  Finally, Dr. Healy observes that Dr. Reeves "makes no reference to the wide variety of high-quality, unbiased continuing education that was readily available to physicians." (Id. ¶ 41.)  Dr. Healy also criticizes two of the sources Dr. Reeves relies on and opines that "Dr. Reeves disregards well-established evidence showing that didactic, commercially influenced events are both less effective and more susceptible to bias." (Id. ¶¶ 42–43.)

### F. Jena Report

Finally, Dr. Healy claims to rebut Dr. Anupam B. Jena's June 30 Report ("Jena Report"). (See Healy Report ¶¶ 47–49.)  Dr. Jena is a physician specializing in internal medicine and an economist specializing in, among other things, the economics of physician behavior, healthcare productivity, and medical innovation. (See Jena Report ¶¶ 1–3.)  Dr. Jena determined that "[e]ducation plays a legitimate and necessary role in spreading awareness and helping physicians identify appropriate candidates, particularly for novel therapies such as MitraClip." (Jena Report ¶ 94.)  Further, Dr. Jena concluded "one must isolate the effect of the alleged kickback from the legitimate and beneficial impact of physician education provided during Abbott's MitraClip events." (Id.)

Dr. Healy attempts to rebut Dr. Jena's opinions that "education was essential for adoption of MitraClip," "Abbott's speaker programs provided meaningful education," and "any evaluation of improper influence must 'isolate' the educational benefit of these programs." (Healy Report ¶ 48).)  Dr. Healy opines that Dr. Jena's reasoning is flawed in part because "Dr. Jena conflates the need for physician education with the

assumption that Abbott's promotional events satisfied that need." (Id.) He suggests that describing Abbott's programs "as education lowers the threshold for what qualifies as education below accepted professional norms." (Id.) Furthermore, Dr. Healy notes that the Jena Report "relies on participant testimony that physicians discussed clinical data and cases at these events;" however, Dr. Healy opines "informal case discussions in a promotional environment do not transform the activity into legitimate education." (Healy Report ¶ 46 n. 16.)

### G. Analysis

Under Federal Rule 26(a)(2)(D)(ii), an expert report qualifies as a rebuttal report if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Accordingly, the Court must assess: (1) whether the Healy Report addresses the same subject matter as the initial reports it purportedly rebuts; and (2) whether the Healy Report "is intended solely to contradict or rebut evidence" in the initial reports. See Leadership Stud., Inc. v. Blanchard Training & Dev., Inc., No. 15cv1831, 2018 WL 1989554, at *10 (S.D. Cal. Apr. 27, 2018) (citing Fed. R. Civ. P. 26(a)(2)(A) & (D)(ii)), report and recommendation adopted, No. 15cv1831, 2018 WL 3752373 (S.D. Cal. Aug. 7, 2018).

Relator generally contends the Healy Report responds to the same subject matter as Defendants' affirmative expert reports: "the purported medical education need provided by Abbott's events." (ECF No. 225 at 4.) By contrast, Defendants argue their affirmative experts "opined that education was necessary and explained why—not whether Abbott's provision of education was or was not appropriate as judged against the so-called 'standards of medical education.'" (ECF No. 224-1 at 5–6 (citing Healy Report ¶ 47).) In comparing the Healy Report against Defendants' five affirmative expert reports, the Court finds Defendants' arguments to be more persuasive. Although the Healy Report addresses the same general subject matter (medical education) as Defendants' experts, this is insufficient. See Vu, 2010 WL 2179882, at *2 ("If the phrase

'same subject matter' is read broadly to encompass *any* possible topic that *relates* to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results."); see also Tubio v. Adidas Am. Inc., No. CV 22-6424 GW (PVCX), 2024 WL 1191051, at *2 (C.D. Cal. Feb. 5, 2024) ("[M]erely opining on the same general subject manner does not qualify as a rebuttal report if the report does not explicitly rebut and contradict the same evidence relied on by the expert report it seeks to rebut."); Fed. Trade Comm'n v. Qualcomm Inc., No. 17-CV-00220-LHK, 2018 WL 6522134, at *4 (N.D. Cal. Dec. 11, 2018) ("However, a rebuttal expert does not receive *carte blanche* to address the broad subject matter of the *case*, but rather to 'contradict or rebut evidence on the same subject matter' as the other party's expert report.") (internal citations omitted).

After a thorough review of the relevant reports, the Court finds the Healy Report is not "intended solely to contradict or rebut evidence on the same subject matter" as Defendants' affirmative expert reports, as required by Rule 26. See Fed. R. Civ. P. 26(a)(2)(D)(ii). Indeed, the Healy Report goes well beyond simply addressing the need for "medical education" and advances two overarching opinions about Abbott's programs: (1) "Abbott's Therapy Awareness Programs lacked many of the qualities necessary to meet an educational objective consistent with prevailing standards;" and (2) "Abbott's Therapy Awareness Programs" were also "inconsistent with accepted educational standards" in other respects. (Id. (citing Healy Report ¶¶ 14–15).) However, as summarized above, none of Defendants' affirmative experts opined directly on whether Abbott's programming met "prevailing" or "accepted" standards for medical education. (See supra Sections III.B–F.)

For example, the Reeves Report concludes: "It is important to educate clinical cardiologists so that they can identify appropriate candidates for evaluation by a heart team early enough to give the patient the best outcome." (Reeves Report ¶ 5.) In response, the Healy Report opines: "Dr. Reeves assumes that Abbott's therapy

awareness programs constituted legitimate education without evaluating whether they included any hallmarks of bona fide educational activity." (Healy Report ¶ 40.) Dr. Healy admits "Dr. Reeves does not examine whether [Abbott's] programs were based on documented educational needs, whether the content was balanced and evidence-based, whether multidisciplinary perspectives were included, or whether outcomes were assessed." (Id.) Thus, by Dr. Healy's own admission, he does not address the same subject matter as Dr. Reeves' Report.

Similarly, the Urey Report concludes: "Industry-sponsored events improve patient outcomes by providing education necessary to ensure that patients are timely referred for vital treatments." (Urey Report ¶ 2.) In response, Dr. Healy states that Dr. Urey's "assertion that Abbott's programs improved outcomes is unsupported." (Healy Report ¶ 38.) However, Dr. Urey did not discuss whether "Abbott's programs" qualified as CME or otherwise met prevailing standards of medical education; instead, Dr. Urey commented *generally* on "industry-sponsored events." (See generally Urey Report ¶¶ 2.1–2.10.) Dr. Healy acknowledges "Dr. Urey provides no evaluation data and does not examine whether [Abbott's] programs met accepted educational standards," thereby admitting Dr. Urey addressed a different subject matter. (Healy Report ¶ 38.) Additionally, the Bolling Report opines there was an unmet need even after MitraClip was approved, but it does *not* opine that Abbott's programs satisfied this educational need. Compare Bolling Report ¶ 2.A ("Because MitraClip was an innovation . . . there has been an unmet need that persisted as many patients who could have benefited from the device were not appropriately referred"), with Healy Report ¶ 37 n. 7 ("Dr. Bolling conflates two separate issues: the genuine need for physician education and the question of whether Abbott's programs constituted legitimate education").

Rather than addressing Abbott's experts' opinions—namely, that education was necessary for the MitraClip procedure and industry could generally play a role in providing this education—Dr. Healy assessed the quality of Abbott's programs. Therefore, the Court finds the Healy Report exceeds the scope of proper rebuttal. Rule

37 "gives teeth" to Rule 26's expert disclosure requirements by "forbidding the use at trial of any information . . . that is not properly disclosed." Yeti by Molly Ltd., 259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)).  Belatedly disclosed evidence may be excused if it is substantially justified or harmless.  See Fed. R. Civ. P. 37(c)(1); Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011).  Even though the Court finds the Healy Report exceeds the scope of proper rebuttal, the Court recognizes "[e]xcluding an expert from testifying is a 'Draconian sanction.' "  People v. Kinder Morgan Energy Partners, L.P., 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016) (quoting Gibson v. Credit Suisse AG, 2016 WL 81224, at *4, 2016 U.S. Dist. LEXIS 2088, at *13 (D. Idaho Jan. 7, 2016).  Courts typically decline to exclude experts as a sanction where there is ample time to depose the expert.  See, e.g., In re Uber Techs., Inc., Passenger Sexual Assault Litig., No. 23-MD-03084-CRB (LJC), 2025 WL 3653918, at *12 (N.D. Cal. Dec. 17, 2025); Andrews v. Plains All Am. Pipeline, L.P, No. CV 15-4113 PSG (JEMx), 2019 WL 6647928, at *5 (C.D. Cal. Nov. 22, 2019) (declining to strike where defendants would "still have the opportunity to prepare responses . . . and depose these experts with an extended deadline, thereby solving the problem short of striking the reports"); Downs v. River City Group, LLC, No. 3:11-CV-00885-LRH-WGC, 2014 WL 814303, *8 (D. Nev. Feb. 28, 2014).

Here, the Healy Report was served on August 29, 2025, well before the cutoff of expert discovery (October 24, 2025), the dispositive motions filing deadline (December 19, 2025), and the Final Pretrial Conference (April 27, 2026).  (ECF No. 147.)  Because no trial date has been set, there is ample time to cure any possible prejudice.  Thus, the Court finds any failure to timely designate Dr. Healy as an affirmative expert was substantially justified and harmless, and the striking of the Healy Report is not warranted.  Discretionary relief is nevertheless appropriate to rectify any potential unfairness.  Accordingly, the Court will allow Defendants to take Dr. Healy's deposition and serve an expert report in rebuttal to the Healy Report.  See Self v. Perspecta Enter. Sols., LLC, 2023 WL 6020792, at *8 (S.D. Cal. Jan. 31, 2023) (granting alternative relief to

serve an expert report in rebuttal); <u>San Diego Cnty. Credit Union v. Citizens Equity First Credit Union</u>, No. 18CV967-GPC (MSB), 2020 WL 8621524, at *9 (S.D. Cal. June 12, 2020), <u>objections overruled</u>, No. 18CV967-GPC (MSB), 2020 WL 5797827 (S.D. Cal. Sept. 29, 2020), <u>aff'd</u>, 60 F.4th 481 (9th Cir. 2023), <u>opinion amended and superseded on denial of reh'g</u>, 65 F.4th 1012 (9th Cir. 2023), and <u>aff'd</u>, 65 F.4th 1012 (9th Cir. 2023) (declining to strike supplemental expert report due to a finding of harmlessness).

### IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Strike is **DENIED**. Defendants may depose Dr. Healy about his August 29, 2025, report no later than **March 13, 2026**. Additionally, Defendants may serve a sur-rebuttal report contradicting or rebutting Dr. Healy's opinions no later than **April 13, 2026**. The Court **sua sponte VACATES** the Mandatory Settlement Conference, Final Pretrial Conference, and related dates [ECF No. 147]. The parties are **ORDERED** to jointly contact Judge Berg's chambers with a proposed schedule for resetting these dates no later than **January 26, 2026**.

**IT IS SO ORDERED**.

Dated:  January 12, 2026

Honorable Michael S. Berg
United States Magistrate Judge